## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| J.A., individually and on behalf of her minor child J.A., | ) ) ) | |
| Plaintiffs, | ) | Case No. |
| v. | ) ) ) | |
| MONROE TOWNSHIP BOARD OF EDUCATION; NEW JERSEY DEPARTMENT OF EDUCATION; KEVIN DEHMER, Interim Commissioner of Education; NEW JERSEY OFFICE OF ADMINISTRATIVE LAW; MARYANN BOGAN, Administrative Law Judge; JOSEPH A. ASCIONE, Administrative Law Judge, and DOES 1 – 250 SIMILARLY SITUATED ADMINISTRATIVE LAW JUDGES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

NOW COME Plaintiffs J.A., individually and on behalf of her minor child

J.A.[1] ("J.A. Family" or "Plaintiffs"), by and through counsel, and for their

Complaint against Defendants Monroe Township Board of Education

---

[1] Plaintiffs are identified by initials pursuant to Fed.R.Civ.P. 5.2(a)(3) so as to protect the identities of the minor child.

("MTBOE"); New Jersey Department of Education ("NJDOE"); Kevin Dehmer,

Interim Commissioner of Education ("Dehmer"); New Jersey Office of

Administrative Law ("OAL"); MaryAnn Bogan, Administrative Law Judge ("ALJ

Bogan"); Joseph A. Ascione, Administrative Law Judge ("ALJ Ascione") and

Does 1 – 250 similarly situated Administrative Law Judges ("Doe ALJs"), hereby

state as follows:

## TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................5

JURISDICTION AND VENUE ..........................................................5

PARTIES..............................................................................................6

FEDERAL STATUTORY OVERVIEW ...........................................9

    Evaluations / IEEs...........................................................................10

    Procedural Safeguards ...................................................................13

    Parents' Rights in a Due Process Hearing ....................................13

    Requirements of Due Process Hearing Officers............................16

    Parents' Rights to Review Their Child's Records .........................17

    Administrative Decisions and Remedies .......................................17

NEW JERSEY REGULATORY SCHEME FOR SPECIAL EDUCATION DISPUTES .........................................................................................18

    Evaluations / IEEs...........................................................................19

    Procedural Safeguards ...................................................................22

    Parents' Rights in a Due Process Hearing ....................................22

    Requirements of Due Process Hearing Officers............................26

    Parents' Rights to Review Their Child's Records .........................26

    Administrative Decisions and Remedies .......................................27

FACTUAL BACKGROUND – DP CASE ........................................38

PROCEDURAL HISTORY – DP CASE ..........................................42

COUNT ONE – SYSTEMIC VIOLATION OF THE 10 DAY PEREMPTORY HEARING DATE .............................................................................54

COUNT TWO –SYSTEMIC VIOLATION OF THE FIVE-DAY EXCHANGE RULE .................................................................................................59

COUNT THREE – SYSTEMIC VIOLATION OF THE ADJOURNMENT RULE ................................................................................................64

COUNT FOUR – SYSTEMIC VIOLATION OF THE RESOLUTION MEETING REGULATION ...................................................................................70

COUNT FIVE –SYSTEMIC VIOLATION OF THE ACCESS TO RECORDS PROCEDURAL SAFEGUARD .........................................................75

COUNT SIX –SYSTEMIC VIOLATION OF THE DISCOVERY RULES IN SPECIAL EDUCATION DUE PROCESS CASES.................................................82

COUNT SEVEN –SYSTEMIC VIOLATION OF THE RULES OF EVIDENCE IN SPECIAL EDUCATION DUE PROCESS CASES...........................................87

COUNT EIGHT –SYSTEMIC VIOLATION OF THE NEW JERSEY REGULATIONS IN SPECIAL EDUCATION DUE PROCESS CASES .............96

COUNT NINE – SYSTEMIC VIOLATION OF HEARING OFFICER QUALIFICATIONS .............................................................................103

COUNT TEN – LEGAL ERROR ON THE BURDEN OF PROOF IN THE DP CASE.......................................................................................................109

COUNT ELEVEN – SYSTEMIC VIOLATION OF THE INDEPENDENCE OF THE ADJUDICATING BODY OF SPECIAL EDUCATION DISPUTES .........115

COUNT TWELVE – DECLARATORY JUDGMENT: FEDERAL PREEMPTION....................................................................................122

COUNT THIRTEEN – VIOLATION OF §504 ...................................126

COUNT FOURTEEN – VIOLATION OF THE ADA ..........................131

COUNT FIFTEEN – §1983 SYSTEMIC CIVIL RIGHTS VIOLATIONS .........134

COUNT SIXTEEN – LEGAL ERROR: DENIAL OF IEE – VIOLATION OF IDEA .......................................................................................................139

COUNT SEVENTEEN – VIOLATION OF §504 .................................144

COUNT EIGHTEEN – VIOLATION OF THE ADA ...........................147

COUNT EIGHTEEN – VIOLATION OF THE NJLAD .....................149

COUNT NINETEEN – VIOLATION OF §1983.................................152

## NATURE OF THE ACTION

1.      This matter arises as an appeal from a Final Decision in the administrative due process matter captioned *Monroe Twp. BOE v. J.A. and J.A. o/b/o J.A.*, OAL Dkt. No. EDS 04821-2020 S ("DP case").  *See* 20 U.S.C. §1415(i)(2)(A) ("Any party aggrieved by the findings and decision made [in a due process hearing] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.")

2.      This matter also arises from systemic flaws in NJDOE's system for resolving special education cases in the State of New Jersey and the OAL's and ALJs' illegal implementation of such system as explained below.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction 28 U.S.C. §1331, premised upon the federal Individuals with Disabilities Education Act, 20 U.S.C. §1415(i)(3)(A) ("IDEA") wherein it provides that "The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy"; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et*

*seq.* ("§504"); and the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.*
("ADA").

4.    This Court may order declaratory and injunctive relief pursuant to 28
U.S.C. §§2201 and 2202.  The Court has supplemental jurisdiction to adjudicate
any state claims, which may arise out of the same facts as the federal claims
asserted herein pursuant to 28 U.S.C. §1367.

5.    Personal jurisdiction exists over the Defendants because they are all
residents or arms of the government of the State of New Jersey.

6.    Venue is proper pursuant to 28 U.S.C. §1391 as all the events giving
rise to the claims herein occurred in this District.

## PARTIES

7.    J.A., whose date of birth is 05/22/2008, is a child with a disability,
primary diagnosis of Autism and other secondary diagnoses, including without
limitation Central Auditory Processing Disorder ("CAPD").  She is eligible for
special education and related services under the Individuals with Disabilities
Education Act, 20 U.S.C. §§1400 et seq. ("IDEA") and protection under Section
504 of the Rehabilitation Act, 29 U.S.C. §794 ("§504"); the Americans with
Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"); New Jersey's Special
Education Law, N.J.S.A. 18A:46-1 *et seq.*; and the New Jersey Law Against
Discrimination, N.J.S.A. §10:5-1 *et. seq.* ("NJLAD").

8.    J.A. is J.A.'s mother and resides with J.A. at 1054 Baywood Dr., Williamstown, Gloucester County, New Jersey.

9.    Defendant Monroe Township Board of Education ("MTBOE") is a public school system in Gloucester County, New Jersey, with its principal place of business located at 75 East Academy Street, Williamstown, New Jersey 08094 and as such is a Local Educational Agency ("LEA") as that term is defined by 20 USC §1401(19) and 34 CFR §300.28 and a public agency of the State of New Jersey. MTBOE receives federal funding under IDEA for special education and is, therefore, responsible for ensuring compliance with all mandates arising under the numerous federal statutes and New Jersey regulations for providing special education to the school age students with disabilities residing within its district.

10.    Defendant New Jersey Department of Education ("NJDOE") is a State Educational Agency ("SEA") as that term is defined in 20 U.S.C. §1401(32); 34 C.F.R. §300.41; and a "public entity" as that term is defined in 42 U.S.C. §12131(1); 28 C.F.R. §35.104; and otherwise receives federal funds for special education under various federal statutes and, as such, is responsible for establishing and maintaining a system for resolution of disputes and ensuring compliance with all mandates arising under the numerous federal statutes for providing special education through its Office of Special Education Policy and Procedure

("NJOSEP"). NJDOE has its principal place of business located at 100 River View Plaza, Trenton, Mercer County, New Jersey 08625-0500.

11. Kevin Dehmer, New Jersey's Interim Commissioner of Education ("Dehmer"), is the officer in charge of the NJDOE. Dehmer is named herein in his official capacity.

12. Defendant New Jersey Office of Administrative Law ("OAL") is an Executive Branch agency of the State of New Jersey designated by NJDOE to hear special education due process hearing requests ("due process complaints") pursuant to 20 U.S.C. §1415(f); N.J.A.C. §§1:6A-3.1 and 6A:14-2.7. OAL has its principal place of business located at 9 Quakerbridge Plaza, Mercerville (Hamilton Twp.), New Jersey 08619.

13. Defendant MaryAnn Bogan ("ALJ Bogan") is a New Jersey Administrative Law Judge ("ALJ") employed by the OAL to hear cases, including special education cases, in its Mercerville, NJ location. ALJ Bogan is a "hearing officer" as that term is defined in IDEA, 20 U.S.C. §1415(f)(3)(A) and 34 C.F.R. §300.511(c) and must meet the requirements of those sections. ALJ Bogan was the hearing officer assigned to the underlying DP case and also hears numerous other special education due process cases. Upon information and belief, ALJ Bogan is the primary "settlement ALJ" for the Mercerville, NJ location. ALJ Bogan is named herein in her official capacity.

14.    Defendant Joseph A. Ascione ("ALJ Ascione") is a New Jersey ALJ employed by the OAL to hear cases, including special education cases, in its Mercerville, NJ location.  ALJ Ascione is a "hearing officer" as that term is defined in IDEA, 20 U.S.C. §1415(f)(3)(A) and 34 C.F.R. §300.511(c) and must meet the requirements of those sections.  ALJ Ascione was the hearing officer assigned to the underlying DP case and also hears numerous other special education due process cases.  ALJ Ascione is named herein in his official capacity.

15.    Defendants Does 1 – 250 similarly situated Administrative Law Judges ("Doe ALJs") are as yet unidentified ALJs employed by the OAL to hear special education cases in its three locations – Newark, Mercerville, and Atlantic City.  Doe ALJs are "hearing officers" as that term is defined in IDEA, 20 U.S.C. §1415(f)(3)(A) and 34 C.F.R. §300.511(c) and must meet the requirements of those sections.  Doe ALJs are named herein in their official capacities.

16.    Doe ALJs are necessary parties to this action pursuant to Fed.R.Civ.P. 19 because without Doe ALJs this Court cannot grant full relief.

## FEDERAL STATUTORY OVERVIEW

17.    IDEA guarantees that every child with a disability receives a Free Appropriate Public Education ("FAPE") from his/her public school if that school receives federal funding.  20 USC §1412(a)(1)(A).

18.    The U.S. Supreme Court has defined FAPE as requiring that a disabled student's "educational program must be <u>appropriately ambitious</u> in light of his circumstances. . . . this standard is <u>markedly more demanding than the 'merely more than de minimis' test.</u>" *Endrew F v. Douglas County School Dist. RE-1*, 137 S. Ct. 988, 1000, 580 US __, 197 L. Ed. 2d 335 (2017) (emphasis added.)

19.    The U.S. Supreme Court has held that it is not only the child with the disability that has legal rights under IDEA, but the parents of that child are also entitled to assert legal rights on their own behalf under IDEA. *Winkelman v. Parma City School Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 1996 (2007).

**Evaluations / IEEs**

20.    A LEA has a continuing duty under IDEA to assess a student in "all areas of suspected disability." 20 U.S.C. §§1414(a)(1)(A) and (b)(3)(B) ("Each local educational agency shall ensure that . . . the child is assessed in all areas of suspected disability"); *see* 34 C.F.R. §300.304(c)(4) ("The child is assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities"); and 34 C.F.R. §300.304(c)(6) ("In evaluating each child with a disability . . . the evaluation is sufficiently comprehensive to identify all of the child's special education and related services

needs, whether or not commonly linked to the disability category in which the child has been classified.")  This is known as the "Child Find" obligation or obligation to evaluate.

21.    The evaluation procedures under IDEA have very stringent requirements and methodologies.  20 U.S.C. §§1414(b)(2) and (3).

22.    Evaluations are not simply the opinions of members of the IEP Team or school staff, but rather a scientific testing methodology as described in IDEA that includes "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent . . . [and the] use technically sound instruments."  20 U.S.C. §1414(b)(2).

23.    A teacher "assessment" or "screening of a student by a teacher or specialist to determine appropriate instructional strategies for curriculum implementation shall not be considered to be an evaluation for eligibility for special education and related services."  34 C.F.R. §300.302.

24.    A LEA's failure to comply with its obligation to evaluate may constitute a procedural violation of IDEA.  *DK v. Abington School Dist.*, 696 F.3d 233, 249 (3rd Cir. 2012)

25.     A parent of a child with a disability has the right to an Independent Educational Evaluation ("IEE") at public expense if the parent disagrees with an evaluation obtained by the public agency.  34 C.F.R. §300.502(b)(1).

26.     In response to a demand to fund an IEE, a LEA has two and only two options: (1) it can fund the IEE, or (2) file a due process complaint seeking to deny the IEE.  34 C.F.R. §300.502(b)(2).

27.     If the LEA files a due process complaint seeking to deny the IEE request, it has the burden to prove "that its evaluation is appropriate."  34 C.F.R. §§300.502(b)(2)(i) and (b)(3).

28.     The LEA may not require the parent to explain why he/she is requesting the IEE.  34 C.F.R. §300.502(b)(4).

29.     "If an independent educational evaluation is at public expense, the criteria under which the evaluation is obtained, including the location of the evaluation and the qualifications of the examiner, must be the same as the criteria that the public agency uses when it initiates an evaluation, to the extent those criteria are consistent with the parent's right to an independent educational evaluation."  34 C.F.R. 300.502(e)(1).

30.     Restriction to an 'approved list' of providers violates the IDEA regulation on IEEs.  "Except for the criteria described in paragraph (e)(1) of this section, a public agency may not impose conditions or timelines related to

obtaining an independent educational evaluation at public expense."  34 C.F.R.

§300.502(e)(2).

**Procedural Safeguards**

31.    IDEA guarantees parents and their child with a disability numerous

legal rights identified as "Procedural Safeguards".  *See* 20 U.S.C. §1415.

32.    SEAs and LEAs are required to "establish and maintain procedures in

accordance with this section to ensure that children with disabilities and their

parents are guaranteed procedural safeguards with respect to the provision of a free

appropriate public education by such agencies." 20 U.S.C. §1415(a) (emphasis

added.)

33.    SEAs, such as NJDOE, "must have in effect the policies and

procedures, including sanctions that the State uses, to ensure that its policies and

procedures [IDEA's regulations] are followed and that the requirements of the Act

and the regulations in this part are met."  34 C.F.R. §300.626.

**Parents' Rights in a Due Process Hearing**

34.    One of IDEA's key Procedural Safeguards guaranteed is "[a]n

opportunity for any party to present a complaint with respect to any matter relating

to the identification, evaluation, or educational placement of the child, or the

provision of a free appropriate public education to such child."  20 U.S.C.

§1415(b)(6) ("due process complaint").

35.    From the date of filing the due process complaint, the parties have thirty (30) days within which to settle or otherwise resolve the dispute.  20 U.S.C. §1415(f)(1)(B)(ii).  This is known as the "30 Day Resolution Period".

36.    "Day" within the meaning of IDEA is a calendar day and does not exclude weekends or holidays.  34 C.F.R. §300.11(a).

37.    IDEA provides three options for the parties during the 30 Day Resolution Period, namely, mediation, 20 U.S.C. §1415(e); a resolution meeting, 20 U.S.C. §1415(f)(1)(B); or a waiver of both, 20 U.S.C. §1415(f)(1)(B)(i)(IV); *see also* 34 C.F.R. §300.510(a).

38.    The parties may agree to extend the 30 Day Resolution Period.  34 C.F.R. §300.510(c).

39.    If the case is not resolved during the 30 Day Resolution Period, it proceeds to hearing.  20 U.S.C. §1415(f)(1)(B)(ii).

40.    After termination of the 30 Day Resolution Period, a final decision must be rendered in the due process case within forty-five (45) days.  34 C.F.R. §300.515(a) ("The public agency must ensure that not later than 45 days after the expiration of the 30 day period . . . A final decision is reached in the hearing;" emphasis added.)  This is commonly referred to as the "45 Day Rule".

41.    The timeline for the 45 Day Rule begins at the expiration of the 30 Day Resolution Period.  34 C.F.R. §§300.510(b)(2) and (c).

42.    A hearing officer may grant specific adjournments beyond the 45 days "at the <u>request of either party</u>."  34 C.F.R. §300.515(c) (emphasis added.)

43.    There is no statutory or regulatory authority permitting a hearing officer to *sua sponte* grant an adjournment. *See* 34 C.F.R. §300.515(c).

44.    Parents in a special education due process hearing have a right to "[p]resent evidence and confront, cross-examine, and compel the attendance of witnesses." 34 C.F.R. §300.512(a)(2).

45.    If parents obtain an IEE at their own expense and share the results with the LEA, the IEE report "[m]ay be presented by any party as evidence at a hearing on a due process complaint . . . regarding that child."  34 C.F.R. §300.502(c)(2).

46.    The parties to a special education due process hearing must exchange and disclose documents and a list of witnesses and their anticipated testimony that each party intends to introduce at the hearing "not less than <u>5 business days prior to a hearing.</u>" 20 U.S.C. §1415(f)(2)(A) (emphasis added); 34 C.F.R. §300.512(b)(1). This is known as the "Five-Day Exchange Rule".

47.    "Business Day" is defined as "Monday through Friday, except for Federal and State holidays."  34 C.F.R. §300.11(b).

48.    Failure to comply with the Five-Day Exchange Rule carries serious consequences.  "A hearing officer may bar any party that fails to comply with [the

Five-Day Exchange Rule] from introducing the relevant evaluation or

recommendation at the hearing without the consent of the other party."  20 U.S.C.

§1415(f)(2)(B); 34 C.F.R. §300.512(b)(2).  "Any party to a [due process IDEA]

hearing . . . has the right to [p]rohibit the introduction of any evidence at the

hearing that has not been disclosed to that party at least five business days before

the hearing."  34 C.F.R. §300.512(a)(3) (emphasis added.)

**Requirements of Due Process Hearing Officers**

49.    A hearing officer conducting a special education due process hearing

"shall, at a minimum not be (I) an employee of the State educational agency or the

local educational agency involved in the education or care of the child; or (II) a

person having a personal or professional interest that conflicts with the person's

objectivity in the hearing."  20 U.S.C. §1415(f)(3)(A)(i).

50.    In addition, a special education due process hearing officer "shall, at a

minimum possess knowledge of, and the ability to understand, the provisions of

this chapter, Federal and State regulations pertaining to this chapter, and legal

interpretations of this chapter by Federal and State courts; possess the knowledge

and ability to conduct hearings in accordance with appropriate, standard legal

practice; and possess the knowledge and ability to render and write decisions in

accordance with appropriate, standard legal practice."  20 U.S.C.

§§1415(f)(3)(A)(ii) – (iv).

**Parents' Rights to Review Their Child's Records**

51.     Another IDEA Procedural Safeguard is that parents of a child with a

disability <u>shall</u> be given an "opportunity . . . to examine all records relating to such

child."  20 U.S.C. §1415(b)(1).

52.     A LEA shall comply with the parents' right to examine records

"without unnecessary delay" and prior to a Due Process hearing and "in no case

more than 45 days after the request has been made."  34 C.F.R. §300.613(a).

**Administrative Decisions and Remedies**

53.     For allegations of substantive denials of FAPE, "a decision made by a

hearing officer shall be made on substantive grounds based on a determination of

whether the child received a free appropriate public education."  20 U.S.C.

§1415(f)(3)(E)(i).  This applies the *Endrew F* standard.

54.     "In matters alleging a procedural violation, a hearing officer may find

that a child did not receive a free appropriate public education only if the

procedural inadequacies (1) impeded the child's right to a FAPE; (2) significantly

impeded the parents' opportunity to participate in the decision-making process

regarding the provision of FAPE to the child; or (3) caused a deprivation of

educational benefits." 20 U.S.C. §1415(f)(3)(E)(ii); *see also G.N. ex rel. J.N. v. Bd.

of Educ.*, 309 Fed.Appx. 542, 545-546 (3rd Cir. 2009).

55.    When there is a finding of denial of FAPE, a hearing officer or court "shall grant such relief as the court determines is appropriate."  20 U.S.C. §1415(i)(2)(C)(iii).

56.    IDEA is a fee-shifting statute, whereby if parents are prevailing parties (at any stage of the dispute) "the court, in its discretion, may award reasonable attorneys' fees as part of the costs" in their favor.  20 U.S.C. §1415(i)(3)(B)(i).

57.    If a court finds that the SEA or LEA unreasonably protracted the final resolution of the special education due process case or violated IDEA's procedural safeguards, the court may not reduce the attorney's fee award under IDEA.  20 U.S.C. §1415(i)(3)(G).

## NEW JERSEY REGULATORY SCHEME FOR SPECIAL EDUCATION DISPUTES

58.    New Jersey has established a regulatory scheme for special education and disputes.  *See* N.J.A.C. §§6A:14 *et seq.* and 1:6A *et seq.*

59.    The New Jersey regulations on Special Education were established to comply with the federal IDEA.  N.J.A.C. §§6A:14-1.1 *et seq.*

60.    Similarly, the rules governing contested special education due process hearings were established to comply with IDEA.  "[The New Jersey Administrative] rules are established in implementation of Federal law, at 20

U.S.C.A. 1415 et seq. [IDEA] and 34 CFR 300 et seq. [IDEA regulations] . . . In

any case where these rules could be construed as conflicting with Federal

requirements, <u>the Federal requirements shall apply</u>."  N.J.A.C. §1:6A-1.1(b)

(emphasis added.)  This is known as the "Federal Preemption Doctrine" pursuant

to the Supremacy Clause of the U.S. Constitution.  *See* U.S. Constitution, Article

VI, Clause 2 (federal law "shall be the supreme law of the land; and the judges in

every state shall be bound thereby, anything in the Constitution or laws of any

State to the contrary notwithstanding.")

## Evaluations / IEEs

61.    New Jersey has promulgated regulations that deal with evaluations of

students with suspected or known disabilities.  *See* N.J.A.C. §§6A:14-2.5 and 3.4.

62.    The regulations to some extent expand the IDEA regulations on

evaluations.  For example, New Jersey requires, *inter alia*, that "each district board

of education shall [u]se a variety of assessment tools and strategies to gather

relevant functional and developmental information . . . [n]ot use any single

procedure as the sole criterion for determining whether a student is a student with a

disability or determining an appropriate educational program for the student; and

[u]se technically sound instruments that may assess the relative contribution of

cognitive and behavioral factors, in addition to physical or developmental factors,"

N.J.A.C. §6A:14-2.5(a); that the evaluation procedures are fair and

nondiscriminatory, N.J.A.C. §6A:14-2.5(b)(1); that standardized tests are properly validated and administered according to protocols, N.J.A.C. §6A:14-2.5(b)(2); that "[t]he student is assessed in all areas of suspected disability," N.J.A.C. §6A:14-2.5(b)(3); that "[t]ests are selected, administered and interpreted so that when a student has <u>sensory</u>, manual or <u>communication impairments</u>, the results <u>accurately reflect the ability which that procedure purports to measure, rather than the impairment unless that is the intended purpose of the testing</u>," N.J.A.C. §6A:14-2.5(b)(5); "[t]he evaluation is conducted by . . . other specialists who shall conduct the evaluation in accordance with the procedures in N.J.A.C. 6A:14-3. A minimum of one evaluator shall be knowledgeable in the area of the suspected disability," N.J.A.C. §6A:14-2.5(b)(6); and, "the evaluation is sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the suspected eligibility category," N.J.A.C. §6A:14-2.5(b)(7).

63.     The New Jersey regulations similarly mirror IDEA's regulations regarding parents' requests for an IEE.  *See* N.J.A.C. §6A:14-2.5(c). [2]

---

[2] On March 28, 2012, the U.S. Department of Education Office of Special Education Programs ("USDOE") informed NJDOE that its former regulation N.J.A.C. §6A:14-2.5(c)(1) limiting parents' right to an IEE by giving the school district an opportunity to conduct an assessment in the area not covered by an initial evaluation or reevaluation before granting the parents an IEE violated the federal regulation on school districts having to prove that their evaluation was appropriate.  The USDOE instructed NJDOE to eliminate that provision from the

64.    "Upon completion of an initial evaluation or reevaluation, a parent may request an independent evaluation if there is disagreement with the initial evaluation or a reevaluation provided by a district board of education. A parent shall be entitled to only one independent evaluation at public expense each time the district board of education conducts an initial evaluation or reevaluation with which the parent disagrees. The request for an independent evaluation shall specify the assessment(s) the parent is seeking as part of the independent evaluation request." N.J.A.C. §6A:14-2.5(c).

65.    "Such independent evaluation(s) shall be provided at no cost to the parent unless the school district initiates a due process hearing to <u>show that its evaluation is appropriate</u> and a final determination to that effect is made following the hearing." N.J.A.C. §6A:14-2.5(c)(1) (emphasis added.)

66.    A school district in New Jersey has 20 days to file a due process complaint if it intends to contest the request for an IEE. N.J.A.C. §6A:14-2.5(c)(1)(ii).

---

New Jersey regulations. Peggy McDonald, then Director of NJOSEP, sent numerous memos statewide that school districts may no longer so limit the parents' rights to an IEE. The regulation was finally changed to eliminate that provision on February 2, 2015. *See* Memos dated May 14, 2012; October 1, 2013; September 9, 2014; February 10, 2015; and March 10, 2015 found on NJDOE's website at https://www.nj.gov/education/specialed/memos/#IEE.

67.    An ALJ may also order an IEE "[f]or good cause and after giving the parties an opportunity to be heard."  N.J.A.C. §1:6A-14.4(a).

**Procedural Safeguards**

68.    Special education Procedural Safeguards fall under N.J.A.C. §6A:14-2 *et seq.*, including due process hearings.  N.J.A.C. §6A:14-2.7.

69.    NJDOE is responsible for monitoring "all programs and services required by this chapter for compliance with New Jersey statutes, the New Jersey Administrative Code, the approved special education plan and Federal requirements under the Individuals with Disabilities Education Act (IDEA)." N.J.A.C. §6A:14-9.1(a).

70.    NJDOE is also responsible for enforcing compliance with the regulations.  N.J.A.C. §§6A:14-9.1(d) - (h) and 14-9.2.

**Parents' Rights in a Due Process Hearing**

71.    In New Jersey, a special education due process hearing may be requested when there is a dispute "regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free, appropriate public education, or disciplinary action."  N.J.A.C. §6A:14-2.7(a).

72.     A due process hearing is initiated when a person files a written complaint with NJOSEP.  N.J.A.C. §6A:14-2.7(c).

73.    "The rules in this chapter shall apply to the notice and hearing of matters arising out of the Special Education Program of the Department of Education, pursuant to N.J.A.C. 6A:14." N.J.A.C. §1:6A-1.1(a).

74.    "Since [the special education due process hearing] rules are established in implementation of Federal law, <u>they may not be relaxed except as specifically provided herein or pursuant to Federal law</u>." N.J.A.C. §1:6A-1.1(c) (emphasis added.)

75.    In general, the party against whom the complaint is filed must file an answer within 10 days. N.J.A.C. §§6A:14-2.7(d) and (e).

76.    The New Jersey regulations also provide for the 30 Day Resolution Period. N.J.A.C. §§6A:14-2.6(d)(3) and 2.7(h).[3]

77.    If a LEA files for due process, there is no resolution meeting and, absent a request for mediation, shall be transmitted immediately to OAL. N.J.A.C. §6A:14-2.7(h)(11).

78.    If the due process complaint is not resolved within 30 days, NJDOE transmits the case to OAL. N.J.A.C. §§6A:14-2.7(h)(4)[4] and 1:6A-3.1 ("Upon unsuccessful conclusion of the resolution process or mediation, as provided in

---

[3] The timelines for an expedited due process complaint, not relevant herein, are shorter.

[4] *See* preceding fn.

N.J.A.C. 6A:14-2.7, the Office of Special Education Programs shall immediately transmit the matter with the transmittal form to the Office of Administrative Law.")

79.    "Upon unsuccessful conclusion of the resolution process or mediation, as provided in N.J.A.C. 6A:14-2.7, the representative of the Office of Special Education Programs shall immediately contact the Clerk of the Office of Administrative Law and the Clerk shall assign a peremptory hearing date. The hearing date shall, to the greatest extent possible, be convenient to all parties but shall be approximately 10 days from the date of the scheduling call."  N.J.A.C. §1:6A-3.1 (emphasis added.)  This is known as the "10 Day Peremptory Hearing Date".

80.    "Peremptory" is not defined in the New Jersey regulations, but is generally defined in the legal context as "definite and absolute, final and not entitled to delay or reconsideration."[5]

81.    Once the case is transmitted to OAL, "A final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period . . . unless specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute."

---

[5] See USLegal, Legal Definitions (2019), https://definitions.uslegal.com/p/peremptory/.

N.J.A.C. §6A:14-2.7(j) (emphasis added.)  This is known as the "Adjournment Rule".

82.    The 45 day period begins to run at the expiration of the 30-day resolution period.  N.J.A.C. §6A:14-2.7(j)(1).

83.    There is no formal discovery in due process cases.  "Discovery shall, to the greatest extent possible, consist of the informal exchange of questions and answers and other information.  Discovery may not include requests for formal interrogatories, formal admissions or depositions."  N.J.A.C. §1:6A-10.1(d).

84.    New Jersey has adopted the Five-Day Exchange Rule.  N.J.A.C. §1:6A-10.1 (including "documentary evidence and summaries of testimony intended to be introduced at the hearing.")

85.    The New Jersey regulations empower the OAL and ALJs to bar evidence when there is a violation of the Five-Day Exchange Rule.  "Upon application of a party, the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing."  N.J.A.C. §1:6A-10.1(c).

86.    The reason for the 30 Day Resolution Period, the 10 Day Peremptory Hearing Date, the Five-Day Exchange Rule, and informal discovery is to ensure compliance with the 45 Day Rule.

## Requirements of Due Process Hearing Officers

87.     "A due process hearing is an administrative hearing conducted by an administrative law judge."  N.J.A.C. §6A:14-2.7(a).

88.     An ALJ is defined as ""a person appointed pursuant to N.J.S.A. 52:14F-4 [appointment, salary, retirement] or N.J.S.A. 52:14F-5(m) [temporary or emergency appointment] and assigned by the Director of the Office of Administrative Law to preside over contested cases and other proceedings." N.J.A.C. §1:1-2.1.

89.     The only qualifications specified in the New Jersey statutes are that ALJs, appointed after 1981, must be "attorneys-at-law of [New Jersey] for a minimum of five years" and "qualified in the field of administrative law or in a subject matter relating to the hearing functions of a State agency."  N.J.S.A. §§52:14F-5(l) and (m).

## Parents' Rights to Review Their Child's Records

90.     New Jersey also requires that "All student records shall be maintained according to N.J.A.C. 6A:32" and that parents, the adult student, or a duly appointed representative "shall be permitted to inspect and review the contents of the student's records maintained by the district board of education under N.J.A.C. 6A:32 without unnecessary delay and before any meeting regarding the IEP." N.J.A.C. §6A:14-2.9.

91.    The regulation does not expressly require the provision of those records prior to a due process hearing.

**Administrative Decisions and Remedies**

92.    "The decision made by an administrative law judge in a due process hearing shall be made on substantive grounds based on a determination of whether the child received a free, appropriate public education (FAPE)."  N.J.A.C. §6A:14-2.7(k).

93.    If a due process complaint alleges procedural violations, the ALJ may find a denial of FAPE only if the violations: "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." N.J.A.C. §6A:14-2.7(k).

94.    "The decision of the administrative law judge is final, binding on both parties and to be underlined implemented without undue delay unless stayed according to N.J.A.C. 1:6A."  N.J.A.C. §6A:14-2.7(l).

**ABOUT NJDOE**

95.    States can receive federal funding for special education "if the State submits a plan that provides assurances to the [U.S. Secretary of Education] that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:  Free Appropriate Public Education ("FAPE") is

available to all children with disabilities residing in the State between the ages of 3 and 21 . . . Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title" among other rights.  20 U.S.C. §1412(a)(6)(A) (emphasis added.)

96.    Upon information and belief, NJDOE submitted a plan to the United States Secretary of Education ensuring that it has procedural safeguards in place for children with disabilities in the State of New Jersey.

97.    NJDOE receives federal funds pursuant to IDEA, and therefore must comply with the statute's provisions.

98.    As SEA, NJDOE is mandated to ensure that all LEAs comply with the requirements of IDEA.  20 U.S.C. §1412(a)(11)(A).

99.    Congress abrogated state sovereign immunity "from suit in Federal court for a violation of [IDEA]."  20 U.S.C. §1403(a).

100.   "In a suit against a State for a violation of [IDEA], remedies (including remedies both at law and in equity) are available for such a violation to the same extent as those remedies are available for such a violation in the suit against any public entity other than a State."  20 U.S.C. §1403(b).

## ABOUT THE OAL

101.   OAL "was established in 1979 to create a central independent agency to conduct administrative hearings, thus promoting due process, expediting the just

conclusion of contested cases, and improving the quality of administrative justice."

(From the OAL website, https://www.nj.gov/oal/, as of May 3, 2018[6].)

102.  "OAL is an Executive Branch agency."  (OAL website.)

103.  "OAL employs a corps of administrative law judges ('ALJ') who hear

contested cases for state agencies and issue initial decisions."  (OAL website.)

104.  NJDOE has designated OAL as the agency to conduct the

administrative hearing for special education disputes.  N.J.A.C. §6A:14-2.7.

105.  OAL hears cases for most state agencies, including special education

due process cases for the NJDOE.  Thus, OAL has a substantial docket covering

most of the New Jersey executive branch agencies.  OAL is not dedicated solely to

handling cases arising under IDEA or other similar statutes which provide legal

rights to children with disabilities and their families.

106.  OAL, either in conjunction with NJDOE or on its own volition,

instituted a program in approximately 2015 whereby a "pre-hearing" date was

scheduled shortly after transmission of a special education due process case from

NJDOE.  The "pre-hearing" is conducted as a settlement conference[7] with an ALJ

---

[6] Hereinafter, "OAL website".

[7] Indeed, this practice violates the New Jersey Administrative Code as the Special
Education Program Rules do not authorize ALJs to conduct settlement
conferences.  *See* N.J.A.C. §1:6A-4.1(a) ("The scheduling of a hearing shall not
preclude voluntary ongoing efforts by the parties to settle the matter before or at
the hearing"; emphasis added.)

presiding and the parties present, but designated as a "hearing date" within OAL's docketing system.  NJOSEP issues a standard form "Hearing Notice" with a date set which contains the following language:

a.  "Parents and Guardians have a right to examine relevant school records relating to their child. <u>If you have not seen those records, contact the Board of Education immediately</u>.";

b.  "<u>All evidence including documents and summaries of expected testimony that either party intends to use at the hearing must be disclosed to the other party at least 5 days before the hearing. If you do not comply with this requirement, you may be prevented from presenting the evidence at the hearing</u>.";

c.  "A judge will decide the case based only on what is presented at the hearing. <u>If you would like the judge to consider any papers, you must have them at the hearing</u>. If you want any witnesses to testify, you must arrange for their attendance at the hearing. If you are not sure that they will attend the hearing, you should serve them with a subpoena and the appropriate fee. This should occur within a reasonable time before the hearing, and if possible, at least three days before the hearing.";

d.  "Legal briefs and other memoranda or argument cannot be submitted after the hearing. <u>You should be prepared to offer these submissions at the hearing</u> with the final argument.";

e.  "<u>If you do not attend the hearing, the judge may dismiss your case</u> or order that an action requested by the other side be granted."; and

f.  "The procedure for this hearing is fully set out in the Uniform Administrative Procedure rules . . . ."

(Emphasis added.)

107.  This OAL practice of using the initial hearing date as a settlement conference occurs on Thursdays, alternating between the Newark and Mercerville

OAL locations, and is commonly referred to as "Settlement Thursday" by the OAL and school district bar.[8]  Every Thursday on the OAL calendar is blocked off as unavailable for a hearing date because nearly every ALJ is conducting "Settlement Thursday".

108.    "Settlement Thursday" was begun to enable OAL to distort the timeline and to cover up its historic violations of the 45 Day Rule and fraudulently assert that the delays to final decision were the result of adjournments requested by the parties and/or granted by the ALJ.

109.    If parties to a special education due process case do not settle the case during "Settlement Thursday", the OAL assigns the case to a new ALJ[9] who will conduct the hearing.  The newly-assigned ALJ will set an initial status conference for the case during which the ALJ will schedule the actual hearing dates.  Those hearing dates are based on the OAL calendar and the available dates on that individual ALJ's calendar.  The hearing dates are almost universally beyond the deadline of the 45 Day Rule.

---

[8] There are law firms and counsel that regularly represent a majority of the school districts in the State of New Jersey and will be referred to as the "school district bar".

[9] The "Settlement Thursday" practice precludes the "settlement ALJ" from presiding over the hearing because they have now been privy to settlement negotiations, including possible admissions against interest, of the parties.

110.    Rarely, if ever, can an ALJ schedule a hearing for two or more consecutive days due to the OAL and Doe ALJs' calendars, especially because of "Settlement Thursday".  Typically, special education hearing dates are spread out, non-consecutively, over two or more months because of calendar issues and other responsibilities of Doe ALJs.  In most cases, hearing dates are scheduled five (5) or more months out from the pre-hearing date.

111.    Doe ALJs and the OAL are unable to grant brief adjournments, *e.g.* illness of a party or witness, death in the family, or scheduling conflict of a party, because of the OAL system and Settlement Thursday.  Most adjournments are typically for several weeks or months because of the individual ALJ's or the OAL's schedule.

112.    NJDOE has limited the jurisdiction of the OAL.  "[T]he OAL is part of the executive, not the judicial, branch and the OAL is not a "court' within the intent of . . . the IDEA. ALJs are executive branch judges."  *D.T. o/b/o L.T. v. Willingboro Township Board of Education, et al.*, OAL Dkt. Nos. EDS9218-14, EDS9219-14, EDS11302-14, EDS12445-14 (ALJ Robert Bingham II Decision Oct. 27, 2014).  The "OAL does not have jurisdiction to determine who is a prevailing party, for purposes of a party's intent to seek attorney's fees [under IDEA] later in a Federal District Court."  *Id.*  There is no basis for this jurisdictional limitation in either IDEA or the New Jersey Administrative Code.

Indeed, the Third Circuit has suggested that ALJs do have the authority to rule on prevailing party status and attorney's fees. *S.D. v. Haddon Heights Bd. of Educ.*, U.S.C.A. 3rd Circuit No. 15-1804 (January 31, 2018) [Not Precedential] (attorney's fees are appropriate forms of relief that an IDEA hearing officer may award, *citing Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, F.3d 176, 185 (3rd Cir. 2009).)

113.    Another problem caused by "Settlement Thursday" and the jurisdictional limitation on the OAL is it disincentivizes school districts from resolving cases during the 30 Day Resolution Period.  School districts will rarely, if ever, offer attorney's fees and costs as part of a settlement during the 30 Day Resolution Period or even at a "Settlement Thursday" because they know that ALJs will not (and cannot) compel them, even though the Third Circuit has stated that a settlement offer that excludes attorney's fees and costs in a special education case may properly be rejected by parents.  *See Rena C. v. Colonial School Dist.*, 890 F. 3d 404, 420 (3rd Cir. 2018) (Held, "a parent is substantially justified in rejecting [a settlement] offer that does not include the payment of reasonable attorney's fees when the school district cannot reasonably believe that no attorney's fees have accrued.")

114.    Upon information and belief, Doe ALJs do not receive and neither NJDOE nor the OAL provides adequate training or instruction on IDEA or its

regulations or the New Jersey regulations, specifically the rigors of the 10 Day Peremptory Hearing, the Five-Day Exchange Rule, and the 45 Day Rule, and therefore do not meet IDEA's requirements for hearing officers.

115.    Parents must wait until their OAL case has been exhausted before they can pursue other forms of relief, including attorney's fees, or appeal an ALJ decision under the NJDOE system.  Strict adherence to the timelines is critical to the legal rights of the parties.

## THE PRACTICAL EFFECTS OF NJDOE'S APPOINTMENT OF THE OAL AS ARBITERS OF SPECIAL EDUCATION DISPUTES

116.    In 2016, the New Jersey Special Education Practitioners ("NJSEP")[10] created a task force to study the State of New Jersey's compliance with the 45 Day Rule.  The study was extensive and reviewed NJDOE's own statistics on special education cases and their timelines.  The final report was submitted to New Jersey Governor Phil Murphy with copies to then-Commissioner of Education Lamont Repollet ("Repollet"); then-Acting OAL Director and Chief ALJ Lisa James-Beavers ("Beavers"); and, John Worthington, then-Director of NJOSEP; among others, on March 21, 2018 ("45 Day Report").

---

[10] NJSEP consists of more than one hundred (100) attorneys and professional advocates in the State of New Jersey who represent exclusively children with disabilities and their parents in special education disputes.

117.    The NJSEP 45 Day Report found that, despite the federal and state law requirements that special education cases brought pursuant to IDEA should be decided within 45 days after the 30-day resolution period, <u>on average</u> such cases took **three hundred twelve (312) days**[11] to be adjudicated.

118.    The 45 Day Report found New Jersey was noncompliant with the 45 Day Rule dating back to 2011.  NJSEP called upon those with authority - Governor Murphy, the NJDOE, then-Commissioner Repollet, and then-Acting OAL Director Beavers, to take immediate action to rectify noncompliance.

119.    In addition, the 45 Day Report findings disclosed that overall school districts in New Jersey prevailed in 70% of the special education due process cases before the OAL.  In cases where parents appeared *pro se*, the school districts prevailed in 93% of the decisions.

120.    On May 6, 2019, after an investigation conducted by the United States Department of Education Office of Special Education and Rehabilitative Services ("OSERS"), Laurie VanderPloeg, the U.S. Director of the Office of Special Education Programs ("USOSEP") issued a letter to Repollet finding that the NJDOE was noncompliant on the 45 Day Rule.  Specifically, USOSEP found that NJDOE improperly used a system of "Federal days" instead of calendar days to

---

[11] This number reflects cases that did not seek emergent relief or were not filed as expedited due process matters.

calculate the 45-day timeline.  However, NJDOE "was unable to provide its

definition of 'Federal day' or method for calculating the 45-day timeline, and

acknowledged that it does not have a mechanism for ensuring that ALJs who serve

as hearing officers are reaching hearing decisions and mailing a copy of the

decision to the parties within the 45-day timeline.  Proper calculation of the due

process hearing decision timeline using calendar days is essential to ensuring the

timely resolution of due process complaints filed by parents and school districts on

matters relating to the identification, evaluation, educational placement of a child

with a disability, or the provision of a free appropriate public education to the

child."  Further, USOSEP found that NJDOE has "no mechanism to ensure that

adjournments are granted at the request of a party and that the ALJ specifies either

the length of the adjournment or the date by which the decision will be mailed to

the parties."  The noncompliance letter concludes that "[US]OSEP determined that

[NJDOE] does not have procedures for ensuring that decisions in due process

hearings are issued within the 45-day timeline or within allowable extensions . . .

and [NJDOE] does not have procedures for ensuring that ALJs who serve as

hearing officers grant adjournments, as set forth in N.J.A.C. 1:6A-9.2, consistent

with the provision for granting extensions of the 45-day timeline in 34 C.F.R.

§300.515(c) for a specific period of time and at the request of a party.

Consequently, NJDOE has failed to exercise its general supervisory and

monitoring responsibility in 20 U.S.C. §§1412(a)(11) and 1416(a) and 34 C.F.R.

§§300.149 and 300.600 and 20 U.S.C. §1232d(b)(3)(A) to ensure that due process

hearing decisions are issued within the 45-day timeline or within an allowable

extension, as required by 34 C.F.R. §300.515(a) and (c)."

121.   To date and despite two pending class actions on the 45 Day Rule,

namely, *J.A., et al. v. New Jersey Dept. of Educ., et al.*, U.S.D.C. D.N.J. Civil No.

1:18-cv-09580-NLH-KMW and *C.P., et al. v. N.J. Dep't of Education,* U.S.D.C.

D.N.J. Civil No. 1:19-cv-12807-NLH-KMW, Defendants NJDOE, OAL and Doe

ALJs have taken no steps to remedy noncompliance.  Indeed, the NJDOE and OAL

continue to use the phrase "Federal days" despite the USDOE's explicit instruction

to cease and desist the practice.

122.   Because of the systemic violation of IDEA, the federal regulations,

and the New Jersey Administrative Code, and noncompliance with directives from

the USDOE, there is great harm to children with disabilities and their families

because they are being denied a Free Appropriate Public Education ("FAPE"), to

which they are entitled, for long periods of time and made to suffer with

inadequate IEPs, services, and therapies; inaccurate evaluations; failure to

implement IEPs; and/or incurring substantial attorney's fees in the process.  This is

a great harm to Plaintiffs and to the education system in the State of New Jersey as

a whole.

123.    In addition, counsel for LEAs use the delays inherent in the systemic flaws of NJDOE's system for resolving special education disputes as a strategic advantage knowing that most families (a) lack adequate financial resources to engage counsel to represent them; (b) lack adequate financial resources to endure a lengthy legal dispute beyond 45 days; (c) develop 'litigation fatigue' and will compromise their claims less favorably than they would if they received a decision in compliance with the 45 Day Rule; and (d) lack knowledge of IDEA's legal protections and legal expertise to conduct a special education dispute in accordance with legal procedures and principles, thereby laying a proper foundation for appeal if necessary.

## FACTUAL BACKGROUND – DP CASE

124.    In January 2011, J.A. was evaluated by Mariko Nakanishi, M.D., of The Division of Child Development, Rehabilitation, and Metabolism at the Children's Hospital of Philadelphia ("CHOP").  On May 19, 2011, Dr. Nakanishi wrote a report indicating J.A. was diagnosed with Autism, a feeding disorder, and developmental delays ("2011 CHOP Eval").  The 2011 CHOP Eval contained numerous recommendations for therapies and early interventions for J.A.

125.    Shortly thereafter, J.A.'s mother submitted the 2011 CHOP Eval to MTBOE.

126.   On June 15, 2011, MTBOE reviewed the 2011 CHOP Eval and marked that MTBOE accepted the evaluative data and diagnoses, but rejected the recommendations for the school environment and J.A.'s IEP.

127.   On August 8, 2011, Cynthia Marx, OTR/L[12], conducted an occupational therapy evaluation of J.A. at CHOP Specialty Care Center in Atlantic County, NJ and issued an evaluation report ("2011 OT Eval"). The 2011 OT Eval concluded that J.A. presented with numerous issues including "impaired sensory processing" and had numerous recommendations and goals to help J.A.'s development.

128.   J.A.'s mother likewise submitted the 2011 OT Eval to MTBOE.

129.   On October 12, 2011, MTBOE reviewed the 2011 OT Eval and marked that MTBOE accepted the evaluative data and diagnoses, but rejected Cynthia Marx's recommendations from the report.

130.   On October 21, 2015, Audiology Partners, LLC performed a Central Auditory Processing Evaluation on J.A. ("2015 Audiology Eval"). Ruth Brenner, Au.D. FAAA ("Ms. Brenner"), and Erin Mack, Doctoral Student of Audiology, provided a report from the 2015 Audiology Eval. Ms. Brenner and Ms. Mack concluded that J.A. "has a severe auditory processing disorder in the areas of

---

[12] OTR/L is the designation for Registered and Licensed Occupational Therapist.

Decoding (DEC) and Tolerance Fading Memory (TFM)" and made a number of recommendations for J.A. in the school environment.

131.    J.A.'s mother submitted the 2015 Audiology Eval to MTBOE.

132.    On November 13, 2015, MTBOE reviewed the 2015 Audiology Eval. MTBOE accepted only the diagnosis of Ms. Brenner and Ms. Mack, but rejected the evaluative data and their recommendations.

133.    On May 24, 2017, J.A. was reevaluated by Audiology Partners LLC. Ms. Brenner stated that J.A. "still has an auditory processing disorder in the areas of Decoding (DEC) and Tolerance Fading Memory (TFM)" and made a number of recommendations for J.A. in the school environment ("2017 Audiology Eval").

134.    J.A.'s mother submitted the 2017 Audiology Eval to MTBOE.

135.    MTBOE similarly rejected the 2017 Audiology Eval.

136.    On August 8, 2017, Allyson Bernstein, Center Director of Huntingdon Learning Center, conducted an educational evaluation of J.A. ("2017 Education Eval"). In her report, Ms. Bernstein found that J.A. was not performing at grade level and recommended tutoring for J.A.

137.    J.A.'s mother submitted the 2017 Education Eval to MTBOE.

138.    On September 19, 2017, MTBOE reviewed the 2017 Education Eval. MTBOE partially accepted the report, but rejected the recommendations.

139.   In a separate proceeding captioned *J.A., et al. v. Monroe Twp. Bd. of Educ.*, OAL Dkt. Nos. EDS 08588-17 and EDS 11524-18 [Consolidated] ("OAL Case #1"), on May 1, 2018, an Order was entered making J.A.'s November 15, 2016 IEP her 'stay put' placement.

140.   On August 20, 2018, Ellen Del Moro, M.D. ("Dr. Del Moro"), wrote a letter recommending homebound instruction for J.A. because, in addition to her diagnosed Autism, she "also suffers from <u>central auditory processing disorder</u> . . . [and] also has <u>severe anxiety</u>.  <u>Her central auditory processing contributes to her auditory fatigue</u>.  She gets worsening anxiety and overwhelmed and overwhelmed in a noisy, crowded environment, which in turn can lead to <u>school avoidance and occasional missed time from school</u>."  ("2018 Medical Letter".)

141.   J.A.'s mother submitted the 2018 Medical Letter to MTBOE.

142.   Plaintiffs and representatives of MTBOE held numerous IEP meetings during the fall of 2018.  During most of those, MTBOE would not agree to homebound instruction despite Dr. Del Moro's medical recommendation.  MTBOE refused to change J.A.'s classification from "Specific Learning Disability" to "Autism", despite the Autism diagnosis for several years.

143.   Finally, in or about January 2019, MTBOE agreed to place J.A. on homebound instruction and added social skills hours to her IEP.

144.   All parties agree that homebound instruction is not the Least

Restrictive Environment ("LRE") from J.A. and desire to return her to the public

school in the right conditions addressing all her disabilities.

145.   On September 12, 2019, ALJ Kennedy entered an Order in OAL Case

#1 that homebound instruction for J.A. is her Stay-Put placement during the

pendency of proceedings "upon the recommendation of J.A.'s treating physician,

Dr. Del Moro because of the anxiety that results from the school environment" and

referencing the 2018 Medical Letter.

## PROCEDURAL HISTORY – DP CASE

146.   Plaintiffs demanded that MTBOE fund an Independent Education

Evaluation ("IEE") – called an Auditory Evoked Potential[13] test – pursuant to

IDEA's regulations, 34 C.F.R. §300.502(b)(1), via letter dated February 17, 2020.

The purpose of the IEE is to determine if J.A.'s CAPD is neurological in nature

and what alternative therapies or accommodations can be made in the school

environment so that J.A. could return to the public school from homebound

instruction.

---

[13] Also called a Brainstem Auditory Evoked Potentials ("BAEP") or Brainstem
Auditory Evoked Response ("BAER") test.  It is a test that "measures the
functioning of the auditory nerve and auditory pathways in the brainstem."  *See*
"What are brainstem auditory evoked potential (BAEP) tests?," Evans and
Benbadis *et al.*, *Medscape* (Oct. 25, 2019),
https://www.medscape.com/answers/1137451-176427/what-are-brainste.

147.   Instead of funding the IEE, MTBOE filed a due process complaint with NJOSEP on March 5, 2020 against the J.A. Family seeking to deny the IEE and it was assigned Agency No. 2020-31368.

148.   On March 14, 2020, Plaintiffs timely filed their Answer to the complaint and repeatedly averred that MTBOE filed the complaint in bad faith because it had never conducted an evaluation for J.A.'s Central Auditory Processing Disorder ("CAPD") and never accepted the prior private evaluations and recommendations submitted by Plaintiffs.

149.   A resolution meeting was held via conference call, after a 60 day extension due to the Coronavirus, with the parties and counsel on May 19, 2020, but failed to resolve the case despite a very reasonable settlement demand by the J.A. Family.

150.   On that same date, the parties advised NJOSEP that the DP Case did not resolve and requested NJOSEP to transmit the case for hearing to the OAL.

151.   NJOSEP transmitted the case to OAL on May 19, 2020, captioned the case *Monroe Twp. Bd. of Ed. v. J.A., et al.*, OAL Dkt. No. EDS 04281-2020 S ("DP Case"), and issued a Hearing Notice to the parties setting a hearing date of June 4, 2020 and assigning the case to "ALJ Bogan in OAL's Mercerville (Trenton) location ("June 4 Hearing Notice"). The case transmittal from NJOSEP

included the language "Zero federal days used" despite the USDOE's instruction

not to more than a year prior.  (*See supra* ¶¶120-121.)

152.   The Hearing Notice is the standard form used by NJOSEP for a case

transmittal.  (*See supra* ¶106.)

153.   The June 4 Hearing Notice contained the following language, in

pertinent part:

a.   Please be advised that the above referenced matter has been transmitted to the Office of Administrative Law (OAL). <u>A hearing before an Administrative Law Judge has been scheduled for</u>: June 4, 2020, 9:00 am,  . . . Judge: MaryAnn Bogan (Trenton);

b.   You have the right to be represented by an attorney or by an individual with special knowledge and training regarding handicapped children;

c.   "Parents and Guardians have a right to examine relevant school records relating to their child. <u>If you have not seen those records, contact the Board of Education immediately</u>.";

d.   "<u>All evidence including documents and summaries of expected testimony that either party intends to use at the hearing must be disclosed to the other party at least 5 days before the hearing. If you do not comply with this requirement, you may be prevented from presenting the evidence at the hearing</u>.";

e.   "A judge will decide the case based only on what is presented at the hearing. <u>If you would like the judge to consider any papers, you must have them at the hearing</u>. If you want any witnesses to testify, you must arrange for their attendance at the hearing. If you are not sure that they will attend the hearing, you should serve them with a subpoena and the appropriate fee. This should occur within a reasonable time before the hearing, and if possible, at least three days before the hearing.";

f.   "Legal briefs and other memoranda or argument cannot be submitted after the hearing. <u>You should be prepared to offer these submissions at the hearing</u> with the final argument.";

g.   "<u>If you do not attend the hearing, the judge may dismiss your case</u> or order that an action requested by the other side be granted."; and

h.   "The procedure for this hearing is fully set out in the Uniform Administrative Procedure rules . . . ."

154.   In no place on the June 4 Hearing Notice does it indicate that it is a settlement conference.

155.   Due to a scheduling conflict, Plaintiffs requested a "brief adjournment" of the June 4, 2020 hearing date and, with the consent of MTBOE, the case was rescheduled by the OAL for hearing on June 18, 2020 with the issuance of an amended Hearing Notice ("June 18 Hearing Notice").

156.   Plaintiffs did not request a 2 week adjournment.  Rather, the adjournment by the OAL was a direct result of their "Settlement Thursday" practice.  (*See supra* ¶¶106-111, 113.)

157.   The June 18 Hearing Notice contains the following language, in pertinent part:

a.   "Parties <u>must</u> appear on: Date: 06/18/2020, Time: 9:00AM, Location: 9 Quakerbridge Plaza Mercerville, NJ 08619";

b.   "<u>Prior to commencement of the hearing</u>, parties <u>must</u> be prepared to discuss resolution of the case and stipulations of fact";

c.   "The procedure for the hearing is fully set out in the rules of the Office of Administrative Law (OAL) . . . .";

d.   "<u>Parties must disclose all evidence including documents and summaries of anticipated testimony to the other party at least 5 days before the hearing. If you do not, you may be prevented from presenting the evidence at the hearing</u>";

e.   "Please bring one copy of any document you wish to offer into evidence"; and

f.   "<u>If you do not attend the hearing, the judge may dismiss your case</u> or order that the action requested by the other side be granted."

158.   In anticipation of and preparation for the hearing, Plaintiffs requested access to J.A.'s records and that the documents be produced by June 8, 2020 pursuant to the Procedural Safeguards under IDEA and pursuant to FERPA so that the J.A. Family could adequately review those documents and comply with the Five-Day Exchange Rule set forth in the June 18 Hearing Notice.

159.   On June 9, 2020, MTBOE responded to the records request as follows: "This is a preliminary response acknowledging receipt of your letter dated June 2, 2020 in this matter. <u>Your self-imposed deadline of June 8, 2020 is unreasonable and unsupported by the law</u>. Without any admissions, even if the District were to provide access, the school building are closed. It will take longer time to retrieve any documents and transmit them to you. <u>Further, there is no urgency in this matter</u>, as you have incorrectly stated. I will get back to you with a more complete response."

160.   Plaintiffs duly and properly served a subpoena on John Armano, Esq. ("Armano subpoena") on June 9, 2020 to appear as a witness at the DP Case hearing set for June 18, 2020.  Armano was subpoenaed as a witness because he had attended numerous IEP meetings on behalf of MTBOE and had first-hand knowledge related to the requested IEE.

161.   Despite the lack of documents from MTBOE and the time restrictions involved, the J.A. Family prepared extensively for the June 18, 2020 hearing.

162.   Plaintiffs hand-delivered their Five-Day Exchange documents and list of witnesses to MTBOE on June 11, 2020 at approximately 1:45 p.m. and also sent confirmation via email on that same date at 4:45 p.m.

163.   MTBOE did not provide its Five-Day Exchange by close of business on June 11, 2020 and did not produce any documents prior to the scheduled on June 18, 2020.

164.   On  June 12, 2020, Plaintiffs filed a Motion to Bar Evidence against MTBOE premised upon MTBOE's failure to comply with the Five-Day Exchange Rule.

165.   The OAL acknowledged receipt of the Motion to Bar Evidence on June 12, 2020, but indicated that ALJ Bogan would address the motion on June 18, 2020.

166.   Plaintiffs replied to the OAL that June 18, 2020 was a hearing date and that the Motion to Bar Evidence should be decided prior to that date.

167.   The OAL denied the statement that June 18, 2020 was a hearing date and ALJ Bogan's administrative assistant responded via email, "In accordance with my email dated June 11, 2020 . . . this case is scheduled for a <u>settlement conference on June 18, 2020</u>."

168.   Plaintiffs directed the OAL's attention to the June 18 Hearing Notice and stated, "Note that nowhere in the attached Hearing Notice is the phrase 'settlement conference'.  <u>Respondents demand that 6/18 be a hearing</u> or we will have to seek relief from either the OAL, NJDOE and/or the federal court."

169.   MTBOE then joined in the debate, by and through counsel, stating, "I have had the opportunity to review this email chain. <u>The proceeding scheduled for June 18, 2020 in this matter is a settlement conference</u>. . . . As an attorney who has appeared before the OAL in special education matters in the past, Mr. Thurston is aware that <u>the first appearance before the ALJ is a settlement conference and that Thursdays are reserved for settlement conferences</u> so that the parties have the opportunity to explore resolution. . . . <u>To be clear, the June 18, 2020 is not an evidentiary hearing</u>. My client and I look forward to the <u>settlement conference</u> with Judge Bogan."

170.    Plaintiffs, by and through counsel, sent a final email to make the J.A. Family's position unequivocal.  "I would like to emphasize that Ms. Dev (a) does not and cannot speak for me; (b) is not the judge on this case, nor is she a judge or representative of the OAL; and (c) despite what the 'common practice' may be, it is in direct violation of IDEA, its regulations, and the NJAC. The first scheduled date according to the Notice issued by the OAL is a HEARING date and Ms. Dev has no power to alter that. It is actually Ms. Dev (and other school district counsel) who abuse the system, inherently flawed in design by the NJDOE and OAL, and needlessly increase the cost of litigation and the violation of the 45 Day Rule, for which there is already a pending class action[14]. . . . It is again an abuse of the system by school districts and their attorneys to resist settlement during the 30 Day Resolution period knowing that they will get another date to delay and pretend to discuss settlement in the OAL."

171.    As a result of the email exchange on June 12, 2020, the OAL reassigned the DP Case to Defendant ALJ Ascione and set a prehearing conference for June 16, 2020.

---

[14] This is a reference to the pending class actions captioned *J.A. v. New Jersey Department of Education, et al.*, U.S.D.C. D.N.J. Civil No. 1:18-cv-09580-NLH-KMW and *C.P., et al. v. New Jersey Department of Education, et al.*, U.S.D.C. D.N.J. Civil No. 1:19-cv-12807-NLH-KMW.

172.    During the June 16, 2020 conference call with ALJ Ascione, the

following statements were made:

a.    ALJ Ascione acknowledged the parties and stated that the DP
Case involved the "small issue of an evaluation" at public
expense;

b.    With respect to the J.A. Family's Motion to Bar Evidence,
Plaintiffs requested that ALJ Ascione grant the motion.  He
refused to and stated, "That's not the procedure in the OAL.
[MTBOE] gets 10 days to respond to the motion and then 5
days for a reply."  Plaintiffs voiced disagreement with ALJ
Ascione as it was contrary to federal law and regulations;

c.    Plaintiffs reminded ALJ Ascione of a pending class action on
the 45 Day Rule.  He responded defiantly, "I am not in that
case.  Nobody has served me." Plaintiffs politely answered that
he was indeed subject to the jurisdiction of that case as a Doe
ALJ and that the OAL was already a party in the action and that
he is an employee of the OAL.  ALJ Ascione essentially said
that doesn't matter;

d.    ALJ Ascione asked when the parties were ready for hearing.
Plaintiffs responded, "Thursday, June 18."  ALJ Ascione stated,
"That is disingenuous based on the customs of the OAL";

e.    Plaintiffs requested that ALJ Ascione put all of his statements /
rulings in writing in an Order.  ALJ Ascione snapped, saying, "I
have 7 days to issue a prehearing Order";

f.    ALJ Ascione asked the parties how long the trial would be and
all agreed no more than one day.  MTBOE said it would be
filing a motion to suppress the Armano subpoena duly issued
and served to MTBOE's prior counsel as a witness;

g.    ALJ Ascione then set up the briefing schedule on the motions
as follows: (1) on the Motion to Bar Evidence, he set response
due 6/22/2020 and reply due 6/29/2020; and (2) on the as-yet
filed motion to suppress Armano subpoena, it must be filed by

Friday, 6/19/2020, response due 6/29/2020, and reply due 7/6/2020;

h.   ALJ Ascione set hearing dates of July 9 and 10, 2020 via Zoom; and

i.   Thereafter, ALJ Ascione said he would issue a prehearing Order with these dates by the end of the week and the call terminated.

173.   On June 18, 2020, MTBOE filed its motion to quash the Armano subpoena.  Thereafter, Plaintiffs timely filed opposition to the motion to quash.

174.   On June 19, 2020, one day after the scheduled June 18 Hearing Date, ALJ Ascione issued a Prehearing Order for the DP Case.  The Prehearing Order states in pertinent parts:

a.   Discovery shall have been completed by or before June 30, 2020;

b.   The following paragraph is not applicable due to the expedited hearing time frame of this matter.  Any discovery issue will be presented at the hearing;

c.   The exchange of witness lists shall be completed on or before July 2, 2020;

d.   Motions to exclude evidence or witnesses shall be filed electronically no later than Monday June 22 at noon; and

e.   Confirmed the hearing dates of July 9 and 10, 2020.

175.   On June 22, 2020, MTBOE filed its opposition to Plaintiffs' Motion to Bar Evidence, arguing that it did not violate the Five-Day Exchange Rule because June 18, 2020 was not a real "hearing date".  MTBOE also argued that it

had not denied Plaintiffs access to J.A.'s records because it was a "discovery

request" not an IDEA records request and that ALJ Ascione set June 30, 2020 as

the deadline for discovery.

176.    Plaintiffs filed their Motion for Summary Decision on June 24, 2020

in the DP Case.

177.    On June 25, 2020, MTBOE submitted a letter to ALJ Ascione arguing

that Plaintiffs' Motion for Summary Decision was untimely because it violated the

motion schedule under N.J.A.C. 1:1-12.5(a).  Plaintiffs responded via letter to ALJ

Ascione that N.J.A.C. 1:1-12.5(a) does not apply because N.J.A.C. §§6A:14 and

1:6A govern special education cases and supersede N.J.A.C. §1:1, which only

applies when there is no conflict with the special education regulations.

178.    On July 1, 2020, ALJ Ascione issued a letter ruling on several matters

in the DP Case, including (a) the J.A. Family's motion for summary disposition

[sic] is untimely; (b) limiting the J.A. Family's presentation of documentary

evidence, including previous rejections by MTBOE of Plaintiffs' private

evaluations; (c) quashing the Armano subpoena; (d) "I will not be addressing any

issues in this matter prior to July 9, as I am not physically in the office until that

date, and my administrative assistant has been furloughed," using the pandemic as

an excuse; and (e) limiting the J.A. Family's testimony to "a current doctor or

educational consultant with knowledge of the benefits educationally of the proposed evaluation.  No other testimony will be considered."

179.    The following day, Plaintiffs wrote to ALJ Ascione objecting to these rulings as errors of law.

180.    On July 2, 2020, Plaintiffs filed and served their Opening Statement and Legal Brief on the DP Case as per the Prehearing Order.

181.    Since ALJ Ascione had not ruled yet on their motion, Plaintiffs renewed their Motion to Bar Evidence via letter dated July 3, 2020.

182.    On July 7, 2020, Plaintiffs objected to ALJ Ascione's limitations on evidence on the basis that both the New Jersey regulations and the caselaw err on the side of admissibility in administrative cases.

183.    Having still not received any rulings on various pending motions and objections, Plaintiffs wrote again to ALJ Ascione on July 8, 2020 raising a number of issues to be resolved prior to the hearing.

184.    ALJ Ascione disregarded all of Plaintiffs' objections and motions and the hearing was held on July 9, 2020.

185.    On July 16, 2020, ALJ Ascione issued his final Decision in the DP Case ("July 16, 2020 Decision").

## COUNT ONE – SYSTEMIC VIOLATION OF THE 10 DAY PEREMPTORY HEARING DATE
**(All Defendants)**

186.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

187.   By instituting the "Settlement Thursday" practice, the OAL is and has been violating the New Jersey regulation on the 10 Day Peremptory Hearing Date.

188.   Doe ALJs, by adopting and using the "Settlement Thursday" practice, are and have been violating the New Jersey regulation on the 10 Day Peremptory Hearing Date.

189.   NJDOE, by allowing the OAL to institute and maintain the "Settlement Thursday" practice, is and has been violating the New Jersey regulation on the 10 Day Peremptory Hearing Date and failing in its legal duty to enforce IDEA, the federal regulations, and the New Jersey Administrative Code.

190.   June 18, 2020 was the peremptory hearing date assigned by NJOSEP and OAL in the DP Case pursuant to the New Jersey Administrative Code.

191.   ALJ Bogan was the assigned ALJ to preside at the June 18, 2020 peremptory hearing.

192.   By treating the June 18, 2020 peremptory hearing date assigned by NJOSEP and OAL as a "Settlement Thursday" conference, ALJs Bogan and

Ascione violated the New Jersey regulation on the 10 Day Peremptory Hearing Date.

193.   By failing to enforce the June 18, 2020 as the peremptory hearing date in the DP Case, ALJs Bogan and Ascione violated the New Jersey regulation on the 10 Day Peremptory Hearing Date.

194.   MTBOE clearly did not meet the Five-Day Exchange Rule by June 11, 2020 under the June 18, 2020 peremptory hearing date in the DP Case.

195.   MTBOE wrongfully relied upon the 'common practice' of "Settlement Thursday" and failed to comply with the deadlines associated with the June 18, 2020 peremptory hearing date in the DP Case.

196.   Plaintiffs properly and timely filed a Motion to Bar Evidence based on the Five-Day Exchange Rule with June 18, 2020 as the peremptory hearing date in the DP Case. (*See supra* ¶164.)

197.   ALJ Bogan disregarded both the June 18, 2020 peremptory hearing date and Plaintiffs' Motion to Bar Evidence in the DP Case by reassigning the DP Case to ALJ Ascione.

198.   ALJ Ascione never formally issued a decision on Plaintiffs' Motion to Bar Evidence, but effectively denied the motion by allowing MTBOE to submit evidence after June 11, 2020 and at the hearing held on July 9, 2020.

199.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE not negotiating in good faith during the 30 Day Resolution Period knowing that the OAL and ALJ Bogan would treat the June 18, 2020 peremptory hearing date as a "Settlement Thursday" conference, when Plaintiffs made a very reasonable settlement demand during the 30 Day Resolution Period which should have resolved the DP Case before being transmitted for hearing and thereby causing Plaintiffs to incur substantial additional attorney's fees and costs.

200.   As a direct and proximate result of these violations, Plaintiffs suffered harm by having the DP Case reassigned to ALJ Ascione without a request to do so, their Motion to Bar Evidence denied, their Five-Day Exchange compliance ignored, and allowing MTBOE to present evidence in the DP Case when it should have been barred from doing so.

201.   As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE had the statutory burden of proof in the DP Case and Plaintiffs should have won the case because MTBOE would not have met its burden of proof with no evidence to present.

202.   Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE did not negotiate in good faith during the 30 Day Resolution Period because it knew that the OAL and ALJ Bogan would treat the June 18, 2020 peremptory hearing date as a "Settlement Thursday" conference;

C.    Finding that MTBOE should have been barred from presenting evidence in its case due to violation of the 10 Day Peremptory Hearing Date;

D.    Finding that MTBOE could not meet its burden of proof in the DP Case;

E.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

F.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

G.    Finding that Plaintiffs are the prevailing parties in the DP Case;

H.    Finding that NJDOE, the OAL, and Doe ALJs are systemically violating the 10 Day Peremptory Hearing Date in the New Jersey regulations by having "Settlement Thursday" in express contradiction to the standard form Hearing Notice issued by NJOSEP;

I.    Finding that because NJDOE, the OAL, and Doe ALJs are systemically violating the 10 Day Peremptory Hearing Date, school districts, and specifically MTBOE in the DP Case, do not negotiate in good faith during the 30 Day Resolution Period;

J.    Finding that ALJ Bogan and ALJ Ascione violated the 10 Day Peremptory Hearing Date in the DP Case by treating the June 18, 2020 hearing date as a "Settlement Thursday" conference in express contradiction to the June 4 and June 18 Hearing Notices issued by NJOSEP and the OAL;

K.    Injunctive relief terminating the OAL practice of "Settlement Thursday";

L.    Injunctive relief that all Defendants comply with the 10 Day Peremptory Hearing Date and all deadlines created thereby;

M.    Compensatory relief to Plaintiffs for all Defendants' violations of the 10 Day Peremptory Hearing Date;

N.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

O.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

P.    For such other and further relief as the Court deems equitable and just.

## COUNT TWO –SYSTEMIC VIOLATION OF THE FIVE-DAY EXCHANGE RULE
### (All Defendants)

203.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

204.    By systemically violating the New Jersey regulation of the 10 Day Peremptory Hearing Date, the OAL is and has been violating the Five-Day Exchange Rule.

205.    Doe ALJs, by treating the 10 Day Peremptory Hearing Date as "Settlement Thursday", are and have been violating and failing to enforce the Five-Day Exchange Rule.

206.    NJDOE, by allowing the OAL and ALJs to consistently violate the 10 Day Peremptory Hearing Date, is and has been violating the Five-Day Exchange Rule and failing in its legal duty to enforce IDEA, the federal regulations, and the New Jersey Administrative Code.

207.    June 11, 2020 was the deadline under the Five-Day Exchange Rule in the DP Case pursuant to the 10 Day Peremptory Hearing Date.

208.    Plaintiffs complied with the Five-Day Exchange Rule by providing its documents and list of witnesses intended to be introduced at the hearing to MTBOE and ALJ Bogan on June 11, 2020.

209.  MTBOE did not comply with the Five-Day Exchange Rule on or before June 11, 2020.

210.  By treating the June 18, 2020 peremptory hearing date assigned by NJOSEP and OAL as a "Settlement Thursday" conference, ALJs Bogan and Ascione violated the Five-Day Exchange Rule by not honoring the June 11, 2020 deadline.

211.  By failing to enforce the June 18, 2020 as the peremptory hearing date in the DP Case, ALJs Bogan and Ascione violated the Five-Day Exchange Rule.

212.  MTBOE wrongfully relied upon the 'common practice' of "Settlement Thursday" and failed to comply with the Five-Day Exchange Rule in the DP Case.

213.  MTBOE intentionally and willfully disregarded Plaintiffs' attempts to have MTBOE provide documents that would be potentially included in Plaintiffs' Five-Day Exchange.

214.  Plaintiffs properly and timely filed a Motion to Bar Evidence on June 12, 2020 based on the Five-Day Exchange Rule because of MTBOE's violation of the Rule.  (*See supra* ¶164.)

215.  ALJ Bogan disregarded Plaintiffs' Motion to Bar Evidence in the DP Case and reassigned the DP Case to ALJ Ascione.

216.   ALJ Ascione never formally issued a decision on Plaintiffs' Motion to Bar Evidence, but effectively denied the motion by allowing MTBOE to submit evidence after June 11, 2020 and at the hearing held on July 9, 2020.

217.   ALJ Bogan and ALJ Ascione thereby violated the Five-Day Exchange Rule in the DP Case.

218.   As a direct and proximate result of these violations, Plaintiffs suffered harm by having the DP Case reassigned to ALJ Ascione without a request to do so, their Motion to Bar Evidence denied, their Five-Day Exchange compliance ignored, and allowing MTBOE to present evidence in the DP Case when it should have been barred from doing so.

219.   As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE had the statutory burden of proof in the DP Case and Plaintiffs should have won the case because MTBOE would not have met its burden of proof with no evidence to present.

220.   Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE should have been barred from presenting evidence in its case due to violation of the Five-Day Exchange Rule;

C.    Finding that MTBOE could not meet its burden of proof in the DP Case;

D.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

E.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

F.    Finding that Plaintiffs are the prevailing parties in the DP Case;

G.    Finding that NJDOE, the OAL, and Doe ALJs are systemically violating the Five-Day Exchange Rule by having "Settlement Thursday" in express contradiction to the standard form Hearing Notice issued by NJOSEP;

H.    Finding that because NJDOE, the OAL, and Doe ALJs are systemically violating the Five-Day Exchange Rule, school districts, and specifically MTBOE in the DP Case, are relieved of their burden of compliance with the New Jersey regulations regarding special education due process cases and preparing their cases for hearing;

I.    Finding that because NJDOE, the OAL, and Doe ALJs are systemically violating the Five-Day Exchange Rule, school districts,

and specifically MTBOE in the DP Case, does not prepare its case
prior to filing a Request for a Due Process Hearing;

J.    Finding that ALJ Bogan and ALJ Ascione violated the Five-Day
Exchange Rule in the DP Case by disregarding treating the June 11,
2020 deadline in express contradiction to the June 4 and June 18
Hearing Notices issued by NJOSEP and the OAL;

K.    Finding that ALJ Bogan and ALJ Ascione violated the Five-Day
Exchange Rule in the DP Case by disregarding and effectively
denying Plaintiffs' Motion to Bar Evidence in the DP Case;

L.    Injunctive relief terminating the OAL practice of "Settlement
Thursday";

M.    Injunctive relief that all Defendants comply with the Five-Day
Exchange Rule as calculated by the 10 Day Peremptory Hearing Date;

N.    Compensatory relief to Plaintiffs for all Defendants' violations of the
Five-Day Exchange Rule;

O.    Finding that Plaintiffs are entitled to monetary reimbursement for all
expenses incurred by Plaintiffs in the DP Case and herein, including
but not limited to attorney's fees and costs;

P.    An award of attorney's fees and costs for Plaintiffs and granting
Plaintiffs the opportunity to file a fee petition for such award; and

Q.    For such other and further relief as the Court deems equitable and just.

## COUNT THREE – SYSTEMIC VIOLATION OF THE ADJOURNMENT RULE
### (All Defendants)

221.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

222.    Neither the NJDOE, the OAL, or any ALJ may adjourn a due process hearing absent a request by a party.  (*See supra* ¶81.)

223.    By instituting the "Settlement Thursday" practice, the OAL is and has been violating the Adjournment Rule because cases routinely, if not always, are adjourned from the 10 Day Peremptory Hearing Date by the OAL and without a request by a party and then assigned to a new ALJ.

224.    Doe ALJs, by adopting and using the "Settlement Thursday" practice, are and have been violating the Adjournment Rule.

225.    NJDOE, by allowing the OAL to institute and maintain the "Settlement Thursday" practice, is and has been violating the Adjournment Rule and failing in its legal duty to enforce IDEA, the federal regulations, and the New Jersey Administrative Code.

226.    June 18, 2020 was the peremptory hearing date assigned by NJOSEP and OAL in the DP Case pursuant to the New Jersey Administrative Code.

227.   ALJ Bogan was the assigned ALJ to preside at the June 18, 2020 peremptory hearing.

228.   By treating the June 18, 2020 peremptory hearing date assigned by NJOSEP and OAL as a "Settlement Thursday" conference, ALJ Bogan violated the Adjournment Rule by reassigning the DP Case to ALJ Ascione and not holding a hearing on June 18, 2020.

229.   By treating the June 18, 2020 peremptory hearing date assigned by NJOSEP and OAL as a "Settlement Thursday" conference, ALJ Ascione violated the Adjournment Rule by not holding a hearing on June 18, 2020 and adjourning the hearing to July 9, 2020 without a request by either party to the DP Case.

230.   By failing to enforce the June 18, 2020 as the peremptory hearing date in the DP Case, ALJs Bogan and Ascione violated the Adjournment Rule.

231.   Plaintiffs did not request or file a motion for adjournment from the June 18, 2020 peremptory hearing date.  Rather, Plaintiffs demanded from both ALJ Bogan and ALJ Ascione to hold the hearing in the DP Case on June 18, 2020, but both ALJs denied that demand.

232.   MTBOE did not request or file a motion for adjournment from the June 18, 2020 peremptory hearing date.

233.   MTBOE wrongfully relied upon the 'common practice' of "Settlement Thursday" and thereby knew the case would be adjourned *sua sponte*

by ALJs Bogan and Ascione from the June 18, 2020 peremptory hearing date and

therefore did not comply with any of the deadlines according to IDEA, the federal

regulations, or the New Jersey Administrative Code.

234.   Plaintiffs properly and timely prepared for the hearing in the DP Case

for June 18, 2020.

235.   Both ALJs Bogan and Ascione disregarded the June 18, 2020

peremptory hearing date and adjourned the DP Case without requests by either

party.

236.   As a direct and proximate result of these violations, Plaintiffs suffered

harm by MTBOE not negotiating in good faith during the 30 Day Resolution

Period or thereafter knowing that the OAL and ALJs Bogan and Ascione would

not treat June 18, 2020 as the peremptory hearing date, despite Plaintiffs making a

very reasonable settlement demand on May 19, 2020 which should have resolved

the DP Case before being transmitted for hearing and thereby causing Plaintiffs to

incur substantial additional attorney's fees and costs.

237.   As a direct and proximate result of these violations, Plaintiffs suffered

harm by MTBOE not providing the documents or evidence it presumably had to

prepare its due process complaint in the DP Case prior to June 11, 2020 because

MTBOE knew that the OAL and/or ALJs Bogan and Ascione would adjourn the

June 18, 2020 peremptory hearing date without a request to do so and thereby

allowing MTBOE to delay providing evidence to the Plaintiffs to allow them to prepare their case.

238.   As a direct and proximate result of these violations, Plaintiffs suffered harm by having the DP Case adjourned without a request to do so and thereby allowing MTBOE to present evidence in the DP Case when it should have been barred from doing so.

239.   As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE had the statutory burden of proof in the DP Case and Plaintiffs should have won the case because MTBOE would not have met its burden of proof with no evidence to present.

240.   Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE should have been barred from presenting evidence in its case due to violation of the Adjournment Rule;

C.   Finding that MTBOE could not meet its burden of proof in the DP Case;

D.   Finding that Plaintiffs' are entitled to the IEE as a matter of law;

E.   Finding that MTBOE must fund the IEE requested by Plaintiffs;

F.   Finding that Plaintiffs are the prevailing parties in the DP Case;

G.   Finding that NJDOE, the OAL, and Doe ALJs are systemically violating the Adjournment Rule by having "Settlement Thursday" in express contradiction to the standard form Hearing Notice issued by NJOSEP;

H.   Finding that because NJDOE, the OAL, and Doe ALJs are systemically violating the Adjournment Rule, school districts, and specifically MTBOE in the DP Case, are relieved of their burden of compliance with the New Jersey regulations regarding special education due process cases and preparing their cases for hearing prior to filing a due process complaint;

I.   Finding that because NJDOE, the OAL, and Doe ALJs are systemically violating the Adjournment Rule, school districts, and specifically MTBOE in the DP Case, does not timely provide documents and/or evidence to parents, the J.A. Family herein, to enable them to prepare their case;

J.      Finding that ALJ Bogan and ALJ Ascione violated the Adjournment Rule in the DP Case by disregarding the June 18, 2020 peremptory hearing date in express contradiction to the June 4 and June 18 Hearing Notices issued by NJOSEP and the OAL;

K.      Finding that ALJ Bogan and ALJ Ascione violated the Adjournment Rule in the DP Case by disregarding and effectively denying Plaintiffs' various motions in the DP Case;

L.      Injunctive relief terminating the OAL practice of "Settlement Thursday";

M.      Injunctive relief that all Defendants comply with the Adjournment Rule as set forth in IDEA's regulations;

N.      Compensatory relief to Plaintiffs for all Defendants' violations of the Adjournment Rule;

O.      Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

P.      An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

Q.      For such other and further relief as the Court deems equitable and just.

## COUNT FOUR – SYSTEMIC VIOLATION OF THE RESOLUTION MEETING REGULATION
### (Defendants NJDOE and MTBOE)

241.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

242.    The New Jersey regulations are clear that when a LEA or school district files the due process complaint there is to be no resolution meeting and the case should be immediately transmitted for hearing.  (*See supra* ¶77.)

243.    On March 9, 2020, NJOSEP contacted MTBOE to determine if it would request mediation or to transmit the case immediately to the OAL.

244.    MTBOE did not request mediation.

245.    MTBOE notified NJOSEP that the parties were engaging in a resolution meeting and that it was delayed to May 19, 2020.

246.    The DP Case should have been transmitted to the OAL on or about March 10, 2020 with a peremptory hearing date scheduled for approximately March 20, 2020.  It was not.

247.    On that same date, March 9, 2020, MTBOE advised Plaintiffs that it wanted to hold a resolution meeting and inquired of available dates.  Upon information and belief, this was a delay tactic because MTBOE was not prepared for a hearing to prove its case of denying the IEE.

248.   MTBOE's resolution meeting request is a violation of the New Jersey regulations because it initiated the DP Case.

249.   NJOSEP accepted MTBOE's representation and delayed transmittal of the DP Case until May 19, 2020.  NJOSEP's acceptance of the resolution meeting and adjournment is a violation of the New Jersey regulations because it has a legal obligation to immediately transmit the DP Case to the OAL.

250.   Upon information and belief, NJOSEP routinely fails to transmit LEA-initiated due process cases immediately to the OAL when there is no mediation request by the LEA.

251.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE not negotiating in good faith knowing that NJOSEP would delay transmittal to the OAL because of the representation of a resolution meeting and that, therefore, the peremptory hearing date would be delayed as a result, so there was no pressure on MTBOE to accept Plaintiffs' very reasonable settlement demand or make a reasonable counteroffer including attorney's fees and costs which should have resolved the DP Case, thereby causing Plaintiffs to incur substantial additional attorney's fees and costs.

252.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE delaying in providing the documents or evidence it presumably had to prepare its due process complaint in the DP Case prior to March 20, 2020

because MTBOE knew that NJOSEP would grant the delay due to a "resolution meeting" in express contradiction to the New Jersey regulations thereby allowing MTBOE time to prepare its case and prevent Plaintiffs from preparing theirs.

253. As a direct and proximate result of these violations, Plaintiffs suffered harm by having the DP Case delayed and adjourned without a request to do so and thereby allowing MTBOE to present evidence in the DP Case when it should have been barred from doing so.

254. As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE had the statutory burden of proof in the DP Case and Plaintiffs should have won the case because MTBOE would not have met its burden of proof with no evidence to present.

255. As a direct and proximate result of these violations, Plaintiffs have been harmed because there was unnecessary delay in the DP Case and caused Plaintiffs to incur substantial attorney's fees and costs.

256. As a direct and proximate result of these violations, Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE should have been barred from presenting evidence in its case due to violation of the Resolution Meeting regulation;

C.    Finding that MTBOE could not meet its burden of proof in the DP Case;

D.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

E.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

F.    Finding that Plaintiffs are the prevailing parties in the DP Case;

G.    Finding that NJDOE is systemically violating the Resolution Meeting regulation by failing to immediately transmit LEA-initiated due process cases to the OAL when there is no mediation request;

H.    Finding that because NJDOE is systemically violating the Resolution Meeting regulation, school districts, and specifically MTBOE in the DP Case, is relieved of the burden of compliance with the New Jersey regulations regarding special education due process cases and

preparing their cases for hearing prior to filing a due process complaint;

I.    Finding that because NJDOE is systemically violating the Resolution Meeting regulation, school districts, and specifically MTBOE in the DP Case, does not negotiate in good faith prior to and after transmittal to the OAL;

J.    Finding that because NJDOE is systemically violating the Resolution Meeting regulation, school districts, and specifically MTBOE in the DP Case, does not timely provide documents and/or evidence to parents, the J.A. Family herein, to enable them to prepare their case;

K.    Injunctive relief that NJDOE strictly comply with the Resolution Meeting regulation;

L.    Compensatory relief to Plaintiffs for these Defendants' violations of the Resolution Meeting regulation;

M.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

N.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

O.    For such other and further relief as the Court deems equitable and just.

## COUNT FIVE –SYSTEMIC VIOLATION OF THE ACCESS TO RECORDS PROCEDURAL SAFEGUARD
### (All Defendants)

257.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

258.   IDEA's Procedural Safeguard of parents' right to access their child's educational records is separate and distinct from the Procedural Safeguard of the right to file a due process case.  The right to access a child with a disability's education records is fundamental and not "discovery".

259.   Plaintiffs properly and timely requested access to J.A.'s education records from MTBOE on June 2, 2020.  In their request, Plaintiffs requested that access be provided by MTBOE on or before June 8, 2020 so that Plaintiffs could determine if there were documents necessary to prepare for the DP Case and the Five-Day Exchange on June 11, 2020.  (*See also supra* ¶158.)

260.   MTBOE responded by email on June 9, 2020 that it would not be providing access to records because June 8, 2020 was a "self-imposed deadline . . . unreasonable and unsupported by the law" using the COVID pandemic as an excuse for not responding because its building was closed.  Notably, this response said nothing about discovery, but only argued that "there is no urgency in this matter."  (*See also supra* ¶159.)

261.   Plaintiffs raised numerous objections to MTBOE and to ALJ Ascione about MTBOE's denial of Plaintiffs' access to J.A.'s records.  These objections were disregarded by both.

262.   In Plaintiffs' Motion to Bar Evidence filed on June 12, 2020, they argued that part of the basis for barring MTBOE's evidence was MTBOE's denial of Plaintiffs' access to J.A.'s records and that MTBOE had still not provided access to such records.

263.   In its opposition to the Motion to Bar Evidence filed on June 22, 2020, MTBOE argued that Plaintiffs' request to access J.A.'s records was a "discovery request" and that ALJ Ascione had set a discovery deadline of June 30, 2020 to produce documents.  (*See also supra* ¶175.)

264.   On June 30, 2020 – two (2) days prior to when ALJ Ascione said the Five-Day Exchange was due, MTBOE produced 3,866 pages of documents, most of which were not responsive to the June 2, 2020 request to access records, to Plaintiffs.

265.   On July 2, 2020, MTBOE included the 3,866 pages of documents as part of its Five-Day Exchange and represented to ALJ Ascione that it would introduce any of those documents into evidence it deemed necessary.

266.   Upon information and belief, MTBOE's 3,866 page document dump did not fulfill Plaintiffs' June 2, 2020 request for access to J.A.'s records.

267.    Plaintiffs sought to bar introduction of those documents into evidence as untimely and as a violation of the Procedural Safeguard discussed above.

268.    Plaintiffs did not have sufficient time to review this document dump by MTBOE to determine if any of the documents were necessary to include in their Five-Day Exchange.

269.    ALJ Ascione did not rule on either the Motion to Bar Evidence or Plaintiffs' subsequent objections to the introduction of these documents at the due process hearing based on violation of the Procedural Safeguard of access to records.  (*See supra* ¶198.)

270.    MTBOE violated Plaintiffs' right to access J.A.'s records in sufficient time prior to a due process hearing as guaranteed by IDEA and therefore violated the referenced Procedural Safeguard.  *See* 34 C.F.R. §300.613(a).  (*See supra* ¶52.)

271.    ALJ Ascione violated the Procedural Safeguard by not enforcing Plaintiffs' right to access J.A.'s records in sufficient time prior to a due process hearing against MTBOE.

272.    Upon information and belief, NJDOE, the OAL and Doe ALJs routinely fail to enforce the Procedural Safeguard of parents' right to access their child with a disability's education records "without unnecessary delay" and/or prior to an IEP meeting or due process hearing and thereby systemically violate the Procedural Safeguard.

273.   For example, the exact same violation occurred in the OAL cases bearing caption *K.K-M. o/b/o A.W. and R.M. v. Gloucester City Board of Education*, OAL Dkt. Nos. EDS 8360-18 and  EDS 8361-18 [Consolidated].  In that case, ALJ Jeffrey N. Rabin refused to acknowledge that access to records was an IDEA Procedural Safeguard and ruled that the parent in that case did not have a claim when she was denied access to the records of A.W. and R.M. by the school district prior to a due process hearing.[15]

274.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE delaying in providing Plaintiffs access to J.A.'s records and thereby preventing Plaintiffs from adequately preparing for the DP Case.

275.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE claiming Plaintiffs' access to J.A.'s records was a "discovery request" and thereby being able to escape enforcement by ALJ Ascione under his scheduling order.

276.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE being permitted to delay providing access to J.A.'s records until

---

[15] This ruling is presently on appeal in the case captioned *K.K-M. o/b/o A.W. and R.M. v. Gloucester City Board of Education*, U.S.D.C. D.N.J. Civil No. 1:19-cv-15808-RBK-KMW and is fully briefed on motions for summary judgment.

June 30, 2020 and prepare its own case, when MTBOE clearly was not prepared to go to hearing on the June 18, 2020 peremptory hearing date.

277.    As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE being permitted to delay providing access to J.A.'s records until June 30, 2020 which did not provide sufficient time to determine if MTBOE's document production sufficiently provided proper "access" to records, fulfilled the request for access completely, and whether Plaintiffs needed supplemental access to fulfill the request.

278.    As a direct and proximate result of these violations, Plaintiffs have been harmed because procedural violation impeded the J.A.'s right to a FAPE, significantly impeded Plaintiffs' opportunity to participate in the decision-making process regarding the provision of FAPE to J.A., and caused a deprivation of educational benefits to J.A.

279.    As a direct and proximate result of these violations, Plaintiffs have been harmed because Plaintiffs incurred substantial attorney's fees and costs.

280.    As a direct and proximate result of these violations, Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.   Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.   Finding that MTBOE should have been barred from presenting evidence in its case due to its violation of the Procedural Safeguard of Plaintiffs' right to access J.A.'s education records;

C.   Finding that MTBOE could not meet its burden of proof in the DP Case;

D.   Finding that Plaintiffs' are entitled to the IEE as a matter of law;

E.   Finding that MTBOE must fund the IEE requested by Plaintiffs;

F.   Finding that Plaintiffs are the prevailing parties in the DP Case;

G.   Finding that Defendants are systemically violating the Procedural Safeguard of parents' right to access their child's education records on a timely basis by failing to enforce the Procedural Safeguard and/or ensure that the OAL is enforcing the Procedural Safeguard as required by IDEA;

H.   Finding that because Defendants are systemically violating the Procedural Safeguard of parents' right to access their child's education records, school districts, and specifically MTBOE in the DP

Case, can control to which documents parents have access to prepare for a due process hearing;

I.    Finding that because Defendants are systemically violating the Procedural Safeguard of parents' right to access their child's education records, school districts, and specifically MTBOE in the DP Case, can hide its wrongdoing by producing a document dump instead of providing parents' access to the actual records;

J.    Injunctive relief that Defendants strictly comply and enforce the Procedural Safeguard of parents' right to access their child's education records;

K.    Compensatory relief to Plaintiffs for the Defendants' violations of the Procedural Safeguard of parents' right to access their child's education records;

L.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

M.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

N.    For such other and further relief as the Court deems equitable and just.

## COUNT SIX –SYSTEMIC VIOLATION OF THE DISCOVERY RULES IN SPECIAL EDUCATION DUE PROCESS CASES
### (All Defendants)

281.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

282.   The procedural rules for special education due process cases are located in N.J.A.C. §1:6A, not N.J.A.C. §1:1.  (*See supra* ¶¶60, 73.)

283.   Discovery in special education due process cases is intended to be an informal process and, pursuant to the express language of the New Jersey Administrative Code, may not include formal discovery requests.  (*See supra* ¶83.)

284.   The reason that discovery is informal is to ensure compliance with the 10 Day Peremptory Hearing Date and the 45 Day Rule and prevent drawn-out discovery disputes and motions in special education due process cases.

285.   Despite these rules, ALJ Ascione entered a Prehearing Order in the DP Case with a discovery deadline of June 30, 2020 – long after the June 18 peremptory hearing date – and that discovery motions were to be heard at the July 9, 2020 hearing.  (*See supra* ¶174.)

286.   ALJ Ascione's setting of a formal discovery schedule in the DP Case is a violation of the New Jersey Administrative Code rules that apply to special education due process cases.

287.  MTBOE relied upon ALJ Ascione's discovery schedule and thereby denied providing information and documents informally to Plaintiffs sooner than June 30, 2020.  Indeed, MTBOE refused to provide Plaintiffs with access to J.A.'s records because it called Plaintiffs' request to do so a "discovery request" rather than a Procedural Safeguard separate from the rules of special education due process cases.  (*See supra* ¶175.)

288.  MTBOE's reliance upon ALJ Ascione's formal discovery schedule is a violation of the New Jersey Administrative Code rules that apply to special education due process cases.

289.  Plaintiffs raised numerous objections to MTBOE and to ALJ Ascione about these formal discovery rules in the DP Case.  These objections were disregarded by both.

290.  Upon information and belief, the OAL and Doe ALJs routinely issue prehearing orders that have discovery schedules and contemplate formal discovery and motions in special education due process cases and thereby systemically violate the New Jersey Administrative Code.

291.  Because the OAL and Doe ALJs routinely issue prehearing orders that have discovery schedules and contemplate formal discovery and motions in special education due process cases, they systemically violate the 10 Day Peremptory Hearing Date and the 45 Day Rule.

292.   NJDOE has failed in its legal obligation to oversee the OAL and all ALJs to ensure they are not imposing formal discovery schedules and discovery in special education due process cases and therefore has failed in ensuring compliance with IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules.  NJDOE is therefore systemically violating its oversight duties under IDEA.

293.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE's delay in providing Plaintiffs access to J.A.'s records informally and thereby preventing Plaintiffs from adequately preparing for the DP Case.

294.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE claiming Plaintiffs' access to J.A.'s records was a "discovery request" and thereby being able to escape enforcement by ALJ Ascione under his Prehearing Order and discovery schedule.

295.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE being permitted to delay providing access to J.A.'s records until June 30, 2020 and prepare its own case, when MTBOE clearly was not prepared to go to hearing on the June 18, 2020 peremptory hearing date.

296.   As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE's document dump was conducted in the name of "discovery" and ALJ Ascione's wrongful ignoring of Plaintiffs' objections caused

them to deal with 3,866 pages received two (2) days before the Five-Day Exchange was due under ALJ Ascione's Prehearing Order.

297.   As a direct and proximate result of these violations, Plaintiffs have been harmed because Plaintiffs incurred substantial attorney's fees and costs.

298.   As a direct and proximate result of these violations, Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that ALJ Ascione's Prehearing Order was legal error by including a formal discovery deadline and that discovery motions would be heard on July 9, 2020;

C.    Finding that MTBOE should not have been allowed to delay providing Plaintiffs with documents until June 30, 2020;

D.    Finding that MTBOE should not have been permitted to rely upon a illegal discovery schedule and conduct a "document dump" of 3,866

pages on Plaintiffs at the eleventh hour and that MTBOE should have

been barred from presenting any evidence for such violation;

E.    Finding that MTBOE could not meet its burden of proof in the DP

Case;

F.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

G.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

H.    Finding that Plaintiffs are the prevailing parties in the DP Case;

I.    Finding that Defendants are systemically violating the New Jersey

Administrative Code rules on discovery in special education due

process cases by putting discovery schedules into prehearing orders

and thereby violating the 10 Day Peremptory Hearing Date and the 45

Day Rule;

J.    Finding that because Defendants are systemically violating the

discovery rules in the New Jersey Administrative Code for special

education due process cases, school districts, and specifically MTBOE

in the DP Case, are using discovery tactics from other civil cases to

delay and obstruct parents from preparing their cases;

K.    Injunctive relief that Defendants cease and desist applying formal

discovery and discovery schedules in special education due process

cases;

L.    Injunctive relief that Defendants strictly enforce the discovery rules as written in the New Jersey Administrative Code for special education due process cases, specifically N.J.A.C. §1:6A-10.1(d);

M.    Compensatory relief to Plaintiffs for the Defendants' violations of the New Jersey Administrative Code on discovery;

N.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

O.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

P.    For such other and further relief as the Court deems equitable and just.

## COUNT SEVEN –SYSTEMIC VIOLATION OF THE RULES OF EVIDENCE IN SPECIAL EDUCATION DUE PROCESS CASES
### (All Defendants)

299.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

300.   IDEA provides very specific rights on evidence to parties in a special education due process hearing.

301.   Under IDEA regulations, Plaintiffs had a right to present evidence, confront MTBOE's evidence, cross-examine MTBOE's witnesses, and compel attendance of witnesses via subpoena in the DP Case.  (*See supra* ¶44.)

302.   In addition, IDEA permits Plaintiffs to present IEEs as expert reports in the DP Case.  (*See supra* ¶45.)

303.   "The judge's decision [in a special education due process case] shall be based on the preponderance of the credible evidence, and the proposed action of the board of education or public agency <u>shall not be accorded any presumption of correctness</u>." N.J.A.C. §1:6A-14.1 (emphasis added.)

304.   The procedural rules for special education due process cases located in N.J.A.C. §1:6A do not address any other rules of evidence.  Therefore, the Court must look to the Uniform Administrative Procedure Rules ("UAPR") to the extent that federal regulations do not cover evidentiary issues.  N.J.A.C. §1:6A-1.1(a) ("Any aspect of notice and hearing not covered by these special hearing rules shall be governed by the [UAPR] contained in N.J.A.C. 1:1.")

305.   "Evidence rulings shall be made to <u>promote fundamental principles of fairness and justice and to aid in the ascertainment of truth</u>." N.J.A.C. 1:1-15.1(b) (emphasis added.)

306.   "Parties in contested cases <u>shall not be bound by statutory or common law rules of evidence or any formally adopted in the New Jersey Rules of Evidence</u> except as specifically provided in these rules. <u>All relevant evidence is admissible except as otherwise provided herein</u>. A judge may, in his or her discretion, exclude any evidence if its probative value is substantially outweighed by the risk that its

admission will either: 1. Necessitate undue consumption of time; or 2. Create

substantial danger of undue prejudice or confusion." N.J.A.C. 1:1-15.1(c)

(emphasis added.)

307.   No evidence may be excluded in determining [burden of proof] except

pursuant to the judge's discretion under (c) above or a valid claim of privilege. This

provision shall not be construed to restrict or limit the right of a party to introduce

evidence subsequently which is relevant to weight or credibility." N.J.A.C. 1:1-

15.1(d).

308.   ALJs should err on the side of admissibility without the formality of

foundational proof. *Delguidice v. New Jersey Racing Commission*, 100 N.J. 79,

494 A.2d 1007 (1985) ("In an administrative hearing, all relevant evidence is

admissible"); *Mazza v. Cavicchia*, 105 A. 2d 545, 15 N.J. 498, 509 (1954) ("In a

hearing before an administrative tribunal technical rules of evidence are not

controlling"); *RB ex rel. Parent v. Mastery Charter School*, 762 F. Supp. 2d 745,

747 at *fn. 3* (E.D.Pa. 2010) (Administrative hearings may introduce hearsay and

other relevant evidence similar to injunction proceedings in federal court where the

rules of evidence are relaxed); *HM ex rel. BM v. Haddon Heights Bd. of Educ.*, 822

F. Supp. 2d 439, 448 (D.N.J. 2011) (Admissibility of evidence is different than the

weight accorded evidence and should be allowed in an administrative hearing, but

it is up to the hearing officer to determine the weight applied); *Council Rock Sch.*

*Dist. v. M.W. ex rel. Marc W.*, No. 11-4824, 2012 WL 3055686, at *6 (E.D.Pa. July 26, 2012) ("Special education hearing officers are not strictly bound by the Federal Rules of Evidence"); *see also JN v. South Western School Dist.*, 55 F. Supp. 3d 589 (M.D.Pa. 2014).

309.    Despite the relaxation of evidence rules in special education due process cases, in ALJ Ascione's Prehearing Order he limited the scope of admissible documents.  (*See supra* ¶174.)

310.    Plaintiffs wanted to submit documentary evidence that MTBOE had a long history of rejecting private evaluations submitted by Plaintiffs and that was the reason MTBOE rejected the request for an IEE.  This evidence was denied by ALJ Ascione. (*See supra* ¶178.)

311.    Plaintiffs wanted to submit documentary evidence that MTBOE's denial of the IEE was retaliatory because of the long history of special education disputes between the parties.  This evidence was denied by ALJ Ascione.  (*See supra* ¶178.)

312.    Plaintiffs subpoenaed MTBOE's prior attorney, John Armano, to submit evidence that MTBOE brought their counsel to IEP meetings to illegally intimidate Plaintiffs and was witness to the numerous requests by Plaintiffs for services and accommodations to address J.A.'s Central Auditory Processing Disorder and MTBOE's repeated denial of those requests.  (*See supra* ¶¶160, 172.)

313.   Despite both IDEA's guarantee that Plaintiffs could subpoena witnesses and the June 18 Hearing Notice advising Plaintiffs they should subpoena witnesses, ALJ Ascione quashed the Armano Subpoena.  (*See supra* ¶178.)

314.   Plaintiffs wanted to submit documentary evidence that they had shown MTBOE that J.A. had the diagnosed disability of a severe Central Auditory Processing Disorder and it impacted the child's ability to be educated in the public school environment and which resulted in her being on homebound instruction for 2 years, but MTBOE disregarded that based on "teacher assessments" rather than valid evaluations.  This evidence was denied by ALJ Ascione.  (*See supra* ¶178.)

315.   On June 21, 2020, ALJ Ascione issued a Letter Order in the DP Case again severely restricting evidence and, specifically, stating, "If [the J.A. Family] anticipates testimony it should be from a current doctor or educational consultant with knowledge of the benefits educationally of the proposed evaluation. No other testimony will be considered."

316.   Plaintiffs repeatedly objected to ALJ Ascione evidentiary restrictions in the DP Case.  These objections were disregarded by ALJ Ascione.  (*See e.g. supra* ¶182.)

317.   ALJ Ascione's evidentiary restrictions in the DP Case is a violation of IDEA, the federal regulations, the New Jersey Administrative Code, and caselaw regarding evidence in special education due process cases.

318.   MTBOE relied upon ALJ Ascione's evidentiary restrictions because they did not apply to it and thereby was able to put on its case in chief knowing that Plaintiffs would not be able to confront MTBOE's evidence.

319.   MTBOE's reliance upon ALJ Ascione's evidentiary restrictions is a violation of the fundamental fairness built into IDEA, the federal regulations, the New Jersey Administrative Code, and caselaw regarding evidence in special education due process cases.

320.   Upon information and belief, the OAL and Doe ALJs routinely and similarly issue evidentiary restrictions in special education due process cases and thereby systemically violate IDEA, the federal regulations, the New Jersey Administrative Code, and caselaw regarding evidence.

321.   NJDOE has failed in its legal obligation to oversee the OAL and all ALJs to ensure they are not imposing evidentiary restrictions in special education due process cases and therefore has failed in ensuring compliance with IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules.  NJDOE is therefore systemically violating its oversight duties under IDEA.

322.   As a direct and proximate result of these violations, Plaintiffs suffered harm by not being able to present relevant and admissible evidence in the DP Case.

323.   As a direct and proximate result of these violations, Plaintiffs suffered harm by not being able to "[p]resent evidence and confront, cross-examine, and compel the attendance of witnesses."

324.   As a direct and proximate result of these violations, Plaintiffs have been harmed because Plaintiffs incurred substantial attorney's fees and costs.

325.   As a direct and proximate result of these violations, Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.   Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.   Finding that ALJ Ascione's evidentiary restrictions was legal error;

C.   Finding that ALJ Ascione's quashing of the Armano subpoena was legal error;

D.   Finding that Plaintiffs should not have been restricted from presenting evidence to confront and cross-examine MTBOE's evidence;

E.  Finding that Plaintiffs should not have been denied the right to compel the attendance and testimony of John Armano at the DP Case;

F.  Finding that MTBOE should not have been permitted to rely upon ALJ Ascione's evidentiary restrictions;

G.  Finding that MTBOE's reliance upon ALJ Ascione's evidentiary restrictions was a violation of fundamental fairness in special education due process cases;

H.  Finding that MTBOE could not meet its burden of proof in the DP Case but for ALJ Ascione's evidentiary restrictions;

I.  Finding that Plaintiffs' are entitled to the IEE as a matter of law;

J.  Finding that MTBOE must fund the IEE requested by Plaintiffs;

K.  Finding that Plaintiffs are the prevailing parties in the DP Case;

L.  Finding that Defendants are systemically violating IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules on evidence rules in special education due process cases;

M.  Finding that because Defendants are systemically violating the evidence rules in IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules for special education due process cases, school districts, and specifically MTBOE

**Page 94 of 156**

in the DP Case, are able to exploit the imbalance of fundamental fairness against parents and parents' inability to present evidence in their cases;

N.   Injunctive relief that Defendants cease and desist placing evidentiary restrictions in special education due process cases;

O.   Injunctive relief that Defendants enforce the evidence rules as written in IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules for special education due process cases;

P.   Compensatory relief to Plaintiffs for the Defendants' violations of IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules on evidence;

Q.   Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

R.   An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

S.   For such other and further relief as the Court deems equitable and just.

## COUNT EIGHT –SYSTEMIC VIOLATION OF THE NEW JERSEY REGULATIONS IN SPECIAL EDUCATION DUE PROCESS CASES
### (All Defendants)

326.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

327.   As stated above, the rules for special education due process hearings are provided in the New Jersey Administrative Code at N.J.A.C. §§6A:14 *et seq.* and 1:6A *et seq.*  (*See supra* ¶¶58-60.)

328.   Also as stated previously, if those rules conflict with IDEA or its regulations, federal law prevails.  (*See supra* ¶60.)

329.   Plaintiffs filed a Motion to Bar Evidence in the DP Case.  (*See supra* ¶164.)

330.   When Plaintiffs requested that the motion be granted immediately, ALJ Ascione rejected that demand and set a briefing schedule for the Motion to Bar Evidence, stating "That's not the procedure in the OAL.  [MTBOE] gets 10 days to respond to the motion and then 5 days for a reply," (*see supra* ¶172b), apparently referring to N.J.A.C. §1:1-12.2 ("the opposing parties shall file and serve responsive papers no later than 10 days after receiving the moving papers . . . The moving party may file and serve further papers responding to any matter raised by the opposing party and shall do so no later than five days after receiving the responsive papers.")

331.   Plaintiffs objected and voiced disagreement with ALJ Ascione as it was contrary to federal law and regulations.  (*See supra* ¶172b.)

332.   As stated previously, ALJ Ascione never ruled on Plaintiffs'' Motion to Bar Evidence in the DP Case.  (*See supra* ¶198.)

333.   Once ALJ Ascione ignored the June 18 peremptory hearing date and set the hearing in the DP Case for July 9, 2020, Plaintiffs filed a motion for summary decision ("MSD")[16] in the DP Case on June 24, 2020.  (*See supra* ¶176.)

334.   MTBOE objected to Plaintiffs' MSD as untimely under N.J.A.C. §1:1-12.5(a), (*see supra* ¶177), but did not file an opposition to the motion on a substantive basis.

335.   Plaintiffs responded to MTBOE's objections because application of N.J.A.C. §1:1-12.5(a) would violate the 45 Day Rule under IDEA, the federal regulations, and the New Jersey Administrative Code.  Essentially, applying the timing under N.J.A.C. §1:1-12.5(a) to Plaintiffs' MSD filed on June 24, 2020 would mean that MTBOE's response was due on July 14, 2020 and the reply would be due on July 24, 2020, both dates occurring after the 45 day deadline. (*See supra* ¶177.)

---

[16] The administrative law equivalent of a motion for summary judgment under Fed.R.Civ.P. 56.

336.   Over Plaintiffs' repeated objections, ALJ Ascione issued a Letter Order ruling that Plaintiffs' MSD was untimely.  (*See supra* ¶178.)

337.   ALJ Ascione's rulings on Plaintiffs' motions in the DP Case are clear violations of the New Jersey Administrative Code and regulations governing special education due process cases.

338.   MTBOE's objections to Plaintiffs' motions in the DP Case are unfounded and legally erroneous pursuant to the New Jersey Administrative Code and regulations governing special education due process cases.

339.   MTBOE knew or should have known that its objections were not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law because of the clear mandates of the New Jersey Administrative Code and regulations governing special education due process cases.

340.   Upon information and belief, MTBOE raised these objections for improper purposes, namely, to harass Plaintiffs in the DP Case, cause unnecessary delay, and needlessly increase the cost of litigation, knowing that ALJ Ascione would grant its objections.

341.   As such, MTBOE's objections citing inapplicable provisions of the New Jersey Administrative Code and regulations governing special education due

process cases is a violation of those provisions and rules governing improper representations to the tribunal, *e.g.* Fed.R.Civ.P. 11(b).

342.   Upon information and belief, the OAL and Doe ALJs routinely and similarly issue invalid rulings in special education due process cases and thereby systemically violate the New Jersey Administrative Code and regulations governing special education due process cases.

343.   NJDOE has failed in its legal obligation to oversee the OAL and all ALJs to ensure they are not issuing invalid rulings in special education due process cases and therefore has failed in ensuring compliance with IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules. NJDOE is therefore systemically violating its oversight duties under IDEA.

344.   As a direct and proximate result of these violations, Plaintiffs suffered harm by not being able to rely upon proper application of the New Jersey Administrative Code and regulations governing special education due process cases in the DP Case.

345.   As a direct and proximate result of these violations, Plaintiffs suffered harm by not being able to rely upon ALJs Bogan and Ascione issuing valid rulings on motions in the DP Case.

346.   As a direct and proximate result of these violations, Plaintiffs suffered harm by not having the New Jersey Administrative Code and regulations governing special education due process cases enforced in the DP Case.

347.   As a direct and proximate result of these violations, Plaintiffs suffered harm by not having their valid and supported motions granted by ALJs Bogan and Ascione in the DP Case.

348.   As a direct and proximate result of these violations, Plaintiffs have been harmed by having to participate in the July 9, 2020 hearing in the DP Case when it should have been decided in their favor prior to the hearing.

349.   As a direct and proximate result of these violations, Plaintiffs have been harmed because Plaintiffs incurred substantial attorney's fees and costs.

350.   As a direct and proximate result of these violations, Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that ALJs Bogan and Ascione violated the New Jersey
Administrative Code and regulations governing special education due
process cases enforced in the DP Case;

C.    Finding that ALJ Ascione's rulings on motions were legal error;

D.    Finding that Plaintiffs' motions in the DP Case should have been
granted;

E.    Finding that MTBOE should not have been permitted to rely upon
ALJ Ascione's erroneous briefing schedules and rulings on motions;

F.    Finding that MTBOE's objections were unwarranted by existing law
and were therefore a violation of the New Jersey Administrative Code
and regulations governing special education due process cases
enforced in the DP Case;

G.    Finding that MTBOE's objections were asserted for improper
purposes and therefore should be sanctioned;

H.    Finding that the July 9, 2020 hearing should never have been held;

I.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

J.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

K.    Finding that Plaintiffs are the prevailing parties in the DP Case;

L.    Finding that Defendants are systemically violating the New Jersey Administrative Code and regulations governing special education due process cases;

M.    Finding that because Defendants are systemically violating the New Jersey Administrative Code and regulations governing special education due process cases, school districts, and specifically MTBOE in the DP Case, are able to get an unfair benefit in such cases in violation of the stated purpose of IDEA "to ensure that the rights of children with disabilities and parents of such children are protected," 20 U.S.C. §1400(d)(1)(B);

N.    Injunctive relief that Defendants cease and desist violating the express provisions of the New Jersey Administrative Code and regulations governing special education due process cases, including but not limited to setting briefing schedules on motions that violate the 45 Day Rule and applying N.J.A.C. §1:1 *et seq.* when those provisions conflict with IDEA and the federal regulations;

O.    Injunctive relief that Defendants strictly enforce the New Jersey Administrative Code and regulations governing special education due process cases to ensure compliance with IDEA and the federal regulations;

P.    Compensatory relief to Plaintiffs for the Defendants' violations of IDEA, the federal regulations, the New Jersey regulations, and the New Jersey Administrative Rules;

Q.    Sanctions awarded to Plaintiffs and against MTBOE for filing objections for improper purposes;

R.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

S.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

T.    For such other and further relief as the Court deems equitable and just.

## COUNT NINE – SYSTEMIC VIOLATION OF HEARING OFFICER QUALIFICATIONS
### (Defendants NJDOE, OAL, ALJ Bogan, ALJ Ascione, and Doe ALJs)

351.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

352.    As described at length above, Defendants NJDOE, the OAL, ALJ Bogan, ALJ Ascione, and Doe ALJs have failed to comply with IDEA, the federal regulations, and the New Jersey Administrative Code in several respects.

353.   NJDOE's systemic design flaw by using the OAL as the adjudicative body to resolve special education disputes has resulted in a denial of FAPE to children with disabilities and their families in the State of New Jersey.

354.   By selecting OAL as the body to handle special education disputes in the State of New Jersey and knowing that the OAL had a limited number of ALJs, the ALJs have little or no training in special education law, and do not have the jurisdiction to award all forms of relief under special education laws, NJDOE knew or should have known that its system for resolving special education disputes was flawed *ab initio*.

355.   Upon information and belief, most of the ALJs assigned to special education cases by the OAL in New Jersey do not have special training in nor possess knowledge of the provisions of IDEA, its regulations, or the New Jersey regulations for special education due process cases.  Further, by its own admission, the OAL, as an executive branch agency instead of a judicial branch court, does not have jurisdiction to make legal interpretations of or conduct hearings in special education cases in accordance with standard legal practice.

356.   ALJs operate under the erroneous belief that special education law is state law, rather than federal law, and often make rulings that conflict with the express language of IDEA, its regulations, and the New Jersey regulations for

special education due process cases because they have not been properly trained on this federal law.

357.    Specifically referencing the rulings in the DP Case above, ALJs Bogan's and Ascione's rulings on the 10 Day Peremptory Hearing Date, "Settlement Thursday", discovery, motions, evidence, and other matters conflict with the express language of IDEA, its regulations, and the New Jersey regulations for special education due process cases because they have not been properly trained on this federal law.

358.    As will be discussed *infra*, ALJ Ascione applied the incorrect burden of proof in special education due process cases when a school district, MTBOE in this case, files a complaint seeking to deny an IEE.

359.    Further specifically referencing the DP Case, ALJ Scarola, who oversaw a settlement conference with the parties, made representations (which cannot be revealed due to the confidentiality of settlement discussions) that were in complete contradiction of IDEA, its regulations, and the New Jersey regulations for special education due process cases.

360.    Upon information and belief, none of the ALJs receive any training on IDEA, its regulations, and the New Jersey regulations for special education due process cases.  This is the fault of both NJDOE and the OAL as neither provides any training.

361.   NJDOE is not properly overseeing how the OAL and the ALJs handle special education due process cases and thereby violate their legal duties under IDEA.

362.   Because ALJs lack training, knowledge, and jurisdiction, NJDOE's system of assigning special education disputes to the OAL is flawed and broken.

363.   As a direct and proximate result of these violations, Plaintiffs are harmed by this lack of training and expertise in special education law because they have received invalid rulings to their detriment in the DP Case.

364.   As a direct and proximate result of these violations, Plaintiffs are harmed by this lack of training and expertise in special education law because MTBOE benefitted from invalid rulings that enabled it to win the DP Case.

365.   NJDOE's systemic violations of IDEA have caused Plaintiffs damages.  Specifically, Plaintiffs have been denied a FAPE for procedural violations in the DP Case sent to the OAL, which does not meet the statutory qualifications for hearing officers.  Plaintiffs are entitled to all appropriate relief as a result of this harm.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against these Defendants as follows:

A.     Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.      Finding that ALJs Bogan and Ascione are not properly trained or possess knowledge of the provisions of IDEA, its regulations or the New Jersey regulations for special education due process cases and therefore do not meet the requirements for hearing officers under IDEA;

C.      Finding that because ALJs Bogan and Ascione are not properly trained or possess knowledge of the provisions of IDEA, its regulations or the New Jersey regulations for special education due process cases, their rulings and actions in the DP Case were legal error;

D.      Finding that ALJs Bogan and Ascione are not properly trained or possess knowledge of the provisions of IDEA, its regulations or the New Jersey regulations for special education due process cases and therefore are in violation of the requirements for hearing officers under IDEA and should not be assigned to special education cases;

E.      Finding that ALJs Bogan and Ascione are not properly trained or possess knowledge of the provisions of IDEA, its regulations or the New Jersey regulations for special education due process cases and therefore are in violation of the requirements for hearing officers under IDEA and should not have been assigned to the DP Case;

F.    Finding that Plaintiffs' motions in the DP Case should have been granted;

G.    Finding that MTBOE should not have been permitted to benefit from the lack of training and knowledge of the provisions of IDEA, its regulations, or the New Jersey regulations for special education due process cases by ALJs Bogan and Ascione;

H.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

I.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

J.    Finding that Plaintiffs are the prevailing parties in the DP Case;

K.    Finding that Defendants are systemically violating IDEA, its regulations, and the New Jersey regulations for special education due process cases by failing to have proper training and expertise in special education law prior to presiding over these cases in the OAL;

L.    Finding that because Defendants are systemically violating IDEA, its regulations and the New Jersey regulations governing special education due process cases by not meeting the requirements for hearing officers, school districts, and specifically MTBOE in the DP Case, receives an unfair benefit in such cases;

M.    Injunctive relief that Defendants cease and desist having the OAL and ALJs preside over special education due process cases until they

prove that any such ALJ meets the requirements of hearing officers under IDEA and its regulations;

N.    Injunctive relief that Defendants strictly enforce the requirements of hearing officers under IDEA and its regulations;

O.    Compensatory relief to Plaintiffs for the Defendants' violations of IDEA, the federal regulations, and the New Jersey regulations;

P.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

Q.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

R.    For such other and further relief as the Court deems equitable and just.

## COUNT TEN – LEGAL ERROR ON THE BURDEN OF PROOF IN THE DP CASE
### (Defendants NJDOE, ALJ Ascione and MTBOE)

366.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

367.    MTBOE, like all LEAs in the State of New Jersey, has the burden of proof in a special education due process hearing.  N.J.S.A. §18A:46-1.1.

368.    MTBOE's burden of proof in the DP Case was to show "that its evaluation is appropriate." 34 C.F.R. §§300.502(b)(2)(i) and (b)(3). (*See supra* ¶27.)

369.    Under IDEA, evaluations must meet rigorous standards. *See* 20 U.S.C. §1414(b)(2); *see also* N.J.A.C. §6A:14-3.4.

370.    In his July 16, 2020 Decision in the DP Case, ALJ Ascione stated the burden of proof as "The district bears the burden of proving that a FAPE has been offered." (July 16, 2020 Decision, p. 9.)

371.    ALJ Ascione's statement of the standard of proof when an IEE is being denied is erroneous and completely contradictory to the standard set by the federal IDEA regulations.

372.    Further, school districts / LEAs may not use teacher assessments as "evaluations" for purposes of determining the special education needs of a child with a disability. 34 C.F.R. §300.302 ("The screening of a student by a teacher or specialist to determine appropriate instructional strategies for curriculum implementation shall not be considered to be an evaluation for eligibility for special education and related services.")

373.    In his July 16, 2020 Decision, ALJ Ascione commented that "The District never observed auditory issues", (July 16, 2020 Decision, p. 12), but admits that J.A. was on homebound instruction because "[h]er medical direction is

for home study because of anxiety while at school. It appears the anxiety is related to loud noises which tend to distract this student. This anxiety and sensitivity to noise with autistic children has been observed previously with children with similar diagnoses." (July 16, 2020 Decision, p. 11.)

374.   In other words, ALJ Ascione allowed MTBOE's teacher assessments to be considered as evaluations and override the medical and private evaluations submitted by Plaintiffs.

375.   ALJ Ascione ultimately concluded "that the Board provided FAPE to J.A. by complying with the stay-put order of ALJ John Kennedy, dated September 12, 2019, in consolidated OAL Docket numbers EDS 8588-17 and EDS 11524-18." (July 16, 2020 Decision, p. 13.)

376.   Thus, not only was ALJ Ascione's statement of the burden of proof legal error, his conclusion was based on a burden of proof that was not even at issue in the DP Case, *i.e.* compliance with a Stay-Put Order in another case.

377.   ALJ Ascione further concluded in the July 16, 2020 Decision that, "no just cause exists to conduct an auditory evoked potential evaluation of J.A." and that the J.A. Family's "request for a brain auditory evoked potential evaluation is unjustified and frivolous." (July 16, 2020 Decision, p. 13.)  This was a shift of the burden of proof to Plaintiffs to justify the IEE, which is contrary to IDEA and its regulations.

378.   ALJ Ascione effectively and wrongfully shifted the burden of proof to the J.A. Family in the DP Case for them to prove the purpose and reason for the requested IEE.  This was improper and a violation of IDEA, its regulations, and the New Jersey Administrative Code.

379.   ALJ Ascione's statement of the burden of proof shows that he has not been trained and/or is not knowledgeable about IDEA, its regulations, and the New Jersey regulations with regard to disputes over IEEs, despite Plaintiffs' attempts to educate him on this issue.

380.   MTBOE wrongfully benefitted from the erroneous burden of proof set by ALJ Ascione.

381.   MTBOE could never have met its burden of proving that its evaluation for Central Auditory Processing Disorder of J.A. was appropriate because it never conducted such evaluation and its teacher "assessments" should have never been considered in the DP Case.

382.   NJDOE is not properly overseeing how the OAL and the ALJs handle burden of proof in special education due process cases and thereby violate their legal duties under IDEA.

383.   As a direct and proximate result of these violations, Plaintiffs are harmed by this lack of training and expertise in special education law because ALJ

Ascione did not apply the proper burden of proof and wrongfully shifted the burden of proof to Plaintiffs.

384.   As a direct and proximate result of these violations, Plaintiffs are harmed by this lack of training and expertise in special education law because MTBOE benefitted from an invalid burden of proof that enabled it to win the DP Case.

385.   NJDOE's systemic violations of IDEA have caused Plaintiffs damages.  Specifically, Plaintiffs have been denied a FAPE for erroneous burden of proof in the DP Case.  Plaintiffs are entitled to all appropriate relief as a result of this harm.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against these Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that because ALJ Ascione's statements on the burden of proof in the DP Case was legal error and should be overturned;

C.    Finding that because ALJ Ascione wrongfully shifted the burden of proof to Plaintiffs in the DP Case, which was legal error;

D.    Finding that because ALJ Ascione's statements on the burden of proof caused Plaintiffs to lose the DP Case;

E.    Finding that MTBOE did not meet its burden of proof in the DP Case;

F.    Finding that MTBOE should not have been permitted to benefit from an erroneous burden of proof;

G.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

H.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

I.    Finding that Plaintiffs are the prevailing parties in the DP Case;

J.    Finding that Defendants NJDOE and ALJ Ascione violated IDEA, its regulations, and the New Jersey regulations for special education due process cases by not understanding the burden of proof in LEA-initiated IEE cases;

K.    Finding that because Defendants NJDOE and ALJ Ascione violated IDEA, its regulations, and the New Jersey regulations for special education due process cases by not understanding the burden of proof in LEA-initiated IEE cases, school districts, and specifically MTBOE in the DP Case, receives an unfair benefit in such cases;

L.    Injunctive relief that Defendants cease and desist applying the incorrect burden of proof in LEA-initiated IEE cases;

M.    Injunctive relief that Defendants strictly enforce the burden of proof in LEA-initiated IEE cases as expressly set forth in IDEA and its regulations;

N.     Compensatory relief to Plaintiffs for the Defendants' violations of IDEA, the federal regulations, and the New Jersey regulations;

O.     Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

P.     An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

Q.     For such other and further relief as the Court deems equitable and just.

## COUNT ELEVEN – SYSTEMIC VIOLATION OF THE INDEPENDENCE OF THE ADJUDICATING BODY OF SPECIAL EDUCATION DISPUTES
### (All Defendants)

386.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

387.    NJDOE is an executive branch agency of the State of New Jersey.

388.    NJDOE is the SEA for New Jersey.  *See* 20 U.S.C. §1401(32).

389.    IDEA requires hearing officers conducting special education due process hearings may not be employees of the SEA or the LEA involved in the education or care of the child or a person having a conflict of interest.  (*See supra* ¶49.)

390.    MTBOE is the LEA in the DP Case.  (*See supra* ¶9.)

391.   NJDOE has designated the OAL as the adjudicating body that provides the ALJs to preside over special education due process hearings.

392.   The OAL is an executive branch agency of the State of New Jersey. (*See supra* ¶¶12, 102.)

393.   Although not technically employees of the NJDOE, ALJs are employees of the OAL.

394.   Upon information and belief, many ALJs assigned by the OAL to preside over special education due process hearings are former members of the school district bar, representing LEAs in special education due process cases in the State of New Jersey.

395.   Upon information and belief, none of the ALJs assigned by the OAL to preside over special education due process hearings formerly represented children with disabilities and their families in special education due process cases in the State of New Jersey.

396.   ALJs Bogan, Ascione, and Doe ALJs are employees of the State of New Jersey.

397.   Since the budget and salaries of NJDOE and OAL employees are subparts of and determined by the larger budget of the executive branch, they are beholden to the same pot of money.  This creates a personal and/or professional

interest that conflicts with the ALJ's objectivity in special education due process hearings.

398.   A portion of the executive branch budget is funded by the U.S. Government through IDEA.

399.   Since LEAs, including MTBOE, receive funds from the New Jersey executive branch budget, the NJDOE, OAL, and ALJs assigned to special education due process hearings have a professional interest to preserve and protect those funds and that budget, which conflicts with the independence required by IDEA in special education due process hearings.  Specifically, the financial interest of these executive branch agencies and their employees conflicts with their objectivity in special education due process hearings, which is to comply with IDEA and the needs of students with disabilities and their families that might cost the State of New Jersey money.  This creates an "unholy alliance" between NJDOE, the OAL, the ALJs, and the LEAs.

400.   ALJs Bogan, Ascione, and Doe ALJs have a personal interest, namely that the State of New Jersey pays their wages, which conflicts with their objectivity in special education due process hearings as a decision in favor of a child with a disability and his/her family might reduce or impact the availability of the State of New Jersey to pay those wages.

401.   NJDOE's method for resolving special education disputes is a systemic violation of IDEA and the civil rights of children with disabilities and their families.

402.   In the 2004 reauthorization and amendments of IDEA, Congress found "Parents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways."  20 U.S.C. §1400(c)(8).

403.   To that end, one of the central purposes of IDEA is "to ensure that the rights of children with disabilities and parents of such children are protected," 20 U.S.C. §1400(d)(1)(B), i.e. to level the playing field between families and schools.

404.   With respect to the special education of J.A., Defendants NJDOE, the OAL, MTBOE, and ALJs Bogan and Ascione were all acting under color of state law.

405.   As a direct and proximate result of this unholy alliance between Defendants, LEAs/school districts, and specifically MTBOE in the DP Case, and their counsel get preferential treatment on motions and other matters in special education due process hearings from ALJs. This is evident by how ALJs Bogan and Ascione did not enforce any of the regulations against MTBOE in the DP Case.

406.   The preferential treatment discussed above is evident in the statistics that overall school districts in New Jersey prevail in 70% of the special education

due process cases before the OAL and 93% when parents appeared *pro se*. (*See supra* ¶119.) The statistics should be closer to 50%-50% if the system was fair, as it is unlikely that parents-side attorneys would take frivolous cases.

407. As a direct and proximate result of these violations, Plaintiffs are harmed by this lack of independence of the adjudicating body in New Jersey special education due process hearings by ALJs Bogan and Ascione make every ruling in favor of MTBOE and against Plaintiffs, even when the law and regulations were clearly in Plaintiffs' favor.

408. As a direct and proximate result of these violations, Plaintiffs are harmed by this lack of independence of the adjudicating body in New Jersey special education due process hearings because MTBOE unfairly benefitted from invalid rulings that enabled it to win the DP Case.

409. NJDOE's systemic violations of IDEA have caused Plaintiffs damages. Specifically, Plaintiffs have been denied a FAPE for numerous legal errors in the DP Case. Plaintiffs are entitled to all appropriate relief as a result of this harm.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.     Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that there is an unholy alliance between Defendants creating a lack of independence of the adjudicating body in New Jersey special education due process hearings and thereby violating the basic tenets of IDEA and its regulations;

C.    Finding that because of the lack of independence of the adjudicating body in New Jersey special education due process hearings, MTBOE unfairly benefitted from erroneous rulings by the OAL, ALJs Bogan and Ascione in the DP Case;

D.    Finding that the lack of independence of the adjudicating body in New Jersey special education due process hearings caused Plaintiffs to lose the DP Case;

E.    Finding that MTBOE did not meet its burden of proof in the DP Case;

F.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

G.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

H.    Finding that Plaintiffs are the prevailing parties in the DP Case;

I.    Finding that Defendants are in direct violation of IDEA, its regulations, and the New Jersey regulations by creating a system that lacks independence of the adjudicating body for special education due process hearings;

J.    Finding that the OAL and all ALJs handling special education due process hearings have an inherent conflict of interest in adjudicating special education due process hearings;

K.    Finding that NJDOE has violated IDEA and its regulations by designating the OAL, another executive branch agency, as the adjudicating body for special education due process hearings due to the inherent conflict of interest which existed *ab initio*;

L.    Injunctive relief that the OAL and all ALJs cease and desist handling New Jersey special education due process hearings;

M.    Injunctive relief that NJDOE cease and desist transmitting special education due process hearings to the OAL;

N.    Injunctive relief that NJDOE immediately fund and create a truly independent system for adjudicating special education due process hearings in the State of New Jersey that ensures compliance with IDEA;[17]

O.    Compensatory relief to Plaintiffs for the Defendants' violations of IDEA, the federal regulations, and the New Jersey regulations;

---

[17] As a suggested remedy, the system used in Pennsylvania with hearing officers assigned by the Office of Dispute Resolution would be a suitable alternative.

P.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

Q.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

R.    For such other and further relief as the Court deems equitable and just.

## COUNT TWELVE – DECLARATORY JUDGMENT: FEDERAL PREEMPTION
### (All Defendants)

410.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

411.    The Federal Declaratory Judgment Act provides that "In a case of actual controversy within its jurisdiction, [exceptions omitted as inapplicable], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. §2201(a).

412.    There is an actual and justiciable controversy between Plaintiffs and Defendants in as to the interpretation and/or application of certain provisions of the New Jersey Administrative Code in special education due process hearings.

Plaintiffs allege they have been harmed by both a wrongful interpretation and application of incorrect provisions of the NJAC in the DP Case.

413.   The Supremacy Clause of the U.S. Constitution states that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Constitution, Article VI, Clause 2.

414.   The U.S. Supreme Court has held that if there is a conflict between a federal law and state law, the federal law prevails.  *See Cipollone v. Liggett Group, Inc.*, 505 US 504, 516 (1992) ("Thus, since our decision in *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U. S. 725, 746 (1981).")

415.   Under the doctrine of federal preemption, which is rooted in the Supremacy Clause of the Constitution of the United States, state laws are invalid if they "'interfere with, or are contrary to, federal law. There are three types of preemption: express preemption and two types of implied preemption, field preemption and conflict preemption. Conflict preemption is found where 'compliance with both federal and state regulations is a physical impossibility,' or where state law erects an 'obstacle to the accomplishment and execution of the full

purposes and objectives of Congress.' *R.B. v. Mastery Charter School*, 532 Fed. Appx. 136, Opinion at 12 (3rd Cir. 2013) [internal citations omitted].

416.  There is a direct conflict between the scheme under federal IDEA law for resolving special education disputes and NJDOE's system under the New Jersey Administrative Code for how New Jersey handles special education disputes as discussed at length in preceding allegations of this Complaint.

417.  As one example of this, Defendants treat the UAPR as the rules that govern special education due process hearings in New Jersey, but many provisions of the UAPR conflict with IDEA, not least of which is the conflict between briefing schedules for motions generally under N.J.A.C. §1:1-12.2 and motions for summary decision under N.J.A.C. §1:1-12.5(a) and the 45 Day Rule under IDEA.

418.  Another example of this is Defendants' treatment of an IDEA request for access to a student's records as a discovery request instead of an independent Procedural Safeguard violation of which creates a claim for relief for a procedural violation of IDEA.

419.  Another example discussed *supra* is the lack of independence and training of ALJs which violates the requirements of hearing officers under IDEA.

420.  Federal IDEA law must prevail over the New Jersey Administrative Code and NJDOE's system for resolving special education disputes.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Declaring that federal IDEA law and its regulations prevail over any and all provisions of the New Jersey Administrative Code that conflict therewith, including without limitation N.J.A.C. §§1:1-12.2 and 1:1-12.5(a);

B.    Declaring that federal IDEA law and its regulations prevail over any and all interpretations of the New Jersey Administrative Code by Defendants that conflict therewith;

C.    Declaring that ALJs Bogan's and Ascione's rulings in the DP Case are void by operation of the federal preemption doctrine since they conflict with IDEA and its regulations;

D.    Declaring that ALJ Ascione's July 16, 2020 Decision in the DP Case is void by operation of the federal preemption doctrine since it conflicts in many respects with IDEA and its regulations, including without limitation the burden of proof in IEE cases;

E.    Declaring that NJDOE's system for adjudicating New Jersey special education due process hearings is void by operation of the federal preemption doctrine since it conflicts in many respects with IDEA and its regulations and thereby violates the basic tenets of IDEA;

F.      Declaring that Plaintiffs are the prevailing parties in the DP Case;

G.      Declaring that the OAL should not be the adjudicating body for special education due process hearings in New Jersey by operation of the federal preemption doctrine since it conflicts in many respects with IDEA and its regulations and thereby violates the basic tenets of IDEA;

H.      Declaring that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

I.      An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

J.      For such other and further relief as the Court deems equitable and just.

## COUNT THIRTEEN – VIOLATION OF §504
### (Defendants NJDOE, OAL, ALJ Bogan, and ALJ Ascione)

421.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

422.    Section 504 of the Rehabilitation Act of 1973, 29 USC §701 *et seq.* ("§504") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

423.    Enforcing special education rights under IDEA, §504, the ADA, or other civil rights laws is a protected activity.

424.    Retaliation by a public entity or official when a parent or child with a disability engages in a protected activity such as enforcing special education legal rights is a violation of §504.  29 C.F.R. §33.13; 34 C.F.R. §100.7(e); 34 C.F.R. §104.61.

425.    J.A. is diagnosed with Autism, a mental impairment which substantially limits one or more major life activities, including but not limited to learning and communicating, which is a "disability" as defined in §504.  29 U.S.C. §705(20)(B).

426.    J.A. is an "individual with a disability" within the meaning of §504 because J.A.'s diagnosis of Autism substantially limits his ability to learn, communicate, and be educated.  29 U.S.C. §705(20)(A); 34 C.F.R. §104.3(j).

427.    J.A. is entitled to the protections against discrimination as provided by §504 and shall not, by reason of her disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 29 U.S.C. §794(a); 34 C.F.R. §§104.4, 104.31 and 104.33.

428.    ALJ Bogan reassigned the DP Case to ALJ Ascione because Plaintiffs were exerting their legal rights under the New Jersey Administrative Code to hold the OAL and ALJ Bogan to the June 18 peremptory hearing date.

429.   ALJ Bogan refused to enforce the Five-Day Exchange Rule because of the OAL's common practice of "Settlement Thursday" and refused to address Plaintiffs' Motion to Bar Evidence.

430.   ALJ Bogan's actions in the DP Case were retaliation against Plaintiffs for exerting their rights under special education law.

431.   ALJ Bogan's actions in the DP Case were spiteful and an abuse of power as a hearing officer assigned to enforce IDEA.

432.   ALJ Ascione concluded in the DP Case that the J.A. Family's "request for a brain auditory evoked potential evaluation is unjustified and frivolous."

433.   ALJ Ascione ruled in MTBOE's favor in the DP Case in every motion and objection asserted by Plaintiffs because he was discriminating against Plaintiffs for exerting their special education rights.

434.   ALJ Ascione's findings and rulings in the DP Case were retaliation against Plaintiffs for exerting their rights under special education law and because they were challenging his legal errors throughout the DP Case.

435.   ALJ Ascione's findings and rulings in the DP Case were spiteful and an abuse of power as a hearing officer assigned to enforce IDEA, especially since the facts and law of the case supported Plaintiffs' request for an IEE to address J.A.'s Central Auditory Processing Disorder.

436.   As a direct and proximate result of these violations, Plaintiffs suffered harm by MTBOE not negotiating in good faith during the 30 Day Resolution Period knowing that the OAL and ALJ Bogan would treat the June 18, 2020 peremptory hearing date as a "Settlement Thursday" conference, when Plaintiffs made a very reasonable settlement demand during the 30 Day Resolution Period which should have resolved the DP Case before being transmitted for hearing and thereby causing Plaintiffs to incur substantial additional attorney's fees and costs.

437.   As a direct and proximate result of these violations, Plaintiffs suffered harm by having the DP Case reassigned to ALJ Ascione without a request to do so, their Motion to Bar Evidence denied, their Five-Day Exchange compliance ignored, and allowing MTBOE to present evidence in the DP Case when it should have been barred from doing so.

438.   As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE had the statutory burden of proof in the DP Case and Plaintiffs should have won the case because MTBOE would not have met its burden of proof with no evidence to present.

439.   Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

440.   As a direct and proximate result of the violations of §504 and the regulations promulgated thereunder by these Defendants, Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against these Defendants as follows:

A.   Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.   Finding that ALJs Bogan and Ascione's actions in the DP Case were retaliatory in response to Plaintiffs engaging in a protected activity, namely asserting their special education legal rights, and therefore a violation of §504;

C.   Finding that Plaintiffs' are entitled to the IEE as a matter of law;

D.   Finding that MTBOE must fund the IEE requested by Plaintiffs;

E.   Finding that Plaintiffs are the prevailing parties in the DP Case;

F.   Finding that NJDOE, the OAL, and ALJs Bogan and Ascione committed egregious and spiteful discrimination against Plaintiffs in violation of these Defendants' obligations under the law to resolve special education disputes fairly and without prejudice against children with disabilities and their families exerting their civil rights;

G.   Awarding Plaintiffs monetary damages in an amount of $400,000.00;

H.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

I.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

J.    For such other and further relief as the Court deems equitable and just.

### COUNT FOURTEEN – VIOLATION OF THE ADA
**(Defendants NJDOE, OAL, ALJ Bogan, and ALJ Ascione)**

441.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

442.    The Americans with Disabilities Act of 1990 ("ADA"), 42 USC §12101 *et seq.* ("ADA") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

443.    Enforcing special education rights under IDEA, §504, the ADA, or other civil rights laws is a protected activity.

444.    The ADA prohibits retaliation, coercion or threats against people who file complaints under the ADA or otherwise engage in a protected activity.  42 U.S.C. §12203; 28 C.F.R. §35.134.

445.    As a child with Autism, J.A. has a "disability" as the disorder substantially limits one or more major life activities, including but not limited to

**Page 131 of 156**

learning and communicating, as set forth in the ADA. 42 U.S.C. §12102(1); 28

C.F.R. §35.104.

446.   J.A. is a "qualified individual with a disability" within the meaning of

the ADA. 42 U.S.C. §§12132 and 12182; 28 C.F.R. §§35.130 and 35.149.

447.   J.A. is entitled to the protections against discrimination as provided by

the ADA and shall not, by reason of her disability, be denied public

accommodations or excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity. 42 U.S.C. §§12132, 12181 and 12182; 28 C.F.R. §§35.130 and

35.149.

448.   NJDOE, like all educational facilities receiving federal funds, is a

public accommodation. 42 U.S.C. §12181(7)(j).

449.   As a direct and proximate result of the violations of the ADA and the

regulations promulgated thereunder by these Defendants, Plaintiffs have suffered

serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order

and Judgment in favor of Plaintiffs and against these Defendants as follows:

A.     Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as

error;

B.    Finding that ALJs Bogan and Ascione's actions in the DP Case were retaliatory in response to Plaintiffs engaging in a protected activity, namely asserting their special education legal rights, and therefore a violation of the ADA;

C.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

D.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

E.    Finding that Plaintiffs are the prevailing parties in the DP Case;

F.    Finding that NJDOE, the OAL, and ALJs Bogan and Ascione committed egregious and spiteful discrimination against Plaintiffs in violation of these Defendants' obligations under the law to resolve special education disputes fairly and without prejudice against children with disabilities and their families exerting their civil rights;

G.    Awarding Plaintiffs monetary damages in an amount of $400,000.00;

H.    Awarding Plaintiffs punitive damages in an amount in excess of $4,500,000.00;

I.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

J.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

K.     For such other and further relief as the Court deems equitable and just.

## COUNT FIFTEEN – §1983 SYSTEMIC CIVIL RIGHTS VIOLATIONS
### (Defendants NJDOE, OAL, ALJ Bogan, and ALJ Ascione)

450.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

451.   Congress intended that IDEA rights be enforceable under 42 U.S.C. §1983.

452.   Any person, including without limitation a school district, school board of education, local educational agency, state educational agency, and/or arm of the state government, who subjects or causes to be subjected a U.S. citizen to the deprivation of that citizen's Constitutional rights and/or privileges shall be liable to such citizen in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. §1983.

453.   Plaintiffs have a cause of action under §1983 if a school district, school board of education, local educational agency, state educational agency, and/or arm of the state government has a policy or custom that caused the violation of their constitutional rights, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), or, under the state-created danger theory. *See Sanford v. Stiles,* 456 F. 3d 298 (3d Cir. 2006); *Kneipp v. Tedder,* 95 F. 3d 1199 (3d Cir. 1996).

454.   Defendants were acting within the course and scope of their employment and/or under the color of state law at all material times.

455.   Defendants have denied Plaintiffs their right to due process of law.

456.   Defendants have denied Plaintiffs their right to a determination of their special education claims against school districts and/or local education agencies by failing to comply with IDEA, its regulations, and the New Jersey regulations.

457.   Defendants have denied Plaintiffs their right to a determination of their special education claims against school districts and/or local education agencies by failing to enforce the regulatory timeline under IDEA.

458.   Defendants have denied Plaintiffs their right to timely assert other claims because of the delays and systemic flaws.

459.   Defendants violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Plaintiffs equal protection under the law on the basis of disability.

460.   Defendants violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to Plaintiffs by delaying and/or failing to timely address special education problems in MTBOE and leaving J.A. in an outdated and inappropriate IEP without adequate evaluation.

461.   Defendants violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to creating a flawed system for resolving special education disputes in the State of New Jersey; selecting the OAL as the adjudicative body for special education disputes and failing to ensure proper training and expertise of the OAL and the ALJs; allowing the unreasonable delay in special education cases to continue without efforts to rectify the problem; allowing the repeated and consistent violation of the regulatory timeline for special education due process hearings; and failing to provide Plaintiffs an independent tribunal / adjudicatory body to resolve special education disputes in compliance with federal law.

462.   Defendants knew or should have known that they were denying Plaintiffs their rights in violation of statutory law.

463.   Defendants knew or should have known that they were denying Plaintiffs due process of law.

464.   Defendants knew or should have known that they were impeding, impairing, prejudicing, and/or violating Plaintiffs' constitutional rights to have a proper forum in which to enforce federal statutory law.

465.   Defendants acted intentionally, wantonly, and/or with deliberate indifference to Plaintiffs' clearly established constitutional rights.

466.   Plaintiffs are harmed because the education system and dispute resolution system for children with disabilities has broken down in the State of New Jersey.

467.   Plaintiffs are harmed because school districts, LEAs, and their counsel know that they can unfairly benefit from the unholy alliance as described above and outlast the cost and delays in litigating special education disputes due to the OAL's conflict of interest and preferential treatment of LEAs.

468.   Plaintiffs have exhausted their administrative remedies as required by IDEA because the DP Case went to a final Decision.

469.   IDEA contemplates that "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency." 20 U.S.C. §1415(f)(1) ( emphasis added.)

470.   As discussed at length *supra*, Plaintiffs did not have an opportunity for an impartial due process hearing in the DP Case.

471.   Defendants have violated Plaintiffs most fundamental rights under IDEA and its regulations.

472.   As a direct and proximate result of the violations of §1983 by these Defendants, Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against these Defendants as follows:

A.   Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.   Finding that ALJs Bogan and Ascione's actions in the DP Case were retaliatory in response to Plaintiffs engaging in a protected activity, namely asserting their special education legal rights, and therefore a violation of the ADA;

C.   Finding that Plaintiffs' are entitled to the IEE as a matter of law;

D.   Finding that MTBOE must fund the IEE requested by Plaintiffs;

E.   Finding that Plaintiffs are the prevailing parties in the DP Case;

F.   Finding that NJDOE, the OAL, and ALJs Bogan and Ascione committed egregious and spiteful discrimination against Plaintiffs in violation of these Defendants' obligations under the law to resolve special education disputes fairly and without prejudice against children with disabilities and their families exerting their civil rights;

G.   Awarding Plaintiffs monetary damages in an amount of $400,000.00;

H.   Awarding Plaintiffs punitive damages in an amount in excess of $4,500,000.00;

I.     Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

J.     An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

K.     For such other and further relief as the Court deems equitable and just.

## COUNT SIXTEEN – LEGAL ERROR: DENIAL OF IEE – VIOLATION OF IDEA
### (Defendants ALJ Ascione and MTBOE)

473.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

474.   J.A. has a Central Auditory Processing Disorder in addition to her diagnosis of Autism.

475.   The J.A. Family requested that MTBOE provide services and/or accommodations to address J.A.'s Central Auditory Processing Disorder, but those requests were repeatedly denied by MTBOE.

476.   The J.A. Family provided numerous privately-paid evaluations to MTBOE showing that services and/or accommodations in the school environment were necessary to address J.A.'s Central Auditory Processing Disorder.  MTBOE rejected those evaluations and denied the recommended services and accommodations in those evaluations.

477.   J.A.'s primary physician recommended that J.A. be on homebound instruction because the noise in the school environment was negatively affecting her Central Auditory Processing Disorder and thereby causing J.A. severe anxiety.

478.   Finally, MTBOE agreed to place J.A. on homebound instruction and indicated that placement in her IEP.

479.   Several times after the homebound placement, MTBOE sought to change J.A.'s IEP including her placement back to the public school environment.

480.   The J.A. Family obtained an Order from an emergent relief petition in the OAL enforcing the homebound placement as 'Stay Put' under IDEA.

481.   MTBOE performed a round of formal evaluations in January 2020, but, despite the request by the J.A. Family to do so, did not perform an evaluation of J.A.'s Central Auditory Processing Disorder.

482.   The January 2020 evaluations showed that J.A. was still struggling with noise and was being distracted and impacted during those evaluations, even though the evaluations took place in quiet environments.

483.   During a meeting to review the January 2020 evaluations, J.A.'s mother again requested an evaluation to address J.A.'s Central Auditory Processing Disorder since that was the main reason for her homebound placement. MTBOE again denied the evaluation.

484.    Plaintiffs thereafter requested the IEE for an Auditory Evoked Potential (BAEP or BAER) test to be funded by MTBOE.  The BAEP / BAER is a neurological test to determine how sounds and noise are being affected in the neural pathways to the brain.  (*See supra* ¶146.)

485.    MTBOE rejected this request by filing the due process complaint in the DP Case.

486.    Despite performing 32 evaluations of J.A. since 2011, MTBOE has never conducted an evaluation of J.A. for a Central Auditory Processing Disorder or any type of audiological evaluation.

487.    MTBOE had no ability to prove its evaluation of J.A. was appropriate because it had no evaluation of J.A. for a Central Auditory Processing Disorder.

488.    Therefore, MTBOE's due process complaint in the DP Case was filed with no basis in fact or law.

489.    MTBOE's pattern of rejection of information and recommendations relating to J.A.'s Central Auditory Processing Disorder and repeated refusal to acknowledge the impact of the disorder on J.A.'s education in the public school environment is what led to her homebound placement.  MTBOE's rejection of the IEE request by filing the due process complaint was in bad faith and willful neglect of its obligation under IDEA to evaluate J.A. for a known disability.  MTBOE's denial of the IEE and filing of the due process complaint is a violation of IDEA.

490.    Despite this, ALJ Ascione issued his July 16, 2020 Decision in favor of MTBOE's complaint denying the IEE requested by the J.A. Family and concluding that "no just cause exists to conduct an auditory evoked potential evaluation of J.A." and that the request for the IEE was "unjustified and frivolous." (July 16, 2020 Decision, p. 13.)

491.    ALJ Ascione's July 16, 2020 Decision is erroneous both factually and legally.  He did not apply the correct test when a LEA initiates a due process case to deny an IEE.  He refused to allow evidence to show the history of MTBOE ignoring the impact of J.A.'s Central Auditory Processing Disorder on her education and actively rejecting outside expertise and recommendations.  He did not understand that J.A.'s Central Auditory Processing Disorder is neurologically-based and that the BAEP/BAER test would provide insight to assisting J.A. in returning to the public school environment from her homebound placement, which ultimately would allow her to better access education.  Thus, his entire decision is a violation of IDEA.

492.    As a direct and proximate result of these violations, Plaintiffs have been harmed because MTBOE had the statutory burden of proof in the DP Case and Plaintiffs should have won the case because MTBOE would not have met its burden of proof because it did not conduct an evaluation for J.A.'s Central

Auditory Processing Disorder and therefore could not show its evaluation was appropriate.

493.   Plaintiffs have been harmed because ALJ Ascione issued his July 16, 2020 Decision granting MTBOE's petition when it should have lost the case, erroneously granting MTBOE prevailing party status, and declaring that Plaintiffs' request for an IEE was "frivolous" with all evidence to the contrary.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against all Defendants as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that ALJ Ascione applied the wrong burden of proof in a LEA-initiated denial of IEE due process case;

C.    Finding that ALJ Ascione used the wrong legal standard in the DP Case;

D.    Finding that ALJ Ascione's factual findings were error in the DP Case;

E.    Finding that ALJ Ascione's exclusion of Plaintiffs' evidence was error in the DP Case;

F.    Finding that MTBOE could not meet its burden of proof in the DP Case;

G.    Finding that MTBOE's due process complaint was filed with no basis in law or fact;

H.    Finding that MTBOE's due process complaint was filed in bad faith;

I.    Finding that MTBOE unreasonably protracted the final resolution of the action or proceeding;

J.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

K.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

L.    Finding that Plaintiffs are the prevailing parties in the DP Case;

M.    Compensatory relief to Plaintiffs for all Defendants' violations;

N.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

O.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

P.    For such other and further relief as the Court deems equitable and just.

## COUNT SEVENTEEN – VIOLATION OF §504
### (Defendant MTBOE)

494.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

495.    There are other pending special education due process cases between Plaintiffs and MTBOE with a long history of litigation.

496.    MTBOE is a public entity that receives federal funding.

497.    MTBOE has great animosity against Plaintiffs for asserting and enforcing their special education legal rights against it.

498.    MTBOE filed the DP Case out of retaliation based on that animosity and the long history of litigation between the parties, rather than out of a valid legal basis for failing to address J.A.'s Central Auditory Processing Disorder and denying the request for the IEE.

499.    MTBOE has acted with discrimination against Plaintiffs because of J.A.'s disabilities and Plaintiffs engaging in protected activity.

500.    MTBOE's retaliatory and discriminatory actions are violations of §504.

501.    As a direct and proximate result of the violations of §504 and the regulations promulgated thereunder by MTBOE, Plaintiffs have suffered harm and serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against MTBOE as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE could not meet its burden of proof in the DP Case;

C.    Finding that MTBOE's due process complaint was filed with no basis in law or fact;

D.    Finding that MTBOE's due process complaint was filed in bad faith;

E.    Finding that MTBOE's due process complaint was filed out of retaliation and discrimination against Plaintiffs;

F.    Finding that MTBOE unreasonably protracted the final resolution of the DP Case;

G.    Finding that MTBOE violated Plaintiffs' civil rights;

H.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

I.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

J.    Finding that Plaintiffs are the prevailing parties in the DP Case;

K.    Awarding Plaintiffs monetary damages in an amount of $400,000.00;

L.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

M.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

N.    For such other and further relief as the Court deems equitable and just.

## COUNT EIGHTEEN – VIOLATION OF THE ADA
### (Defendant MTBOE)

502.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

503.    MTBOE is a public accommodation that receives federal funding. 42 U.S.C. §12181(7)(j).

504.    MTBOE's retaliatory and discriminatory actions are violations of the ADA.

505.    As a direct and proximate result of the violations of the ADA and the regulations promulgated thereunder by MTBOE, Plaintiffs have suffered harm and serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against MTBOE as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE could not meet its burden of proof in the DP Case;

C.    Finding that MTBOE's due process complaint was filed with no basis in law or fact;

D.    Finding that MTBOE's due process complaint was filed in bad faith;

E.     Finding that MTBOE's due process complaint was filed out of

retaliation and discrimination against Plaintiffs;

F.     Finding that MTBOE's actions were engaged in with malice and/or

reckless indifference;

G.     Finding that MTBOE unreasonably protracted the final resolution of

the DP Case;

H.     Finding that MTBOE violated Plaintiffs' civil rights;

I.     Finding that Plaintiffs' are entitled to the IEE as a matter of law;

J.     Finding that MTBOE must fund the IEE requested by Plaintiffs;

K.     Finding that Plaintiffs are the prevailing parties in the DP Case;

L.     Awarding Plaintiffs monetary damages in an amount of $400,000.00;

M.     Awarding Plaintiffs punitive damages in an amount in excess of

$10,000,000.00;

N.     Finding that Plaintiffs are entitled to monetary reimbursement for all

expenses incurred by Plaintiffs in the DP Case and herein, including

but not limited to attorney's fees and costs;

O.     An award of attorney's fees and costs for Plaintiffs and granting

Plaintiffs the opportunity to file a fee petition for such award; and

P.     For such other and further relief as the Court deems equitable and just.

## COUNT EIGHTEEN – VIOLATION OF THE NJLAD
### (Defendant MTBOE)

506.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

507.   The New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et seq.* ("NJLAD") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

508.   J.A. has a "disability" as a result of her several diagnoses as defined in the NJLAD.  N.J.S.A. §10:5-5(q).

509.   MTBOE, like all educational facilities under the supervision of the NJDOE and receiving federal funds, is "a place of public accommodation." N.J.S.A. §10:5-5(l).

510.   J.A. is entitled to the prohibitions against unlawful discrimination as provided by the NJLAD and shall not, by reason of her disabilities, be denied public accommodations or excluded from participation in or be denied the benefits of the services, programs, or activities of MTBOE or be subjected to discrimination by any such entity.  N.J.S.A. §10:5-12.

511.   In addition, under NJLAD, public schools and its employees are barred from discriminating on the basis of a person's disability.

512.   MTBOE failed in its responsibilities under the NJLAD to provide its services, programs and activities in a full and equal manner to J.A., a disabled

person, as described hereinabove, including failure to ensure that evaluations and IEEs are provided on an equal basis to a child with a disability and free of hostility towards J.A.'s disability.

513.    MTBOE further failed in its responsibilities under the NJLAD to provide its services, programs, and activities, including without limitation evaluations and IEEs, in a full and equal manner to J.A., a disabled person, as described hereinabove, by subjecting her to a hostile and dangerous educational environment.

514.    MTBOE further violated J.A.'s legal rights under the NJLAD by denying her the requested IEE and filing the due process complaint without valid legal or factual basis.

515.    Plaintiffs reserve their rights to assert any other violations of NJLAD that resulted in discrimination by MTBOE against J.A.

516.    By retaliating against Plaintiffs, MTBOE violated Plaintiffs' legal rights under the NJLAD with malice and/or reckless indifference.

517.    As a direct and proximate result of MTBOE's failure to comply with the NJLAD, Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against MTBOE as follows:

A.    Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.    Finding that MTBOE's due process complaint was filed with no basis in law or fact;

C.    Finding that MTBOE's due process complaint was filed in bad faith;

D.    Finding that MTBOE's due process complaint was filed out of retaliation and discrimination against Plaintiffs;

E.    Finding that MTBOE's actions were engaged in with malice and/or reckless indifference;

F.    Finding that MTBOE unreasonably protracted the final resolution of the DP Case;

G.    Finding that MTBOE violated Plaintiffs' civil rights and violated the NJLAD;

H.    Finding that Plaintiffs' are entitled to the IEE as a matter of law;

I.    Finding that MTBOE must fund the IEE requested by Plaintiffs;

J.    Finding that Plaintiffs are the prevailing parties in the DP Case;

K.    Awarding Plaintiffs monetary damages in an amount of $400,000.00;

L.    Awarding Plaintiffs punitive damages in an amount in excess of $10,000,000.00;

M.    Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

N.    An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

O.    For such other and further relief as the Court deems equitable and just.

## COUNT NINETEEN – VIOLATION OF §1983
### (Defendant MTBOE)

518.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

519.    MTBOE was acting under the color of state law at all material times.

520.    MTBOE has denied Plaintiffs their right to due process of law.

521.    Gillian Corsey, MTBOE's Case Manager assigned to J.A., testified in the DP Case that MTBOE never performs evaluations for Central Auditory Processing Disorder.  Thus, MTBOE admits that it is a policy and/or practice to deny requests to perform evaluations for Central Auditory Processing Disorder.

522.    MTBOE has denied Plaintiffs their right to a determination of their special education claims against it by denying the request for the IEE.

523.    MTBOE has denied Plaintiffs their right to a determination of their special education claims against it by failing to enforce IDEA regulations on IEEs.

524.   MTBOE violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Plaintiffs equal protection under the law on the basis of disability.

525.   MTBOE violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to Plaintiffs by failing to timely address J.A.'s Central Auditory Processing Disorder and leaving J.A. in the homebound placement without adequate evaluation.

526.   MTBOE violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to having a policy and/or practice to deny requests to perform evaluations for Central Auditory Processing Disorder in reckless disregard to its legal obligations under IDEA and its regulations.

527.   MTBOE knew or should have known that it was denying Plaintiffs their rights in violation of statutory law.

528.   MTBOE knew or should have known that it was denying Plaintiffs due process of law.

529.   MTBOE knew or should have known that it was impeding, impairing, prejudicing, and/or violating Plaintiffs' constitutional rights to enforcing IDEA and its regulations.

530.   MTBOE acted intentionally, wantonly, and/or with deliberate indifference to Plaintiffs' clearly established constitutional rights.

531.   Plaintiffs are harmed because MTBOE successfully blocked Plaintiffs' rights to assert and enforce IDEA and its regulations, in particular obtaining a validly requested IEE.

532.   MTBOE has violated Plaintiffs most fundamental rights under IDEA and its regulations.

533.   As a direct and proximate result of the violations of §1983 by MTBOE, Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment in favor of Plaintiffs and against MTBOE as follows:

A.   Overturning and/or vacating ALJ Ascione's July 16, 2020 Decision as error;

B.   Finding that MTBOE's actions in denying Plaintiffs' request for an IEE is a policy and/or practice and not based on a review of the individual facts in the DP Case;

C.      Finding that MTBOE's policy and/or practice of denying evaluations for Central Auditory Processing Disorder is a violation of §1983 and Plaintiffs' civil rights;

D.      Finding that MTBOE's policy and/or practice of denying evaluations for Central Auditory Processing Disorder is engaged in with malice and/or reckless indifference especially with respect to Plaintiffs;

E.      Finding that Plaintiffs' are entitled to the IEE as a matter of law;

F.      Finding that MTBOE must fund the IEE requested by Plaintiffs;

G.      Finding that Plaintiffs are the prevailing parties in the DP Case;

H.      Awarding Plaintiffs monetary damages in an amount of $400,000.00;

I.      Awarding Plaintiffs punitive damages in an amount in excess of $20,000,000.00;

J.      Finding that Plaintiffs are entitled to monetary reimbursement for all expenses incurred by Plaintiffs in the DP Case and herein, including but not limited to attorney's fees and costs;

K.      An award of attorney's fees and costs for Plaintiffs and granting Plaintiffs the opportunity to file a fee petition for such award; and

L.      For such other and further relief as the Court deems equitable and just.

THURSTON LAW OFFICES LLC


By:  /s/ *Robert C. Thurston*
          Robert C. Thurston, Esq.
          Attorney for Plaintiffs

Dated: July 28, 2020

Robert C. Thurston, Esq.
Attorney ID #008801988
Thurston Law Offices LLC
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003
856-335-5291
Email: rthurston@schoolkidslawyer.com