## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

J.A., individually and on
behalf of her
minor child J.A.,

        Plaintiffs,

   V.

MONROE TOWNSHIP BOARD OF
EDUCATION; NEW JERSEY
DEPARTMENT OF EDUCATION;
KEVIN DEHMER, Interim
Commissioner of Education;
NEW JERSEY OFFICE OF
ADMINISTRATIVE LAW; MARYANN
BOGAN, Administrative Law
Judge; JOSEPH A. ASCIONE,
Administrative Law Judge, and
DOEs 1-250 SIMILARLY SITUATED
ADMINISTRATIVE LAW JUDGES,

        Defendants.

No. 1:20-cv-09498-NLH-MJS

**OPINION**

---

ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
100 SPRINGDALE ROAD A3
PMB 287
CHERRY HILL, NJ 08003

   *Counsel for Plaintiffs.*


LAURIE LEE FICHERA
KERRY SORANNO
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET - P.O. BOX 112
TRENTON, NJ 08625

   *Counsel for the State Defendants.*

WILLIAM S. DONIO
YOLANDA NICOLE MELVILLE
COOPER LEVENSON, P.A.
1125 ATLANTIC AVENUE, THIRD FLOOR
ATLANTIC CITY, NJ 08401-4891

    *Counsel for Monroe Township Board of Education.*


**<u>HILLMAN</u>, District Judge**

    Currently before the Court is the State Defendants'[1] Motion to Dismiss Plaintiffs'[2] Complaint (ECF 23).  For the reasons that follow, the State Defendants' motion will be granted in part and denied in part.

<u>RELEVANT FACTUAL AND PROCEDURAL HISTORY</u>

    For purposes of this motion to dismiss, the Court takes the facts alleged in the complaint as true and will only recount those salient to the instant motion.  J.A. is a disabled child who was receiving special education services from Monroe Township Board of Education ("MTBOE").  J.A., who was born in May 2008, has the primary diagnosis of autism with other secondary diagnoses, and she is eligible for special education

---

[1] The State Defendants the New Jersey Department of Education ("NJDOE"), the Commissioner of Education in their official capacity, the New Jersey Office of Administrative Law ("NJOAL"), Maryann Bogan, Administrative Law Judge in her official capacity, Joseph A. Ascione, Administrative Law Judge in his official capacity, and Does 1-250 "Similarly Situated Administrative Law Judges," in their official capacity. (<u>See</u> ECF 23).

[2] Plaintiffs are J.A., individually and on behalf of her minor child J.A. (<u>See generally</u> ECF 1).

and related services under the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(A).  J.A. lives
with her parents, J.A. and J.A., in Gloucester County, New
Jersey.

In May 2016, J.A. first received an individualized
education program ("IEP") at her elementary school in the MTBOE
school district.  Plaintiffs' claims arise from a due process
complaint[3] filed with the NJDOE regarding various issues with
J.A.'s IEP.  The crux of the instant dispute regarding the due
process complaint stems from MTBOE's refusal to pay for an
Independent Education Evaluation ("IEE") regarding J.A.'s
auditory potential.  (Id. at 42).  At the time, J.A. was
undergoing homebound instruction and the IEE was sought to see
if there was a way that J.A. could return to in-school
instruction.  (Id. at 42).  Plaintiffs allege that "[i]nstead of
funding the IEE, MTBOE filed a due process complaint with [the
NJDOE] on March 5, 2020 against the J.A. Family seeking to deny
the IEE[.]"  (Id. at 43).

Plaintiffs assert numerous claims against the State
Defendants for their alleged systemic violations of this
procedure.  The following timeline of events is relevant to

---

[3]  Plaintiffs have been involved in other due process
proceedings, for which civil actions are currently before this
Court.  See J.A. v. State of New Jersey, 1:18-cv-09580-NLH-MJS;
J.A. v. State of New Jersey, 1:21-cv-06283-NLH-MJS.

Plaintiffs' claims against the State Defendants, and the State Defendants' instant motion to dismiss:

- On February 17, 2020, Plaintiffs sent a letter to MTBOE demanding that MTBOE fund the IEE pursuant to IDEA's regulations, 34 C.F.R. § 300.502(b)(1).[4]  (ECF 1 at 42).

- On March 5, 2020, MTBOE filed a due process complaint with the NJDOE seeking to deny the IEE.  (Id.)

- On March 14, 2020, Plaintiffs timely filed their answer to the due process complaint.  (Id. at 43).

- Although the 30-day resolution period expired on April 5, 2020, the parties agreed to a 60-day extension due to the COVID-19 pandemic.  (Id.)

- On May 19, 2020, Plaintiffs and MTBOE participated in a resolution meeting via conference call.  The meeting failed

---

[4] 34 C.F.R. § 300.502(b)(1) provides in relevant part, "A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency, . . .[and] [i]f a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either . . . File a due process complaint to request a hearing to show that its evaluation is appropriate; or Ensure that an independent educational evaluation is provided at public expense . . . ."

The purpose of the IEE is to determine if J.A.'s Central Auditory Processing Disorder ("CAPD") is neurological in nature and what alternative therapies or accommodations can be made in the school environment so that J.A. could return to the public school from homebound instruction, which was instituted in September 2019.

to resolve the case, and the parties notified the NJDOE.

- The NJDOE transmitted the case to the OAL on May 19, 2020, and the OAL issued a Hearing Notice to the parties setting a hearing date of June 4, 2020, and assigning the case to ALJ Bogan.  (Id.)

- Plaintiffs requested a "brief adjournment" of the June 4, 2020 hearing date due to a conflict, and with the consent of MTBOE, the case was rescheduled by the OAL for a hearing on June 18, 2020 with the issuance of an amended Hearing Notice.  (Id. at 45).

- The Hearing Notice notified the parties of the Five Day Exchange Rule, which allows either party to a due process hearing to move to exclude evidence that is not produced at least five days prior to a hearing. (Id. at 46); see 20 U.S.C. § 1415(f)(2)(A).

- Plaintiffs requested from MTBOE access to J.A.'s records and that the documents be produced by June 8, 2020.  On June 9, 2020, however, MTBOE responded that producing documents by June 8th was unreasonable and that there was no urgency in the matter.  (ECF 1 at 46).

- Plaintiffs hand-delivered their Five Day Exchange rule documents and list of witnesses to MTBOE on June 11, 2020 at approximately 1:45 p.m. and also sent confirmation via

email on that same date at 4:45 p.m.  (Id. at 47).

- On June 12, 2020, when MTBOE still had not produced any materials, Plaintiffs filed a motion to bar evidence against MTBOE premised upon MTBOE's failure to abide by the Five Day Exchange Rule.  MTBOE did not produce any materials prior to the hearing on June 18, 2020.  (Id.)

- In an email, the OAL informed Plaintiffs that the ALJ would consider Plaintiffs' motion on June 18, 2020.  Plaintiffs informed the OAL that because June 18, 2020 was a hearing date as indicated in the Hearing Notice, their motion should be decided prior to June 18, 2020.  The ALJ's administrative assistant responded, "In accordance with my email dated June 11, 2020 . . . this case is scheduled for a settlement conference on June 18, 2020."  (Id. at 47-48).

- Plaintiffs replied, "Respondents demand that 6/18 be a hearing or we will have to seek relief from either the OAL, NJDOE and/or the federal court."  (Id. at 48).

- On June 12, 2020, in what Plaintiffs describe as retaliation for asserting their rights, the OAL reassigned the case to Defendant ALJ Ascione and set a prehearing conference for June 16, 2020.  (Id. at 49, 128).

- At the conference, ALJ Ascione asked, among other things, when the parties would be ready for a hearing, and

Plaintiffs responded, "Thursday, June 18."  ALJ Ascione

stated, "That is disingenuous based on the customs of the

OAL."  (Id. at 50).

- ALJ Ascione set a briefing schedule, and a hearing for

  July 9 and 10, 2020 via Zoom.  (Id. at 51).

- On July 1, 2020, ALJ Ascione issued a letter ruling on

  several matters, to which Plaintiffs responded the next day

  outlining ALJ Ascione's errors.  (Id. at 52-53).

- Between July 3 and July 8, 2020, Plaintiffs renewed several

  motions.  (Id. at 53).

- Without ruling on Plaintiffs' renewed motions, ALJ Ascione

  and the parties proceeded with the hearing on July 9, 2020.

  (Id. at 53).

- On July 16, 2020, ALJ Ascione issued his decision. (Id. at

  53).

Plaintiffs filed this case before this Court on July 28,

2020.  (Id.)  The complaint contains counts against MTBOE and

counts against some or all of the State Defendants.  The court

will recount the counts that name the State Defendants as those

are the ones relevant to this motion to dismiss.  They are:

Count I (systemic violation of the ten day peremptory hearing

date against the State Defendants ); Count II (systemic

violation of the Five Day Exchange Rule by the State

Defendants); Count III (systemic violation of the adjournment rule by the State Defendants); Count IV (systemic violation of the resolution meeting regulation by the NJDOE); Count V (systemic violation of the access to records procedural safeguard by the State Defendants); Count VI (systemic violation of discovery rules by the State Defendants); Count VII (systemic violation of the rules of evidence by the State Defendants); Count VIII (systemic violation of the New Jersey regulations in special education due process cases by the State Defendants); Count IX (systemic violation of the hearing officer qualifications by the State Defendants); Count X (legal error on the burden of proof in the due process case by the NJDOE and ALJ Ascione); Count XI (systemic violation of the independence of the adjudicating body of special education disputes by the State Defendants); Count XII (federal preemption against the State Defendants); Count XIII (violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., by the NJDOE, OAL, ALJ Bogan and ALJ Ascione); Count XIV (violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA") by the NJDOE, OAL, ALJ Bogan and ALJ Ascione); Count XV (systemic civil rights violations under 42 U.S.C.§ 1983 by the NJDOE, OAL, ALJ Bogan and ALJ Ascione); and Count XVI (legal error on the denial of IEE by ALJ Ascione).

Instead of attacking the complaint count by count, the State Defendants organize their motion to dismiss around certain legal theories and arguments.  Thus, the Court will address the motion to dismiss by proceeding through the State Defendants' arguments rather than going count by count.

**BACKGROUND**

I.   The IDEA

Though Plaintiffs state claims under laws other than the IDEA, the thrust of their complaint revolves around the defendant's failure to honor their responsibilities under the IDEA.  Therefore, the Court will provide some color on the IDEA as a statutory and regulatory scheme.  Congress enacted the IDEA to, among other things, ensure "the rights of children with disabilities and parents of such children are protected[.]"  20 U.S.C. § 1400(d)(1)(A)-(B).  The IDEA requires that every child with a disability receive a free appropriate public education (a "FAPE") from their public school if that school receives federal funding under the IDEA.  Id. at § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).  The term "free appropriate public education" means the provision of "special education and related services" that meet certain criteria.  20 U.S.C. § 1401(9).  The IDEA also guarantees parents of disabled children a right to participate in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed, Congress enacted various "procedural safeguards" that participating public schools must comply with.  Id. at § 1412(6)(A); id. at § 1415(a).  One such procedural safeguard provides standards for adjudicating disputes about whether a school has adequately provided a FAPE.  Per Congress' requirements, these disputes begin with the filing of a "due process petition" or "due process complaint."  Either the public school or the child may file a due process complaint, and that complaint may seek relief with respect to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. at § 1415(b)(6).

The IDEA contemplates that it is the State Educational Agency that is responsible for making sure that there are fair and impartial procedures in place to handle any due process petition.  Id. at §1415 (f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."); id. at §1415(e)(1) ("Any State

10

educational agency or local educational agency that receives assistance under this subchapter shall ensure that procedures are established and implemented to allow parties to disputes involving any matter.").

Once a due process complaint has been filed, Congress has set strict deadlines by which certain events must occur. See Id. at § 1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a due process hearing"); 34 C.F.R. § 300.515(a) (setting forth a strict timeframe for due process petition resolution); N.J.A.C. 6A:14-2.7(j) (same). These procedures are central to the instant matter.

Beginning with the date the due process complaint is filed, the parties have thirty days within which to settle or otherwise resolve the dispute to the satisfaction of the parent and child. See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b). This period is referred to as the "resolution period." If the case is not resolved during the resolution period, it may proceed to a hearing. Congress has called these "due process hearings."

In New Jersey, "[a] due process hearing is an administrative hearing conducted by an administrative law judge" in the OAL. N.J.A.C. 6A:14-2.7(a). "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines

11

for a due process hearing under this subchapter shall commence" 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); see N.J.A.C. 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge . . . after the conclusion of the resolution period").

Once the 30-day resolution period ends, federal regulations require that due process petitions be decided by hearing officers within 45 days, unless either party requests specific adjournments. 34 C.F.R. § 300.515(a) (states receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties."). New Jersey's Administrative Code contains a similar requirement. N.J.A.C. 6A:14-2.7(j) ("[a] final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period[.]")

Both federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party" which will effectively toll the 45-day period within which a decision must be entered. See N.J.A.C. 6A:14-2.7(j) (45-day period may only be extended if "specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a]

12

hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.").  No other delays are contemplated.  Therefore, if no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period. 34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j).  The Court refers to this requirement as the "45 Day Rule."  With that overview, the Court turns to Plaintiffs' allegations.

**DISCUSSION**

I.   <u>Subject Matter Jurisdiction</u>

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

II.   <u>Standard of Review</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to

13

dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do . . . ." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,
47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,
40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.
Allain, 478 U.S. 265, 286 (1986)).

        To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should
identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief. Malleus v.
George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

        A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

Rule 12(b)(1) governs the State Defendants' motion to the
extent it challenges Plaintiffs' action on standing and immunity
grounds.  "A challenge to subject matter jurisdiction under Rule
12(b)(1) may be either a facial or a factual attack."  Davis v.
Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former
challenges subject matter jurisdiction without disputing the
facts alleged in the complaint, and it requires the court to
'consider the allegations of the complaint as true.'"  Id.
(quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d
Cir. 2006)).  A factual challenge attacks the allegations
underlying the complaint's assertion of jurisdiction, "either
through the filing of an answer or 'otherwise present[ing]
competing facts.'"  Id. (quoting Constitution Party of Pa. v.
Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that
motions to dismiss for lack of standing are best understood as
facial attacks.  In re Schering Plough Corp. Intron/Temodar
Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)
("Defendants' Rule 12(b)(1) motions are properly understood as
facial attacks because they contend that the [a]mended
[c]omplaints lack sufficient factual allegations to establish
standing.").  In assessing a facial attack on subject matter
jurisdiction under Rule 12(b)(1), courts must apply the familiar
12(b)(6) standard.  Id. ("In evaluating whether a complaint

16

adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim"); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). Guided by In re Schering Plough and Baldwin, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments.

I.  Analysis

   a. Failure to Show Violation of the IDEA or New Jersey Regulations by the State Defendants.

The State Defendants move to dismiss the claims that revolve around their alleged violation of the IDEA on the grounds that Plaintiffs have failed to state claims.  The State Defendants argue that they have sufficient procedures in place to comply with the IDEA and Plaintiffs' complaint is really just venting their discontent with the ALJ's decision.  With respect to Counts I-VIII, they argue that Plaintiffs have only stated conclusory claims of violation of the IDEA and New Jersey Regulations.  In combatting Plaintiffs' claims, they argue that there is no rule that a due process hearing must be conducted within ten days of a case's transmittal from the NJDOE to the OAL and that settlement is encouraged under the IDEA.

It may be true that settlement may be encouraged under the
IDEA, but in so suggesting the State Defendants skirt the fact
that the New Jersey Regulations do provide that the first
hearing should be approximately ten days after transmittal.
N.J.A.C. § 1:6A-9.1(a) ("Upon unsuccessful conclusion of the
resolution process or mediation, as provided in N.J.A.C. 6A:14-
2.7, the representative of the Office of Special Education
Programs shall immediately contact the Clerk of the Office of
Administrative Law and the Clerk shall assign a peremptory
hearing date. The hearing date shall, to the greatest extent
possible, be convenient to all parties but shall be
approximately 10 days from the date of the scheduling call.").
Plaintiffs allege that they did not receive a hearing anywhere
close to ten days after the transmittal of their case to the OAL
— instead they received a settlement conference.  That is more
than enough to state a plausible claim at this juncture.

Similarly, the State Defendant's attack on Count III
alleging a violation of the adjournment rule completely misses
the fact that the IDEA only allows adjournments at the request
or consent of the parties and Plaintiffs allege that there was
no request for an adjournment so long as to account for the
delay in having their hearing or receiving a final decision.  34
C.F.R. § 300.515(a); (ECF 1 at 45, 65-67).

In the same vein, Plaintiffs have adequately pled in Count

II that the procedures provided by the State Defendants did not adequately protect their discovery rights by not requiring MTBOE to provide discovery at least five days before the hearing.  The State Defendants are right that there is no rule or regulation that specifically states that discovery must be exchanged five days before the hearing without exceptions.  But in so arguing they miss the forest for the trees and the plain letter of the applicable regulations.  The IDEA makes clear that discovery should be exchanged freely and without delay before a hearing and that such disclosure occur not closer that five days before the hearing date.  See 20 U.S.C. § 1415(f)(2)(A) ("Not less than 5 business days prior to a hearing conducted pursuant to paragraph (1), each party shall disclose to all other parties all evaluations completed by that date, and recommendations based on the offering party's evaluations, that the party intends to use at the hearing."); id. at § 1415(b)(1) (the procedures put in place by the state must provide "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child[.]"); 34 C.F.R. § 300.613 ("The agency must comply with a [discovery] request without unnecessary delay[.]")

New Jersey regulations mirror the federal regulations as they should.  See N.J.A.C. § 1:6A-10.1(c) ("Upon application of a party, the judge shall exclude any evidence at hearing that

has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time."). Plaintiffs specifically identity an occasion where MTBOE provided discovery less than five days before a scheduled hearing date, they asked for the discovery to be excluded, and the ALJ improperly did not do so. (ECF 1 at 51). More globally, the Court holds that Plaintiffs have adequately pleaded that the State Defendants did not enforce the rules on access to records (Count V).

The State Defendants generally quibble that with the access to records allegations on the grounds that MTBOE produced documents well before the July 9, 2020 hearing. (ECF 23 at 16). But the State Defendants are moving the reference mark. Plaintiffs plead that they did not receive discovery until after the June 18, 2020 hearing date. It appears that the State Defendants are trying to argue that because they did not actually hold a hearing on June 18, 2020, Plaintiffs were not denied access to records. Ironically, the State Defendants are using their allegedly illegal practice of holding a settlement conference instead of a hearing on the first hearing date as justification for failing to produce discovery as required by law. This seems perverse. The IDEA and its regulations make clear that access to records is paramount before a hearing. 34

C.F.R. § 300.613(a) ("The agency must comply with a request without unnecessary delay and before any meeting regarding an IEP, or any hearing[.]"  Plaintiffs allegations that they were not given records in a reasonable amount of time, particularly because of the violation of the Five Day Exchange Rule passes muster.  See 20 U.S.C. § 1415(f)(2)(A).

In addition, Plaintiffs have adequately pled that the State Defendants failed to ensure the independence of the OAL (Count XI) and that ALJs were adequately trained (Count IX).  The IDEA requires both that the due process hearing be conducted by an impartial hearing officer and that the state receiving federal funds under the IDEA put in place procedures to make sure that a fair hearing is conducted.  20 U.S.C. § 1415(f)(3); 34 C.F.R. § 300.511; and N.J.A.C. § 6A:14-2.7(k).

Plaintiffs have alleged that the OAL is so emmeshed in the NJDOE that they have not been able to get a fair and impartial hearing.  Beyond just citing the fact that ALJs receive their salaries from the state, Plaintiffs point to the past experiences of the ALJs as advocates for educators and not parents, and the fact that the source of the NJDOE and OAL's budget creates a conflict of interest.  (ECF 1 at 116-117).  At this point, the Court is satisfied that Plaintiffs are entitled to discovery on that claim.

They also have alleged that the training of the ALJs

assigned to due process hearings is so lacking that it violates
the requirement that the hearings be conducted by an ALJ with
requisite skill and knowledge so as to be capable of rendering a
timely decision.  See 34 C.F.R. § 300.515(a) (states receiving
federal funding "must ensure that not later than 45 days after
the expiration of the 30 day period under § 300.510(b) . . . (1)
A final decision is reached in the hearing; and (2) A copy of
the decision is mailed to each of the parties."); (ECF 1 at 33-
34).

The NJDOE has the overarching responsibility to ensure that
the procedures for due process hearings run smoothly without
actually adjudicating disputes itself.  The IDEA is organized
such that the ALJs who conduct the due process hearings may not
be NJDOE employees.  20 U.S.C. §1415(f)(3)(A)(i).  But that very
same statute makes clear that it is the NJDOE who is responsible
for the infrastructure that creates such impartial due process
hearings.  Id. at §1415(f)(1)(A) ("Whenever a complaint has been
received under subsection (b)(6) or (k), the parents or the
local educational agency involved in such complaint shall have
an opportunity for an impartial due process hearing, which shall
be conducted by the State educational agency or by the local
educational agency, as determined by State law or by the State
educational agency.")  Plaintiffs have outlined the training
deficiencies of the ALJs and the ways that the OAL and the NJDOE

22

are intertwined with sufficient factual detail to survive a motion to dismiss. (ECF 1 at 33-34 ("Upon information and belief, ALJs do not receive and NJDOE or the OAL provides adequate training or instruction on IDEA or its regulations or the New Jersey regulations, specifically the rigors of the 10 Day Peremptory Hearing Date, the Five-Day Exchange Rule, and the 45 Day Rule, and therefore do not meet IDEA's requirements for hearing officers."); id. at 116-17 ("Since the budget and salaries of NJDOE and OAL employees are subparts of and determined by the larger budget of the executive branch, they are beholden to the same pot of money. This creates a personal and/or professional interest that conflicts with the ALJ's objectivity in special education due process hearings."))  The Court renders no opinion as to whether these allegations will ultimately be meritorious, only that they are sufficiently pled to survive a motion to dismiss.

The State Defendants also argue that Plaintiffs have not shown a systemic violation of the IDEA.[5]  The Court disagrees. First, the State Defendants seem to overstate the pleading standard, arguing that Plaintiffs must "demonstrate" the veracity their claims at this time.  (ECF 23 at 1-2).

---

[5] The State Defendants do not clearly tie this argument to any given count and seem to be making a more global point about the pleading of systemic violations.  (ECF 23 at 15).

Plaintiffs need only state a plausible claim.  Malleus, 641 F.3d at 563.  Second, to the extent that the State Defendants are suggesting that an individual plaintiff cannot prove a systemic violation, that argument misstates caselaw and fails to understand the scope of Plaintiffs' allegations.  Reinholdson v. Minnesota, 346 F.3d 847, 851 (8th Cir. 2003) ("[T]rials of those individual claims may expose issues of systemic violation[.]") The touchstone of a systemic violation is that it cannot be remedied by the administrative process because the issue is so pervasive.  Brach v. Newsom, 2020 WL 6036764, at *8 (C.D. Cal. Aug. 21, 2020) ("A plaintiff alleging a systemic violation is not entitled to an exception if "it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.").

Plaintiffs have alleged that the problems in how their due process matter was handled are rooted in widespread deficiencies in a system unable to remedy their concerns.  (See ECF 1 at 31) (discussing the OAL's widespread practice of holding settlement conferences instead of hearings upon receiving a case from the NJDOE).  Discovery on their individual matter certainly could bear out their concerns.[6]

---

[6] The State Defendants are correct that Count IV does not allege a violation of the IDEA in the sense that it does not cite

b. Whether Plaintiffs' IDEA Claims Against State Officials Must be Dismissed.

The State Defendants' argument that the counts alleging violation of the IDEA against state officials must be dismissed because the IDEA does not allow claims against individual officials has some support in case law.  See Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) (discussing the IDEA and stating, "The United States Court of Appeals for the Third Circuit has recognized that Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals.") (citing Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.2002)); R.S. v. Glen Rock Bd. of Educ., 2014 WL 7331954, at *5 (D.N.J. Dec. 19, 2014).

That said, this Court acknowledges that "in many circumstances it is appropriate for a plaintiff to assert IDEA and Rehabilitation Act claims against individuals in their 'official capacities' as school administrators, school district

---

directly to the federal statute or its implementing regulations. However, it does refer to the New Jersey regulations implementing the IDEA.  The Third Circuit has held that such claims are actionable.  Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 327 (3d Cir. 2002) ("[T]he Individuals with Disabilities Education Act ("IDEA"), formerly known as the Education of the Handicapped Act, explicitly incorporate[s] New Jersey educational standards.") (citing Geis v. Board of Educ. of Parsippany-Troy Hills, 774 F.2d 575 (3d Cir.1985)).

personnel, or school board members[.]"  New Jersey Prot. &
Advoc., Inc. v. New Jersey Dep't of Educ., 563 F. Supp. 2d 474,
492 (D.N.J. 2008).  To be sure, the court in New Jersey Prot. &
Advoc., Inc. did dismiss the claims against the individuals
named in their official capacities as duplicative of the claims
against the state.  Id.  It may indeed be the case that such
claims will turn out to be duplicative in this matter, but at
this early stage in litigation, the Court is not prepared to
dismiss the claims against the individual defendants on this
ground.  With the scope of the liability, if any, that may
actually fall to the NJDOE and the OAL unresolved at this point
in litigation, the Court will not dismiss the claims against the
individual defendants as duplicative.  P.V. ex rel. Valentin v.
Sch. Dist. of Philadelphia, 2011 WL 5127850, at *12 (E.D. Pa.
Oct. 31, 2011) ("While some courts have dismissed claims against
individual, official capacity defendants as redundant, they have
done so after satisfying themselves that the remaining entity
defendant(s) were willing to take responsibility for the
individual defendants' action.").

c. Whether the ALJs Are Entitled to Judicial Immunity.

The State Defendants argue that the ALJs sued in this
matter are protected by judicial immunity and the Court agrees.
Plaintiffs' principal argument against this is that the law does
not recognize judicial immunity for state ALJs.  (ECF 24 at 24-

26).   At least one panel of the Third Circuit has recognized
judicial immunity for a state official acting in the capacity of
an ALJ.  Savadjian v. Caride, 827 F. App'x 199, 202 (3d Cir.
2020).  In addition, judicial immunity as a doctrine has been
understood to broadly insulate judicial officers for their acts
taken in a judicial capacity.  See Kaul v. Christie, 372 F.
Supp. 3d 206, 246 (D.N.J. 2019) ("Absolute judicial immunity
applies to all claims, whether official-capacity or personal-
capacity, that are based on judicial acts," which includes
administrative law judges, and the immunity is only stripped for
"nonjudicial actions" and "actions, though judicial in nature,
taken in the complete absence of all jurisdiction.") (citing
Mireles v. Waco, 502 U.S. 9, 12 (1991); Dongon v. Banar, 363 F.
App'x 153, 155 (3d Cir. 2010); Raffinee v. Comm'r of Soc. Sec.,
367 F. App'x. 379, 381 (3d Cir. 2010) (citing Butz v. Economou,
438 U.S. 478, 514 (1978)).  Accordingly, the claims against the
ALJs will be dismissed with prejudice.  Thompson v. Cobham, 2012
WL 2374724, at *2 (D.N.J. 2012) (citing Gary v. Gardner, 445 F.
App'x 465, 467 (3d Cir. 2011) (affirming dismissal with
prejudice of action barred by judicial immunity)).

     d. Whether Plaintiffs' § 1983 Claims Must Be Dismissed.

The Court will dismiss the claims under § 1983 against the

NJDOE and the OAL with prejudice[7] because they are arms of the state, and the state as not waived its Eleventh Amendment immunity.  Docherty v. Cape May Cty., 2017 WL 3528979, at *4 (D.N.J. Aug. 15, 2017) ("Thus, the Court dismisses the § 1983 and NJCRA claims for damages against Lanigan in his official capacity, based on Eleventh Amendment immunity."); Rashid v. Lanigan, 2018 WL 3630130, at *10 (D.N.J. July 31, 2018) ("Plaintiffs' claims seeking declaratory relief as to, and monetary damages from, Defendants in their official capacities are dismissed with prejudice as barred by Eleventh Amendment immunity[.]")

---

[7] District courts "should freely give leave to amend when justice so requires." Schomburg v. Dow Jones & Co., 504 F. App'x 100, 103 (3d Cir. 2012) (citing Rule 15(a)(2)) (internal alterations omitted).  "Thus, leave to amend ordinarily should be denied only when amendment would be inequitable or futile." (Id.) "[T]hese principles apply equally to pro se plaintiffs and those represented by experienced counsel."  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011) (quoting Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010)).  Courts have held amendment to be inequitable where the plaintiff already had an opportunity to amend the complaint.  Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000) ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint."); McMahon v. Refresh Dental Mgmt., LLC, 2016 WL 7212584, at *11 (W.D. Pa. Dec. 13, 2016) ("The court need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed.") (internal alterations and quotation marks omitted).  Here the Eleventh Amendment serves as an absolute bar and amendment of the claims would be futile.

And courts in this district have made clear that the NJDOE
and the OAL are arms of the state for Eleventh Amendment
purposes.  Wright v. New Jersey/Dep't of Educ., 115 F. Supp. 3d
490, 494 (D.N.J. 2015) ("The Department of Education is
considered an arm of the state government for purposes of
determining sovereign immunity under the Eleventh Amendment.");
ASAH v. New Jersey Dep't of Educ., 2017 WL 2829648, at *7
(D.N.J. June 30, 2017) ("For the purposes of the Eleventh
Amendment, the DOE is an arm of the state government.");
Rodrigues v. Fort Lee Bd. of Educ., 458 F. App'x 124, 127 (3d
Cir. 2011) ("The Office of Administrative Law is a state agency.
. . and is thus immune from suit under the Eleventh
Amendment[.]").  Because Eleventh Amendment immunity bars
Plaintiffs' claims against the NJDOE and the OAL, the Court will
dismiss that claim against the NJDOE and the OAL without leave
to amend.

An exception to the Eleventh Amendment is a suit against an
official in their official capacity seeking prospective
injunctive relief.  Delaware River Joint Toll Bridge Comm'n v.
Sec'y Pennsylvania Dep't of Lab. & Indus., 985 F.3d 189, 193-94
(3d Cir. 2021), cert. denied sub nom. Berrier v. Delaware River
Joint Toll Bridge Comm'n, 142 S. Ct. 109 (2021) (determining
whether to grant the relief "requires us to 'conduct a
straightforward inquiry into whether the complaint alleges an

29

ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'") (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)). Notably, Count XV does not plead the Commissioner as a defendant.  The Court will dismiss Count XV without prejudice should Plaintiffs want to amend the complaint to name the Commissioner in their official capacity.

　　　e. Violation of § 504 and the ADA.

The NJDOE also moves to dismiss Count XIII, violation of § 504, and Count XIV, violation of the ADA.  They argue that dismissal of Counts XIII and XIV is appropriate because "Plaintiffs do not allege that State Defendants excluded J.A. from a service, program or activity because of J.A.'s disability." (ECF 23 at 36).  Plaintiffs counter that the State Defendants retaliated against them for seeking to enforce J.A.'s education rights by reassigning her case several times and not enforcing the timing required by law for the progression of her cases.  (ECF 24 at 29).

To state a claim of violation Title II of the ADA or § 504, "a plaintiff must show that he is a qualified individual with a disability; that he was excluded from a service, program, or activity of a public entity; and that he was excluded because of his disability."  Disability Rts. New Jersey, Inc. v. Comm'r, New Jersey Dep't of Hum. Servs., 796 F.3d 293, 301 (3d Cir.

2015); Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288
(3d Cir. 2019) (noting that the substantive standards for both
claims are the same).  The parties do not appear to dispute that
J.A. is a qualified individual with a disability.  Rather, the
crux of the dispute is whether Plaintiffs were deprived of
something they otherwise were entitled to as a result of J.A.'s
disability.

The complaint clearly outlines the NJDOE and OAL's
responsibilities to provide impartial due process hearings and
that, for example, Plaintiffs' motion to bar evidence was denied
in retaliation for their insistence that they have a hearing
approximately ten days after their case was sent to the OAL.
(ECF 1 at 128).  This, with the rest of the allegations in the
complaint, is sufficient to satisfy the Court that Plaintiffs
are entitled to proceed with their ADA and § 504 claims.

Indeed, the Supreme Court has noted that an action may lie
for violation of the ADA and § 504 where the facts arise out of
an alleged violation of the IDEA.  Fry v. Napoleon Cmty. Sch.,
137 S. Ct. 743, 750, 197 L. Ed. 2d 46 (2017) ("[T]he IDEA does
not prevent a plaintiff from asserting claims under such laws
even if. . . those claims allege the denial of an appropriate
public education (much as an IDEA claim would).").  Plaintiffs'
complaint alleges that the NJDOE's flawed procedures pervaded
the dispute resolution system to the extent that they

effectively barred J.A. from receiving the same educational
benefits as other children and retaliated against Plaintiffs for
trying to assert their rights.  (See ECF 1 at 128).

The State Defendants characterize the allegations of
violation of § 504 and the ADA as conclusory, focusing on
statements like the above-quoted allegations.  Plaintiffs
certainly could have pled their claims more artfully, neatly
tying together how the State Defendants' flawed procedures
constituted discrimination or some sort of disparate impact in
compact phraseology.  But this Court reads the allegations in
the complaint as a whole and the allegations read in that light
tell a story of due process procedures so deficient that
Plaintiffs were not able to place their child in the right
educational setting or seek relief without retaliation, a
benefit that non-disabled children were readily receiving.
Destro v. Hackensack Water Co., 2009 WL 3681903, at *2 (D.N.J.
Nov. 2, 2009) ("The Court must consider the Complaint in its
entirety and review the allegations as a whole and in
context.").  Thus, the Court will not dismiss the claims based
on § 504 and the ADA.

f. Whether Federal Preemption Applies.

Plaintiffs assert a count for "federal preemption",
contending that there "is a direct conflict between the scheme
under federal IDEA law for resolving special education disputes

32

and NJDOE's system under the New Jersey Administrative Code for
how New Jersey handles special education disputes
as discussed at length in preceding allegations of this
Complaint." (ECF 1 at 124.) The State Defendants argue that
Plaintiffs' contention that the briefing schedule for motions
and the refusal by State Defendants to enforce the 10 day
Peremptory Hearing regulation both directly conflict with the
IDEA fails because neither conflicts with the IDEA. The State
Defendants argue that the IDEA and New Jersey regulations do not
provide for guidelines regarding motion practice in due process
hearings, and the 10-day rule is not contained in the IDEA.
Thus, the State Defendants argue that the IDEA cannot preempt
state law on these issues.

The Court finds that any conflicts between the State's
procedures as they relate to the IDEA will be more appropriately
resolved after discovery regarding those procedures as a whole,
and a fuller record is provided upon which this Court may opine
on the viability of Plaintiffs' federal preemption count. See,
e.g., Virtual Studios v. Couristan, Inc., 2011 WL 1871106, at *3
(D.N.J. 2011) (denying the defendant's argument that the
plaintiff's state law claim was preempted by federal copyright
law because the court was required to perform a qualitative
analysis to make that determination, and finding that it would
be in a far better position to make such a qualitative

33

assessment once the record in the matter had been more fully developed, rather solely on the plaintiff's complaint).

> g. Whether Plaintiffs' Legal Error Claims Must be
>    Dismissed.

The State Defendants are correct that a pure claim based on legal error is more appropriately handled as an appeal than as a separate count.  The provision of the IDEA allowing appeal of the prior decision is clear that the scope of any appeal of the underlying action is cabined by the due process complaint.  20 U.S.C.A. § 1415(h)(2)(A) ("Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.").

Essentially, § 1415(h)(2)(A) makes clear that a party appealing the result of a due process proceeding must base that appeal on the underlying complaint filed in that proceeding.  To be clear, the Court does not hold here that Plaintiffs may not bring separate claims against the State Defendants for conduct related to the process of adjudicating due process hearings writ

large, only that the challenge to a particular administrative decision does not state a direct claim against the State Defendants only the adverse party in the original due process complaint, here, MTBOE.  Thus, the Court will dismiss Count X against the NJDOE.[8]

## CONCLUSION

For the reasons expressed in this Opinion, the State Defendants' motion to dismiss (ECF 23) will be granted in part and denied in part.

An appropriate Order will be entered.

Date: <u>March 30, 2022</u>               <u>  s/  Noel L. Hillman  </u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[8] Count XVI also is a legal error claim against ALJ Ascione and MTBOE.  Because the Court dismisses the claims against the ALJs on the grounds of judicial immunity, it need not reach the legal error claim against ALJ Ascione on that count.  Similarly, the court need not consider Count XVI as it relates to MTBOE because they have not joined in this motion practice.