## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **J.A., individually and on behalf of her minor child J.A.,** | **Case No. 20–09498–ESK–MJS** |
| **Plaintiff,** | **Case No. 21–06283–ESK–MJS** |
| v. | **(Consolidated)** |
| **MONROE TOWNSHIP BOARD OF EDUCATION,** *et al.*, | **OPINION** |
| **Defendants.** | |

**KIEL, U.S.D.J.**

   **THIS MATTER** is before the Court on the motions for partial summary judgment of plaintiffs Joanna A.,[1] individually and on behalf of her minor child J.A., against the New Jersey Department of Education, Kevin Dehmer as Interim Commissioner of Education, and the New Jersey Office of Administrative Law (State Defendants) (ECF No. 238) and Monroe Township Board of Education (the Board) (ECF No. 239); the Board's cross-motions for summary judgment and motion to seal (ECF Nos. 248, 250, 263); and State Defendants' cross-motion for partial summary judgment (ECF No. 252). For the following reasons, plaintiffs' motion for summary judgment against State Defendants and defendants' cross-motions for summary judgment against plaintiffs will be GRANTED IN PART AND DENIED IN PART. Plaintiffs' motion for summary judgment against the Board and the Board's motion to dismiss will both be DENIED.

---

[1] Joanna A. is referred to by her first name for clarity and consistent with the complaint filed at Docket No. 21–06283.

## I.     FACTS AND PROCEDURAL HISTORY

J.A. is a student who has been classified with autism and deemed eligible for special education and related services.  (ECF No. 248–1 p. 3.)  Joanna A. is J.A.'s mother.  (ECF No. 256–1 p. 2.)  On May 24, 2017, Joanna A. filed a *pro se* request for a due process hearing (DP 1) with the New Jersey Department of Education's Office of Special Education Programs.  (ECF No. 238–4 pp. 62–65.)  Mediation was held on June 19, 2017.  (*Id.* pp. 72–74.) Mediation did not resolve the matter and DP 1 was transferred to the Office of Administrative Law for a hearing scheduled before Administrative Law Judge (ALJ) Lisa James-Beavers for July 6, 2017.  (*Id.* p. 75.)  Plaintiffs later requested adjournment of the hearing to a date after July 24, 2017.  (*Id.* pp. 80–82.)[2]  A prehearing conference was ultimately held before ALJ Jeffrey R. Wilson on September 27, 2017 and a hearing was thereafter scheduled for January 8, 2018.  (*Id.* pp. 83–87.)

Plaintiffs' present counsel entered an appearance on November 17, 2017 and filed a motion to amend plaintiffs' hearing request and for a stay-put and sanctions.  (ECF No. 238–6 pp. 94–108.)  The motion to amend specified that

---

[2] Plaintiffs' statements of material facts cite to certifications of counsel and exhibits.  (ECF Nos. 238–2 (Pls.' Statement Material Facts—State Defs.), 238–3 (Pls.' Cert.—State Defs.), 239–2, 239–3 (Pls.' Cert.—Board.)  Counsel's certifications, in turn, either describe exhibits or assert facts without otherwise citing to the record. (Pls.' Cert.—State Defs, Pls.' Cert.—Board.)  This practice of at times not supporting facts with citations to the record in counsel's certifications was noted in Judge Noel L. Hillman's (Ret.) original summary judgment opinion.  (ECF No. 214 (Aug. 24, 2023 Op.) p. 17.)  Here, plaintiffs allege that ALJ Beavers held a settlement conference on July 6, 2017 as evidenced by the lack of transcript (Pls.' Statement Material Facts— State Defs. p. 8), which is contradicted by their own exhibit (ECF No. 238–4 pp. 80– 82).  Plaintiffs' June 21, 2017 adjournment request predated present counsel's entry of appearance.  The Court is unable to determine whether this apparent error was the product of a small oversight or counsel's practice of combining his certification with descriptions of exhibits.  For future motion practice, all parties are directed to cite only to specific exhibits—with pin citations—to support their statements of material facts and related briefing.  Certifications necessary to support material facts may be cited separately when necessary.  Certifications shall further be limited to matters within the personal knowledge of the signatory.  *See* L. Civ. R. 7.2(a).

plaintiffs were not seeking an adjournment and were willing to move forward with the schedule set out by ALJ Wilson.   (*Id.* p. 97.)   On December 6, 2017, the Board provided plaintiffs with "a complete copy of the student file."   (ECF No. 239–4 p. 9.)

ALJ Wilson scheduled a status conference for March 12, 2018 on January 2, 2018.   (ECF 238–7 p. 5.)   Plaintiffs then moved for the Board to fund an independent educational evaluation wherein they sought to "adjourn the hearing and decision in this matter for a period of time sufficient to complete the [independent educational evaluation] and determine if this matter can be resolved as a result thereof."   (*Id.* pp. 8, 9.)   The hearing for DP 1 was subsequently scheduled for March 27, 2018 and, later, June 11, 2018.   (*Id.* pp. 11, 15.)   ALJ Wilson denied plaintiffs' motions for an independent educational evaluation, to amend, and for sanctions, but granted their motion for a stay-put.   (*Id.* pp. 26–33.)

On June 11, 2018, ALJ Wilson emailed the parties to inform them that the call scheduled for that day had been adjourned.   (*Id.* p. 36.)   Two days later, ALJ Wilson notified the parties that he was recusing himself from the case due to the federal lawsuit filed against him.   (*Id.* p. 38.)[3]   DP 1 was then reassigned to ALJ John S. Kennedy, who scheduled four hearings to be held in October 2018.   (*Id.* pp. 40–44.)

As DP 1 was pending, plaintiffs filed a separate request for a due process hearing (DP 2) on May 22, 2018.   (ECF No. 238–5 pp. 2–4.)   The parties requested an adjournment until August 2, 2018 to engage in mediation.   (*Id.* pp. 6, 7.)   DP 2 was transmitted to the Office of Administrative Law on August 9, 2018 and a hearing before ALJ Ellen S. Bass was scheduled for August 16, 2018.   (*Id.* pp. 10, 11.)   On August 13, 2018, the Board moved to

---

[3] ALJ Wilson was named as a defendant in plaintiffs' class action complaint filed at Docket No. 18–09580.   (Docket No. 18–09580, ECF No. 1.)

have DP 1 and DP 2 consolidated. (*Id.* pp.15–18.) ALJ Kennedy granted the motion to consolidate the following day. (*Id.* pp.26, 27.)

Plaintiffs served their Five-Day Exchange binder on the Board on September 24, 2018, in advance of the October 1, 2018 hearing scheduled for DP 1 and DP 2 (Consolidated Cases). (ECF No. 238–7 p.59.) The Board provided its Five-Day Exchange materials the following day. (ECF No. 238–6 pp.17, 65–67.) Plaintiffs, on September 24, 2018, moved to preclude the Board from presenting evidence at the October 1, 2018 hearing for failure to exchange evidence at least five business days before the hearing as required by federal and state law. (ECF No. 238–7 pp.61–65.) ALJ Kennedy denied the motion to preclude to the extent that materials were previously provided in discovery and granted plaintiffs a stay to file an interlocutory appeal to this Court. (*Id.* p.93.)

While the Consolidated Cases were pending, the Board filed a due process complaint (DP 3) on March 5, 2020. (ECF No. 238–5 pp.29–36.) The parties agreed to extend the pre-hearing resolution period for 60 days due to the COVID-19 pandemic, and a resolution session was scheduled for May 19, 2020. (*Id.* p.39.) DP 3 was then transmitted to the Office of Administrative Law and set for a June 4, 2020 hearing. (*Id.* pp.40, 41.) On June 2, 2020, plaintiffs wrote to the Board requesting access to J.A.'s student records no later than June 8, 2020. (ECF No. 239–4 pp.20–22.) Counsel for the Board responded on June 9, 2020 stating that plaintiffs' deadline was "unreasonable and unsupported by the law." (*Id.* pp.24, 25.) Plaintiffs requested an adjournment to June 11, 2020 or June 18, 2020 and the hearing was rescheduled for June 18, 2020. (ECF No. 238–5 pp.42–45.)

Plaintiffs provided their Five-Day Exchange materials to the Board on June 11, 2020. (ECF No. 238–8 pp.2–7.) On June 12, 2020, the office of ALJ Mary Ann Bogan advised the parties that a settlement conference was to

be held on June 18, 2020. (ECF No. 238–5 p. 48.) Plaintiffs objected to the holding of a settlement conference rather a hearing or any measure that would have changed the June 18, 2020 hearing date or excused the alleged failure of the Board to comply with the Five-Day Exchange. (*Id.* pp. 46, 47.) That same day, plaintiffs moved to bar the Board from presenting evidence for failure to comply with the Five-Day Exchange. (ECF No. 238–8 pp. 12–21.)

DP 3 was reassigned to ALJ Joseph Ascione, who held a prehearing conference on June 16, 2020. (ECF No. 238–5 p. 50.) ALJ Ascione scheduled hearings for July 9 and July 10, 2020 and ordered that evidence and witness lists be exchanged, and legal briefing be completed, by July 2, 2020. (*Id.* pp. 52–58.) In a July 16, 2020 final decision, ALJ Ascione found in favor of the Board. (ECF No. 238–9 pp. 97–112.) Plaintiffs, in turn, filed a 20-count complaint[4] under Docket No. 20–09498. (ECF No. 1.)

Meanwhile, Judge Hillman dismissed plaintiffs' interlocutory appeal without prejudice on July 22, 2020. (Docket No. 18–14838, ECF No. 21.) The Consolidated Cases were assigned to ALJ Catherine A. Tuohy on remand. (ECF No. 238–7 pp. 48–50.) Plaintiffs wrote to ALJ Tuohy objecting both to the proposed hearing dates—spread across September, October, November, and December 2020 and allegedly to accommodate the Board's counsel's schedule—and the Board's introduction of any evidence, particularly witnesses. (*Id.* pp. 52–57.) ALJ Tuohy concluded that ALJ Kennedy's evidentiary ruling remained in effect and was the law of the case. (*Id.* pp. 109, 110.) Hearings were held on September 21, 2020; October 2, 2020; October 23, 2020; November 16, 2020; November 20, 2020; and December 4, 2020. (ECF No. 238–8 pp. 29–37.) During the December 4, 2020 hearing, ALJ Tuohy provided the parties until December 11, 2020 to submit written

---

[4] The causes of action in the complaint only reach Count 19, however, Count 18 is repeated. (ECF No. 1 pp. 147–55.)

closing statements, to which plaintiffs objected on the basis that the briefing would cause further delay.   (*Id.* pp. 36–37, ECF No. 238–9 p. 4.)

ALJ Tuohy issued a final decision on February 22, 2021, dismissing the petitions of the Consolidated Cases.   (ECF No. 238–9 pp. 2–95.)   Plaintiffs followed ALJ Tuohy's decision with a 22-count complaint filed under Docket No. 21–06283.   (Docket No. 21–06283, ECF No. 1.)

Judge Hillman held in a pair of decisions that individual administrative law judges were entitled to judicial immunity and dismissed plaintiffs' claims against them with prejudice.   *Joanna A. v. Monroe Twp. Bd. of Educ.*, Case No. 21–06283, 2022 WL 970212, at *8 (D.N.J. Mar. 31, 2022); *J.A. v. Monroe Twp. Board of Educ.*, Case No. 20–09498, 2022 WL 970194, at *10 (D.N.J. Mar. 31, 2022).   The cases were consolidated and Magistrate Judge Matthew J. Skahill entered an order amending the case caption and directing that future filings be made with a consolidated caption under Docket No. 20–09498.   (ECF No. 110.)

The parties engaged in summary judgment motion practice.   In an August 22, 2023 opinion and order, Judge Hillman denied the Board's motions without prejudice for failure to comply with the Local Civil Rules.   (ECF No. 213.)   Judge Hillman also denied plaintiffs' motions for summary judgment against the Board and State Defendants and the Board's motion for partial summary judgment and motions to seal.   (Aug. 24, 2023 Op., ECF No. 215 (Aug. 24, 2023 Order).)   Relevant to the instant motions, Judge Hillman provided State Defendants with an opportunity to obtain the discovery necessary to defend against a renewed motion by plaintiffs upon their representation that they were unable to present facts necessary to their opposition.   (Aug. 24, 2023 Op. pp. 11–18, Aug. 24, 2023 Order p. 2.)   The pending motion practice followed, after which this case was reassigned to me. (ECF No. 259.)

## II.    LEGAL STANDARDS

### A.    Motions for Summary Judgment

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the suit under the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).    Facts and evidence are to be viewed in the light most favorable to the nonmovant.    *Id.*

This standard is applied along with a modified *de novo* review for motions for summary judgment in Individuals with Disabilities Education Act (IDEA) cases.    *See Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064–65 (D.N.J. 2011); *see also Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 529 (3d Cir. 2009) ("Because a case brought pursuant to the IDEA is an original civil action rather than an appeal, it is governed by the Federal Rules of Civil Procedure.").    Under modified *de novo* review, the factual findings reached at the administrative proceedings below are considered *prima facie* correct and legal determinations are reviewed *de novo*. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

"[A] district court is authorized to make findings based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education." *Id.*  "The party challenging an administrative decision bears the burden of persuasion and 'faces the additional hurdle of overcoming a presumption that the Hearing Officer's findings were correct.'"

*M.G. v. N. Hunterdon-Voorhees Reg'l High Sch. Dist. Bd. of Educ.*, 778 F. App'x 107, 110 (3d Cir. 2019) (quoting *Andrew M. v. Del. Cnty. Off. of Mental Health & Retardation*, 490 F.3d 337, 345 (3d Cir. 2007)).

## B.    The IDEA

Plaintiffs' motions do not directly challenge the substance of ALJ Ascione and ALJ Tuohy's final decisions. Rather, plaintiffs seek to attack the decisions by alleging procedural violations. Specifically, plaintiffs seek summary judgment against State Defendants for alleged violations of the 10-Day Rule (Count 1 of the 20–09498 complaint and Count 3 of the 21–06283 complaint), Five-Day Exchange (Count 2 of the 20–09498 complaint and Count 4 of the 21–06283 complaint), Adjournment Rule (Count 3 of the 20–09498 complaint and Count 5 of the 21–06283 complaint), 30-Day Resolution Rule (Count 4 of the 20–09498 complaint and Count 6 of the 21–06283 complaint), and 45-Day Rule (Count 12 of the 21–06283 complaint). (ECF No. 238 p.2.) Their motion as to the Board seeks summary judgment for alleged violations of the 10-Day Rule (Count 1 of the 20–09498 complaint), Five-Day Exchange (Count 2 of the 20–09498 complaint and Count 4 of the 21–06283 complaint), examination of records (Count 5 of the 20–09498 complaint and Count 7 of the 21–06283 complaint), and 30-Day Resolution Rule (Count 6 of the 21–06283 complaint). (ECF No. 239 pp.1, 2.) I will review these various procedural rules and safeguards before applying them to the underlying administrative proceedings of this case.

### 1.    Examination of Records

Among the procedures guaranteed by the IDEA is the "opportunity for the parents of a child with a disability to examine all records relating to such child …." 20 U.S.C. §1415(b)(1). Agencies must comply with a parent's request to inspect any educational record pertaining to their child "without unnecessary delay." 34 C.F.R. §300.613(a). Requests must be complied

with in advance of a due process hearing or resolution session and under no circumstance more than 45 days after the request is made. *Id.*

## 2. 30-Day Resolution Rule

The IDEA also requires procedures for a party to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child . . . ." 20 U.S.C. § 1415(b)(6). These complaints trigger a host of other rules and deadlines implicated in the instant motions. First among them is the 30-Day Resolution Rule. A local educational agency, in this case the Board, has 30 days following receipt to resolve the complaint "to the satisfaction of the parents." 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b)(1). This period may be waived by the parties. 20 U.S.C. § 1415(f)(1)(B)(i); *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 n.12 (3d Cir. 2010). If the complaint is not resolved to the parents' satisfaction within 30 days, "the due process hearing may occur, and all of the applicable timelines for a due process hearing … shall commence." 20 U.S.C. § 1415(f)(1)(B)(ii). In New Jersey, cases are transferred to the Office of Administrative Law for a due process hearing. N.J. Admin. Code § 6A:14–2.7(h)(4).

## 3. New Jersey 10-Day Rule

Also following an unsuccessful resolution period, the representative of the Office of Special Education Programs is required to contact the Clerk of the Office of Administrative Law. N.J. Admin. Code § 1:6A–9.1(a). The Clerk of the Office of Administrative Law must assign a peremptory hearing date convenient to the parties and within approximately 10 days of the scheduling call. *Id.*

### 4. Five-Day Exchange

"Not less than 5 business days prior to a hearing … each party shall disclose to all other parties all evaluations completed by that date, and recommendations based on the offering party's evaluations, that the party intends to use at the hearing."  20 U.S.C. §1415(f)(2)(A).  A party has the right to "[p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing." 34 C.F.R. §300.512(a)(3).   Failure to comply with the Five-Day Exchange may result in a hearing officer barring the presentation of relevant evaluations or recommendations unless consent is provided by the opposing party.  20 U.S.C. §1415(f)(2)(A); 34 C.F.R. §300.512(b)(2).   New Jersey regulations read stricter.   "Upon application of a party, the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time."   N.J. Admin. Code §1:6A–10.1(c); *see also New Milford Bd. of Educ. v. C.R.*, 431 F. App'x 157, 161 (3d Cir. 2011) ("Pursuant to the language of N.J.A.C. 1:6A–10.1(c), a judge may exercise discretion to permit the submission of evidence past the five-day deadline if he or she finds that the evidence could not reasonably have been disclosed within that time frame.").

### 5. 45-Day and Adjournment Rules

Finally, within 45 days of the expiration of the 30-Day Resolution Period, a final decision must be reached and a copy of that decision must be mailed to each party.   34 C.F.R. §300.515(a).   New Jersey regulations specify that the required timeframe is 45 *calendar* days.   N.J. Admin. Code §6A:14–2.7(j). Federal and state regulations provide for specific adjournments at the request of either party.   34 C.F.R. §300.515(c); N.J. Admin. Code §6A:14–2.7(j).

### 6.  <u>Available Relief</u>

The relief available to a plaintiff depends on the nature of the denial or violation.  *C.H.*, 606 F.3d at 66.  A plaintiff alleging the denial of a free appropriate public education may seek compensatory relief such as compensatory education or tuition reimbursement for private placement.  *Id.*  Failure to comply with a procedural requirement absent a denial of a free appropriate public education may result only in injunctive relief for prospective compliance.  *Id.*  "A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits."  *D.S.*, 602 F.3d at 565.

### III.  ANALYSIS

### A.  <u>Non-Procedural Counts</u>

Though plaintiffs' motions for partial summary judgment focus on alleged procedural violations preceding ALJ Ascione and ALJ Tuohy's final decisions, State Defendants and the Board seek summary judgment for counts beyond those for which plaintiffs have moved.   State Defendants additionally seek summary judgment for Counts 9 and 11 of the 20–09498 complaint, which challenge the qualification of administrative law judges and the independence of the Office of Administrative Law.  (ECF No. 252–1 (State Defs.' Mot. Br.) pp. 24–27.)   They also seek summary judgment on Counts 6, 7, and 8 of the 20–09498 complaint relating to various discovery and evidentiary rules.  (*Id.* pp. 27–30.)   The Board seeks summary judgment as to all counts in both complaints.  (ECF No. 248–2 (Board's Mot. Br. 20–09498) p. 6, ECF No. 250–2 (Board's Mot. Br. 21–06283) p. 6.)[5]

---

[5] The Board filed two separate cross-motions, one related to the 20–09498 complaint and the other for the 21–06283 complaint.  (ECF Nos. 248, 250.) Plaintiffs objected, claiming that the two corresponding briefs violated the Local Civil

Entry of summary judgment on additional counts for State Defendants would be inconsistent with Judge Hillman's denial of summary judgment against State Defendants and order for limited discovery. State Defendants previously represented that summary judgment against them was premature and that they needed an opportunity to depose and serve interrogatories on plaintiffs, Board employees, and counsel. (Aug. 24, 2023 Op. pp. 12, 13.) Judge Hillman provided State Defendants with an opportunity to detail the discovery and time necessary to prepare for a renewed motion by plaintiffs. (*Id.* p. 18.) Judge Hillman further clarified by text order that it was his "understanding and expectation that any renewed motion by [p]laintiffs w[ould] seek summary judgment as to the same counts and assert substantially the same legal arguments as the original motion." (ECF No. 218.) Counts 6, 7, 8, 9, and 11 of the 20–09498 complaint were not counts for which plaintiffs sought summary judgment in their initial motion (ECF No. 196 p. 2) and therefore were not counts for which discovery was to be collected.

---

Rules and plaintiffs nonetheless moved on counts for both complaints in one compliant brief. (ECF Nos. 253, 255.) The Board responded that Judge Hillman permitted it to refile "*motions* with *briefs*," which is what it did. (ECF No. 254.) The letters were not ruled on prior to this case being reassigned to me. It seems after examining the docket that the confusion stems, at least in part, from the Board initiating summary judgment in 2023 (ECF Nos. 129, 171), leading Judge Hillman to refer to motions and briefs plural. This time, plaintiffs initiated summary judgment. (ECF No. 239.) The Board's two cross-motions in response violate the Local Civil Rules, which permit "[a] cross-motion related to the subject matter of the original motion." *See* L. Civ. R. 7.1(h). That single motion is to be accompanied by a brief of no more than 40 pages. *Id.* I decline to deny the Board's motions on this basis. My review of the motion briefs show that the arguments therein are largely repetitive and include grounds for dismissal that will summarily be rejected. Plaintiffs have further responded to the Board in a consolidated reply brief (ECF No. 258 (Pls.' Reply Br.—Board)) well short of page limit of Local Civil Rule 7.1(h), indicating that they had adequate opportunity to rebut the Board's arguments. I will therefore consider the parties' arguments on the merits. *See Cluver v. Borough of Sayreville*, Case No. 10–03173, 2013 WL 394030, at *6 n.4 (D.N.J. Jan. 30, 2013) (accepting an overlength opposition violative of Local Civil Rule 7.2(b) despite not previously providing permission to file an overlength brief).

Further, plaintiffs represent that they are unable to respond to defendants' requests for summary judgment on these additional counts because relevant discovery has not yet been taken, citing Federal Rule of Civil Procedure (Rule) 56(d). (ECF No. 256 (Pls.' Reply Br.—State Defs.) pp.32–35, Pls.' Reply Br.—Board pp.25, 26.)[6] If a nonmovant shows by affidavit or declaration that they cannot present facts necessary for their opposition, a court may defer consideration or deny the motion; allow time to obtain affidavits, declarations, or discovery; or enter any other appropriate order. Fed. R. Civ. P. 56(d). Despite the aforementioned distinct summary judgment standard in IDEA cases, courts within this District have applied Rule 56(d) in IDEA cases in which a party asserted that necessary discovery had not yet taken place. *See M.D. v. Vineland City Bd. of Educ.*, Case No. 19–12154, 2024 WL 195371, at *7–8 (D.N.J. Jan. 17, 2024); *G.W. v. Ringwood Bd. of Educ.,* Case No. 19–13734, 2022 WL 17850251, at *6 (D.N.J. Dec. 21, 2022).

Here, plaintiffs' counsel represents in his Rule 56(d) declaration to State Defendants' cross-motion that it was contemplated that any renewed motion or cross-motion would pertain to the same counts as the original motion. (ECF No. 256–3 p.2.) Discovery on the additional counts raised by State Defendants has not yet been taken and is necessary in order to respond to the cross-motion. (*Id.* pp.2, 3.) Similarly, plaintiffs' counsel responds that, while most paper discovery for the additional counts raised in the Board's cross-motions has been completed, depositions have not yet been taken and are necessary for plaintiffs' response. (ECF No. 258–3 pp.2, 3.)

---

[6] Plaintiffs' reply brief refers to State Defendants' pursuit of summary judgment for additional counts from the 21–06283 complaint. (Pls.' Reply Br.—State Defs. p.33.) The relevant pages of State Defendants' moving brief appear focused on the claims in the 20–09498 complaint. (State Defs.' Mot. Br. pp.24–30.) Any confusion is ultimately nondeterminative because summary judgment will be denied on these additional counts pursuant to Rule 56(d).

Because discovery has not been completed, I will deny the defendants' motions to the extent that they seek summary judgment for counts not asserted in plaintiffs' motions.  *See* Fed. R. Civ. P. 56(d).  The parties may coordinate with Judge Skahill on completing discovery in advance of trial.

## B.    <u>Examination of Records</u>

Plaintiffs claim that the Board impeded their right to timely access records in both the Consolidated Cases and DP 3—interfering with their ability to prepare for due process hearings and Five-Day Exchanges in the process. (ECF No. 239–1 (Pls.' Mot. Br.—Board pp.18, 19.) For the Consolidated Cases, plaintiffs assert that the Board produced over 6,000 pages of documents in December 2017, many of them irrelevant and not the documents for which plaintiffs asked.  (*Id.* p.17.)  Plaintiffs were unable review all of the documents produced prior to the scheduled January 8, 2018 hearing.  (*Id.*)   In DP 3, plaintiffs requested on June 2, 2020 for the Board to provide access to records no later than June 8, 2020, which the Board deemed unreasonable.  (*Id.* p.18.)   Plaintiffs assert that, because the Board filed the complaint in DP 3, it ought to have already been in possession of the relevant documents.  (*Id.*)

The Board responds, as to the Consolidated Cases, that plaintiffs' claim is really that they did not receive records with sufficient time before the hearing, not that they were denied records within the timeframe required by 34 C.F.R. §300.613.  (Board's Mot. Br. 21–06283 p.27.)[7]   In this respect,

---

[7] The Board, citing 34 C.F.R. §300.613. states that "the IDEA provides access rights to educational records before any due process hearing *within 45 days of a request*."  (Board's Mot. Br. 21–06283 p.27.)  This is an inaccurate paraphrasing of the regulation.  The regulation actually reads: "[t]he agency must comply with a request without unnecessary delay and before any meeting regarding an IEP, or any hearing pursuant to §300.507 or §§300.530 through 300.532, or resolution session pursuant to §300.510, and in no case more than 45 days after the request has been made."  34 C.F.R. §300.613(a).

plaintiffs conflate access to records with the Five-Day Exchange. (*Id.*) For DP 3, the Board claims that it provided 3,866 pages of records on June 30, 2020 and were not required by law to produce records on June 8, 2020. (Board's Mot. Br. 20–09498 p.24.)

At the outset, I acknowledge that at the motion-to-dismiss stage of this case, Judge Hillman rejected State Defendants' argument that plaintiffs' right to examine records was not infringed upon in DP 3 because a hearing was not held on June 18, 2020 and records were provided before the July 9, 2020 hearing. *J.A.*, 2022 WL 970194, at *7. Judge Hillman deemed it "perverse" that State Defendants would use the allegedly violative practice of Settlement Thursdays to justify the failure to provide records. *Id.* He concluded that "[t]he IDEA and its regulations make clear that access to records is paramount before a hearing. Plaintiffs allegations that they were not given records in a reasonable amount of time, particularly because of the violation of the Five Day Exchange Rule passes muster." *Id.* (citation omitted).

Now, at a different stage of litigation, the Court must determine what was required of the Board and whether an actionable violation has taken place. In so doing, I acknowledge that at least one court—focused on the "inspect" language of 34 C.F.R. §300.613(a)—has concluded that the IDEA merely requires that records be made available for review. *See A.J.O.* ex rel. *J.O. v. Cobb Cnty. Sch. Dist.*, Case No. 17–01302, 2017 WL 11720204, at *10 (N.D. Ga. Aug. 8, 2017) ("[W]hile Plaintiffs insist on receiving copies of the protocols, they have failed to argue why they could not simply inspect and review the protocols when they were made available to them."). An exception applies when the "failure to provide … copies would effectively prevent the parent from exercising the right to inspect and review the records." 34 C.F.R. §300.613(b)(2).

With respect to the Consolidated Cases, plaintiffs essentially argue that the Board provided a document dump that included irrelevant records and did not provide the documents plaintiffs requested. Plaintiffs' brief does not expound upon the deficiency of the Board's production, but a January 5, 2018 letter from plaintiffs' counsel indicates that many of the provided documents predated January 1, 2014. (ECF No. 239–4 p.11.) Though a time limitation had not previously been provided, plaintiffs' counsel requested in the letter that documents predating January 1, 2014 not be produced. (*Id.*) The letter further requested audio and video recordings of J.A.; letters and emails; progress reports, grades, and report cards; and additional records or certification that such records did not exist or explanation for not providing them. (*Id.* pp.11–17.) The record does not indicate whether these additional records existed or were provided.

Plaintiffs further argue that they were unable to review the provided records until just prior to the scheduled-but-not-held January 8, 2018 hearing. Plaintiffs do not otherwise indicate how they were prejudiced. This is important because even assuming a procedural violation, such violation is not actionable unless it has led to a deprivation of rights. *See R.K. v. Clifton Bd. of Educ.*, 587 F. App'x 17, 20–21 (3d Cir. 2014). In *R.K.*, the plaintiffs asserted that their right to examine records was violated by the defendant's refusal to provide a copy of a report. *Id.* The Third Circuit concluded that the report did not pertain to the student and, even if the plaintiffs' procedural rights were violated, such violation was not actionable because the plaintiffs were able to participate and provide input during several meetings. *Id.* at 21. Courts throughout the country have likewise denied relief when the procedural violation did not result in prejudice or a denial of a free appropriate public education. *See Matthews v. Douglas Cnty. Sch. Dist. RE 1*, Case No. 16–00717, 2018 WL 4790715, at *9 (D. Colo. Oct. 4, 2018); *Denny*

*v. Bertha–Hewit Pub. Schs.*, Case No. 16–01954, 2017 WL 4355968, at *26 (D. Minn. Sept. 29, 2017); *L.M.H. v. Ariz. Dep't of Educ.*, Case No. 14–02212, 2016 WL 3910940, at *6 (D. Ariz. July 19, 2016).

Similarly, with respect to DP 3, plaintiffs claim that the Board's failure to provide records by June 8, 2020 as requested interfered with their ability to prepare for the due process hearing and assemble their Five-Day Exchange materials.   However, plaintiffs provide no support for the argument that the Board was required to comply with their specific deadline or that they were prejudiced beyond their conclusory statement.

I will not enter summary judgment for plaintiffs or the Board for Count 5 of the 20–09498 complaint or Count 7 of the 21–06283 complaint.   The record is unclear as to whether the Board met its obligations, particularly with respect to the additional records sought in plaintiffs' January 5, 2018 letter. At the same time, plaintiffs have not established that the Board's document dump in the Consolidated Cases or refusal to meet their imposed deadline in DP 3 represented violations.   Further, even if the Board violated plaintiffs' right to examine records, plaintiffs have offered little more than conclusory statements concerning prejudice.

## C.    30-Day Resolution Rule

Plaintiffs submit that there are three possible courses of action during the 30-Day Resolution Period: a private resolution session, mediation, or waiver in favor of proceeding to a due-process hearing.   (ECF No. 238–1 (Pls.' Mot. Br.—State Defs.) p.18, Pls.' Mot. Br.—Board p.11.)   Though the IDEA does not require that the parties settle their dispute, there exists an implied duty of good faith and fair dealing during the 30-Day Resolution Period. (Pls.' Mot. Br.—State Defs. pp.18, 19, Pls.' Mot. Br.—Board p.12.)   State Defendants' practice of holding "Settlement Thursdays" instead of hearings for the first appearance before the administrative law judge has created a

disincentive for school districts to act in good faith, according to plaintiffs. (Pls.' Mot. Br.—Board pp.12, 13.)   The Office of Administrative Law has further created a barrier to settlement by finding that it is unable to determine the prevailing party of a case for the purpose of awarding fees. (*Id.* p.13, Pls.' Mot. Br.—State Defs. pp.19, 20,.)   Here, none of the underlying due process complaints settled during the 30-Day Resolution Period and the Board's principal did not attend the mediation for DP 2.   (Pls.' Mot. Br.—State Defs. p.20, Pls.' Mot. Br.—Board p.13.)   Plaintiffs posit that failure to negotiate in good faith is a pattern of practice for the Board, citing its roughly 20-percent resolution rate in due process cases.   (Pls.' Mot. Br.— State Defs. p.20, Pls.' Mot. Br.—Board p.14.)

The Board responds that the 30-Day Resolution Rule was complied with and, without a cognizable claim, plaintiffs have opted to allege bad faith. (Board's Mot. Br. 20–09498 pp.15, 16, Board's Mot. Br. 21–06283 pp.18, 19.) The Board notes that mediation is voluntary and the parties may withdraw or decline to engage.   (Board's Mot. Br. 20–09498 p.16, Board's Mot. Br. 21– 06283 pp.19, 20.)   Plaintiffs fail to present facts sufficient to demonstrate bad faith, according to the Board, and instead cite the Board's general settlement rate.   (Board's Mot. Br. 20–09498 pp.16, 17, Board's Mot. Br. 21–06283 pp.20, 21.)   Such statistics lack context and are nevertheless comparable to state averages.   (Board's Mot. Br. 20–09498 p.17, Board's Mot. Br. 21–06283 pp.20, 21.)

State Defendants add that they are not responsible for the actions of local agencies during the 30-Day Resolution Period.   (State Defs.' Mot. Br. pp.23, 41, 42.)   Contrary to plaintiffs' claim that settlement conferences cause cases not to settle during mediation, between 14 and 32 percent of due process complaints do not reach the Office of Administrative Law, indicating settlement or voluntary dismissal.   (*Id.* p.43, ECF No. 252–4 pp.6, 7.)

As the parties acknowledge, an agreement during the 30-Day Resolution Period is not mandatory. Mediation is voluntary. *See* 20 U.S.C. §1415(e)(2)(A)(i); *T.L.* ex rel. *Latisha G. v. Pa. Leadership Charter Sch.*, 224 F. Supp. 3d 421, 426 (E.D. Pa. 2016). The regulations for the resolution process contemplate exceptions to the 30-day window for instances in which the parties agree to waive the resolution meeting or the parties agree in writing that an agreement is not possible following the mediation or resolution meeting. 34 C.F.R. §300.510(c)(1)–(2). In both instances, the 45-Day Rule takes effect the following day. 34 C.F.R. §300.510(c). Further, if a local agency fails to hold or participate in a resolution meeting, the parent may seek the intervention of a hearing officer to begin the 45-Day timeline. 34 C.F.R. §300.510(b)(5).

Plaintiffs' claims specific to the underlying due process complaints are that none of the cases settled during the 30-Day Resolution Period and the Board's principal did not attend the resolution meeting in DP 2. Plaintiffs cite 20 U.S.C. §1415(f)(1)(B)(i), which pertains to resolution sessions, for the proposition that the attendance of a representative with decision-making authority is required. To the extent that that 20 U.S.C. §1415(f)(1)(B)(i) is applicable, the case law on the requirement is minimal.

The most helpful ruling within this Circuit the Court has been able to find is *T.L.* The resolution meeting in *T.L.* was allegedly deficient because it was only an hour long and no one with decision-making authority from the defendant attended. 224 F. Supp. 3d at 427. Nonetheless, the parties worked toward a settlement that was ultimately finalized six weeks after the resolution meeting. *Id.* After the defendant allegedly breached the settlement agreement, the plaintiffs brought a federal suit seeking enforcement under the IDEA. *Id.* at 428. Addressing the plaintiffs' alternative argument in favor of federal jurisdiction based on the inadequacy

of the resolution meeting, the court found that the plaintiffs' recourse was to seek the intervention of a hearing officer pursuant to 34 C.F.R. §300.510(b)(5). *Id.* at 432. Having declined to do so, the court held that the plaintiffs could not manufacture federal jurisdiction by claiming that the defendant failed to provide a representative with decision-making authority at the resolution meeting. *Id.*

Applied here, plaintiffs' recourse for the Board's failure to produce a representative with decision-making authority in DP 2 was to seek an intervention and start the 45-Day window. Plaintiffs' other claims are premised on the fact that the underlying due process complaints did not settle, the Board's settlement statistics presented without context, and their general criticisms of State Defendants' processes and the poor behavior they may incentivize. Plaintiffs cite no other specific examples of bad faith, attempts to use mediation as a means of delaying or denying plaintiffs' rights, or authority supporting the principle that a failure to settle may itself evidence bad faith.

I will therefore deny plaintiffs summary judgment as to Count 4 of the 20–09498 complaint and Count 6 of the 21–06283 complaint. Further, because of plaintiffs' failure to assert additional allegations specific to the underlying administrative processes, let alone supporting evidence, summary judgment will be granted in favor of defendants on these same counts.[8]

---

[8] Both of plaintiffs' briefs refer to Count 4 of the 20–09498 complaint and Count 6 of the 21–06283 complaint. (Pls.' Mot. Br.—State Defs. p.18, Pls.' Mot. Br.—Board p.11.) However, plaintiffs' motion against the Board and related proposed order only refer to summary judgment as to Count 6 of the 21–06283 complaint. (ECF No. 239, ECF No. 239–5.) The Board's cross-motion addresses plaintiffs' 30-Day arguments from the 20–09498 complaint (Board's Mot. Br. 20–09498 pp.15–18) and plaintiffs' reply brief again refers to "[a]ll three cases" (Pls.' Reply Br.—Board pp.14, 15). Therefore, though I will otherwise not enter summary judgment against plaintiffs on counts for which they did not seek summary judgment, *see supra*, I conclude that summary judgment in favor of the Board as to Count 4 of the 20–09498 is warranted in light of the parties' full briefing on the issue.

### D.   New Jersey 10-Day Rule

New Jersey regulations do not define "peremptory" in the context of N.J. Admin. Code §1:6A–9.1(a), according to plaintiffs, but both the plain meaning of the term and testimony of the regulation's author[9] reveal that it means that hearings are mandatory.  (Pls.' Mot. Br.—State Defs. p. 16, Pls.' Mot. Br.—Board p. 15.)  The Office of Administrative Law has taken to holding settlement conferences instead of hearings on these dates.  (Pls.' Mot. Br.—State Defs. p. 16, Pls.' Mot. Br.—Board p. 15.)  This practice not only violates New Jersey regulations, but also sets off a domino effect leading to other violations, according to plaintiffs.  (Pls.' Mot. Br.—State Defs. p. 16, Pls.' Mot. Br.—Board p. 15.)  Administrative law judges may not engage in settlement discussions and thus cases are reassigned upon unsuccessful settlement conferences, leading to delays.  (Pls.' Mot. Br.—State Defs. pp. 16, 17, Pls.' Mot. Br.—Board pp. 15, 16.)  Settlement conferences also obviate the need for the 30-Day Resolution Rule, according to plaintiffs.  (Pls.' Mot. Br.—State Defs. p. 17, Pls.' Mot. Br.—Board p. 16.)

Here, settlement conferences were held or scheduled in DP 1 and DP 3, leading to reassignment and delay.  (Pls.' Mot. Br.—State Defs. p. 17, Pls.' Mot. Br.—Board p. 16.)  The hearing in DP 2 did not occur due to it being consolidated with DP 1.  (Pls.' Mot. Br.—State Defs. p. 17.)  Plaintiffs submit that the State has violated its own regulations and the Board failed in its obligation to ensure plaintiffs' procedural protections.  (*Id.* p. 18, Pls.' Mot. Br.—Board p. 16.)

State Defendants respond that there was no violation of the 10-Day Rule because there is no such thing as the 10-Day Rule.  (State Defs.' Mot. Br.

---

[9] Plaintiffs cite as an exhibit to their motion excerpts of the deposition of John Worthington conducted for the *C.P.* class action.  (ECF No. 238–4 pp. 28–40.) Worthington testified that he drafted amendments to the applicable New Jersey Administrative Code between 2004 and 2006.  (*Id.* pp. 35, 36.)

p. 15.)    Rather, the scheduling of a hearing within 10 days is a product of state regulation and not a requirement of the IDEA.    (*Id*.)    N.J. Admin. Code §1:6A–9.1(a) itself does not expressly require an evidentiary hearing as opposed to a settlement conference.    (*Id*. pp. 15, 16, 39.)    Lastly, both the IDEA and New Jersey regulations support settlement efforts.    (*Id*. pp. 16–18.)

The Board adds, citing the New Jersey Register, that the intent of N.J. Admin. Code §1:6A–9.1 is to quickly place cases in front of administrative law judges and there is no requirement that the first hearing be a full evidentiary hearing.    (Board's Mot. Br. 20–09498 p. 19, 20, Board's Mot. Br. 21–06283 p. 23.)    Administrative law judges have discretion in determining what takes place at the peremptory hearing.    (Board's Mot. Br. 20–09498 p. 20, Board's Mot. Br. 21–06283 pp. 23, 24.)    No violation of N.J. Admin. Code §1:6A–9.1(a) took place, according to the Board, and even if one did, it was not responsible for the Office of Administrative Law's scheduling.    (Board's Mot. Br. 20–09498 pp. 20, 21, Board's Mot. Br. 21–06283 pp. 24, 25.)

Insofar as State Defendants contend that the 10-Day Rule is merely a creature of state law, they offer no support for the principle that violations of state regulations are not actionable.    The Court's own research leads me to a contrary conclusion.    *See D.B.* ex rel. *H.B. v. Gloucester Twp. Sch. Dist.*, 751 F. Supp. 2d 764, 770 (D.N.J. 2010) ("Under New Jersey state regulations implementing the IDEA, procedural violations may lead to a finding that a student did not receive a FAPE if the violations '(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits.'" (quoting N.J. Admin. Code §6A:14–2.7)).

At the same time, plaintiffs' citations to the deposition testimony of Worthington and dictionary definition of "peremptory" do little to aid the

Court. These sources may be useful in demonstrating that peremptory hearings under N.J. Admin. Code § 1:6A–9.1(a) are mandatory, but they do not explain what must take place at these hearings. Plaintiffs do not cite any authority that states that a full evidentiary hearing must be conducted pursuant to N.J. Admin. Code § 1:6A–9.1(a).

The most useful source in understanding the intent and function of N.J. Admin. Code § 1:6A–9.1(a) comes from the New Jersey Register, cited by the Board. In the public comments and agency responses therein, the response to a comment seeking to strike the word "peremptory" from the regulation reads:

> The Office of Administrative Law does intend that a proceeding will be conducted on the first scheduled hearing date, either a hearing or, if the judge determines that a party's request for an adjournment of the hearing should be granted, a conference. OAL acknowledges that there may be instances when proceeding to hearing on the first scheduled hearing date is genuinely inappropriate. In those instances, it is appropriate for the judge to conduct a conference on that date.

37 N.J. Reg. 3033(a) (Aug. 15, 2005).

This response appears to provide discretion to administrative law judges to hold a hearing or conference for the first proceeding. I make no determination here on the advisability of holding settlement conferences on the 10-Day date as a practice. Plaintiffs' argument that hearing notices refer to "hearings" and parents and guardians' obligation to comply with the Five-Day Exchange is well taken. (ECF No. 238–4 pp. 75, 76, ECF No. 238–5 pp. 10, 11, 40, 41.) A parent or guardian may well be unaware of what to expect during their first appearance, hurriedly compile evidence when unnecessary, or fail to compile evidence while expecting a settlement conference only to be met with a hearing and exclusion order. Unsuccessful settlement conferences may also lead to delays associated with reassignment.

DP 3 and the Consolidated Cases illustrate how the time constraints of the IDEA may or may not be met following a conference held on first appearance.

Ultimately, these hypotheticals are not before me. The question presented is whether defendants violated the 10-Day Rule by holding or attempting to hold settlement conferences on the 10-Day date. I conclude on the record before me that plaintiffs have failed to prove that an evidentiary hearing is required on the 10-Day date. To the contrary, there is at least some authority that indicates that there is no such requirement. Summary judgment for plaintiffs will thus be denied for Count 1 of the 20–09498 complaint and Count 3 of the 21–06283 complaint and summary judgment will be entered in favor of State Defendants as to Count 1 of the 20–09498 complaint and Count 3 of the 21–06283 complaint and for the Board as to Count 1 of the 20–09498 complaint.[10]

### E.    Five-Day Exchange

Failure to comply with the Five-Day Exchange carries serious consequences, according to plaintiffs, citing decisions within this District in which evidence was excluded under such circumstances. (Pls.' Mot. Br.—State Defs. pp. 25–27, Pls.' Mot. Br.—Board pp. 20, 21.) The Board, by its own admission, produced its Five-Day Exchange materials a day late in the Consolidated Cases and ALJ Kennedy and ALJ Tuohy committed legal error by not excluding the evidence. (Pls.' Mot. Br.—State Defs. pp. 27–29, Pls.' Mot. Br.—Board pp. 22, 23.) The Board was again untimely in producing its Five-Day Exchange materials in DP 3, but was nonetheless permitted to

---

[10] Summary judgment will not be granted for the Board as to Count 3 of the 21–06283 complaint. Plaintiffs' moving brief acknowledges that a 10-Day claim is made against the Board in the 21–06283 complaint, but states that "there are disputes of material fact as to [Board's] role in that violation." (Pls.' Mot. Br.—Board p. 14 n. 9.) Though this opinion rejects plaintiffs' interpretation of peremptory hearings, I will leave the claim open in the event that discovery supports an alternative theory of liability against the Board.

submit evidence, according to plaintiffs. (Pls.' Mot. Br.—State Defs. pp. 29, 30, Pls.' Mot. Br.—Board pp. 23, 24.) Plaintiffs contend that these alleged errors were critical because, without evidence, the Board would have been unable to meet its burden of proof and production and plaintiffs would have prevailed in both underlying actions. (Pls.' Mot. Br.—State Defs. pp. 28–30, Pls.' Mot. Br.—Board pp. 23, 24.)

The Board responds that it undisputedly provided discovery more than five business days in advance of the evidentiary hearings below and that there is no legal support to find that it nevertheless violated federal and state law. (Board's Mot. Br. 20–09498 p. 21, Board's Mot. Br. 21–06283 p. 25.) The purpose of the Five-Day Exchange is to reduce adjournments and prevent surprise, according to the Board. (Board's Mot. Br. 20–09498 p. 22, Board's Mot. Br. 21–06283 p. 26.) Because the hearings were not ultimately held on October 1, 2018 and June 18, 2020, plaintiffs cannot claim that they were prejudiced by the Board's introduction of evidence. (Board's Mot. Br. 20–09498 pp. 22, 23, Board's Mot. Br. 21–06283 pp. 26, 27.)

State Defendants repeat their argument that the IDEA and accompanying state regulations do not require the first appearance before an administrative law judge to be a hearing at which evidence is presented. (State Defs.' Mot. Br. p. 21.) State Defendants are not responsible for the actions of the Board and Five-Day Exchange materials were nonetheless timely provided in advance of the actual hearings. (*Id.* pp. 21, 22, 39, 40.) Further, State Defendants argue that exclusion of evidence pursuant to the Five-Day Exchange is discretionary and an administrative law judge's refusal to exclude evidence is not violative of the rule. (*Id.* p. 22.)

Insofar as defendants contend generally that the Five-Day Exchange is not violated solely because evidence was previously provided, I disagree. As recognized within this District, the Five-Day Exchange serves to avoid

surprise and promote the prompt resolution of due process cases by making clear parties' disclosure obligations. *See L.J. v. Audubon Bd. of Educ.*, Case No. 06–05350, 2008 WL 4276908, at *4–5 (D.N.J. Sept. 10, 2008). The plaintiffs in *L.J.* moved to exclude evidence offered but not previously disclosed pursuant to N.J. Admin. Code §1:6A–10.1(c), which the administrative law judge granted. *Id.* at *1–2. Before the district court, the defendant argued that the administrative law judge's "hyper[-]technical" application of the Five-Day Exchange was contrary to the spirit of the rule because the plaintiffs did not establish that they were surprised by the evidence. *Id.* at *4. The court denied the defendant's motion for summary judgment, concluding that surprise was just one of the reasons for the Five-Day Exchange and that courts often upheld the similar evidentiary rulings of administrative law judges. *Id.* at *4–6.

Likewise, in *B.G. v. Ocean City Board of Education*, the court discussed the Five-Day Exchange in the context of the plaintiff's petition for emergent relief to suspend her graduation. Case No. 13–05166, 2014 WL 4798647, at *1–2, 5–6 (D.N.J. Sept. 26, 2014). The defendant, without previously notifying the plaintiff, presented the testimony of the plaintiff's caseworker at the administrative hearing. *Id.* at *2, 5. The district court applied N.J. Admin. Code §1:6A–10.1(c) and concluded that the plaintiff was unable to properly prepare without notice of the testimony and that exclusion and remand were appropriate. *Id.* at *5–6.

These decisions underscore the importance of the Five-Day Exchange, but are not wholly applicable to the instant motions. Of importance, the decisions in *L.J.* and *B.G.* involved evidence that was presented or attempted to be presented at the underlying hearings. Here, as defendants note, hearings were not ultimately held, and evidence was thus not presented, on October 1, 2018 or June 18, 2020. In this respect, this case is more analogous

to the more recent decision in *C.P. ex rel. F.P. v. Clifton Board of Education*, Case No. 19–08469, 2020 WL 4530031 (D.N.J. Aug. 6, 2020). In *C.P.*, the defendant failed to comply with the Five-Day Exchange and the plaintiff moved to exclude the defendant's evidence on that basis. 2020 WL 4530031 at *2. The hearing was subsequently rescheduled. *Id.* On the issue of the Five-Day Exchange, the court held that the purpose of the Five-Day Exchange is to prevent parties from being ambushed by undisclosed evidence. *Id.* at *13. Because the hearing was ultimately rescheduled and evidence was timely provided before the actual hearing, the court concluded that the plaintiff suffered no prejudice. *Id.*

The Board cited *C.P.* in its briefing (Board's Mot. Br. 20–09498 p.22, Board's Mot. Br. 21–06283 p.26), but plaintiffs did not address it in their reply. On the record before me, I am persuaded by the reasoning of *C.P.* and conclude that a similar result is warranted. Generally, the party that lost at the administrative level bears the burden of persuasion in challenging the administrative law judge's final decision. *See M.G.*, 778 F. App'x at 110. Plaintiffs do not present evidence challenging the merits of the decisions below, but rather seek to circumvent that obligation by claiming that enforcement the IDEA's procedural safeguards should have resulted in summary decisions in their favor. I do not believe that the relevant procedures and their application within this District compel such a result or support plaintiffs' attempt to use the Five-Day Rule as a sword rather than a shield.

Though the Five-Day Exchange extends beyond unfair surprise, unfair surprise remains among its most obvious purposes. *See L.J.*, 2008 WL 4276908, at *4–5. Because hearings were not ultimately held on October 1, 2018 or June 18, 2020, I conclude that plaintiffs suffered no prejudice from unfair surprise. I further find that any prejudice that resulted from

associated delays are most appropriately addressed by plaintiffs' other causes of action, namely the 45-Day Rule.   I will therefore deny plaintiffs summary judgment on Count 2 of the 20–09498 complaint and Count 4 of the 21–06283 complaint and grant summary judgment in favor of defendants.

### F.   <u>45-Day and Adjournment Rules</u>

Last among plaintiffs' allegation of procedural violations is State Defendants' purported violation of the 45-Day and Adjournment Rules in the Consolidated Cases and Adjournment Rule in DP 3.   Plaintiffs assert that the administrative law judges *sua sponte* adjourned the underlying cases for months at a time to accommodate their own schedules.   (Pls.' Mot. Br.—State Defs. p.21.)   After DP 1 did not settle, it was reassigned to ALJ Wilson who held a prehearing conference instead of a hearing, scheduled a hearing for January 8, 2018, and then set a briefing schedule for plaintiffs' motions that extended beyond January 8 despite plaintiffs' request not to do so.   (*Id.* p.22.) Unrequested adjournments then continued into June 2018 before ALJ Wilson recused himself.   (*Id.* pp.22, 23.)   Six days passed before the case was reassigned to ALJ Kennedy, which was followed by an eight-day adjournment until June 27, 2018 for a status conference and a two-month adjournment to October 1, 2018 for a hearing.   (*Id.* p.23.)   After the Consolidated Cases returned to the Office of Administrative Law on remand, ALJ Tuohy adjourned the first hearing to a status conference and held hearings scattered between September and December 2020 to accommodate her and the Board's counsel's schedules.   (*Id.* pp.23, 24.)   Finally, in DP 3, the peremptory hearing date was improperly adjourned from June 18, 2020 to July 9, 2020. (*Id.* p.24.)

With respect to the 45-Day Rule, plaintiffs quote liberally from Judge Hillman's motion-to-dismiss decision in the *C.P.* class action.   (*Id.* pp.30, 31.) In that decision, Judge Hillman synthesized decisions from other districts and

concluded that delays that spanned months beyond the 45-Day Rule were actionable under the IDEA.  *C.P. v. N.J. Dep't of Educ.*, Case No. 19–12807, 2020 WL 2611572, at *7–9 (D.N.J. May 22, 2020).   Despite the opportunity to take discovery on this issue, State Defendants continue to fail to account for 555 days in delays, according to plaintiffs, sufficient to constitute a substantive denial of a free appropriate public education.  (Pls.' Reply Br.— State Defs. pp. 22, 28.)

State Defendants respond to plaintiffs' Consolidated Cases claim by referencing the then-pending settlement in the *C.P.* class action and arguing that consideration of plaintiffs' motion should not come before final approval of the settlement.  (State Defs.' Mot. Br. pp. 32, 33.)  Even if the Court considers plaintiffs' motion, State Defendants assert that the IDEA's regulations permit extensions of specific amounts of time and plaintiffs must show that the IDEA's goals are threatened on a system-wide basis and J.A. was deprived a free appropriate public education.  (*Id.* pp. 33, 34.)  Finally, State Defendants acknowledge that courts have held that months-long delays may constitute substantive harm.  (*Id.* p. 35.)  However, they contend that genuine disputes of material facts exist because the parties requested multiple adjournments in writing; additional adjournments may have been requested but not reduced to writing; and Joanna A. and the Board's counsel could not remember details of the parties' adjournments.  (*Id.* pp. 31, 32, 35–38.)  State Defendants argue that discovery is necessary to determine whether and to what extent delays amounted to a substantive harm or denial of a free appropriate public education.  (*Id.* p. 37.)

As for DP 3, State Defendants note that plaintiffs only claim that the Adjournment Rule—not the 45-Day Rule—was violated.  (*Id.* p. 18.)  An adjournment was granted from June 4, 2020 to June 18, 2020 at plaintiffs'

request and, importantly, a final decision was rendered in less than 45 days when accounting for that specific adjournment.  (*Id.* pp. 18–20.)

At the outset, I may put aside State Defendants' argument regarding the then-pending settlement in the *C.P.* class action.   Final approval for the *C.P.* settlement was entered in April.   The Court is unaware of any aspect of the settlement, and the parties cite none, that would prohibit granting plaintiffs relief.   Therefore, I will consider State Defendants' arguments concerning the *C.P.* class settlement moot.

Moving to the substance of plaintiffs' contentions, State Defendants muddy the waters in their statement of material facts by positing that additional adjournments may not have been reduced to writing. For instance, there is a handwritten note on the Board's consent to an adjournment in DP 1 to schedule a conference for August 3, 2017.  (ECF No. 252–2 (State Defs.' Statement Material Facts) p. 13, ECF No. 252–4 p. 134.) However, this adjournment is accounted for in plaintiffs' reply.  (Pls.' Reply Br.—State Defs. p. 20.)   State Defendants also cite a handwritten note on the October 2, 2017 notice of hearing that reads "A/A All parties agreed" that may evidence mutual consent to an adjournment. (State Defs.' Statement Material Facts p. 18, ECF No. 252–4 p. 139.)   While the Consolidated Cases were pending in this Court, another handwritten note indicates that an April 3, 2020 hearing was adjourned.   (State Defs.' Statement Material Facts p. 22, ECF No. 252–4 p. 159.)  Though plaintiffs do not count the time the Consolidated Cases were on appeal toward their 555-day total (Pls.' Reply Br.—State Defs. pp. 20, 21), State Defendants again use such evidence to "suggest[] that not all adjournment requests were in writing" (State Defs.' Statement Material Facts p. 22).

More generally, State Defendants assert the possibility of additional adjournments outside of the record.   The Board's counsel could not recall the

details of many relevant events during his deposition. (ECF No. 252–4 pp. 123–30.) Because counsel could not remember whether or not the Board made adjournment requests, it is possible that adjournments of unverifiable number and length were requested. (State Defs.' Statement Material Facts pp. 14, 15.) These adjournments may have included those related to plaintiffs' motion practice. (*Id.* pp. 18, 19.) The Board's counsel also acknowledged that he may have requested that hearings only be held on Mondays and Fridays to accommodate his work as a municipal prosecutor, which State Defendants argue was in effect an adjournment request. (*Id.* p. 17, ECF No. 252–4 p. 129, 130.)

Joanna A. similarly testified during her deposition that she did not remember if she requested any adjournments. (ECF No. 252–4 pp. 174, 175, 204, 205, 210.) As Joanna A. could not remember how many adjournments were requested, it is possible that she may have requested numerous extended adjournments, according to State Defendants. (State Defs.' Statement Material Facts pp. 16, 17.)

State Defendants' arguments and efforts to identify disputes of material facts hinge in large part on Joanna A. and the Board's counsel's inability to recall the number and duration of adjournments. However, "[a] lack of memory does not create a genuine dispute because an answer such as 'I don't recall' is insufficient evidence to rebut affirmative testimony or at least create 'fair doubt.'" *Keating v. Pittston City*, 643 F. App'x 219, 224–25 (3d Cir. 2016). State Defendants further use this lack of recollection to assert what *might* have occurred. Such speculation is similarly insufficient to stave off summary judgment. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990))).

This deficiency in evidence and related speculation is especially glaring in light of federal and state regulatory requirements that extensions and adjournments be "specific."   34 C.F.R. §300.515(c); N.J. Admin. Code §6A:14–2.7(j).   The record provides when due process complaints were filed, when various hearings were held or adjourned, and the dates of the final decisions. State Defendants' argument that there may have been additional adjournments requested at unspecified times, in unspecified number, and for unspecified durations does little to provide the specificity required.   They also do not begin to account for the 555 days of unaccounted-for delays cited by plaintiffs.   (Pls.' Reply Br.—State Defs. pp. 20, 21.)   For instance, even if the Court were to accept State Defendants' arguments that an adjournment from October 2, 2017 to January 8, 2018 was *possibly* made with the consent of the parties and that the Board's counsel *may* have requested the 2020 hearing dates to accommodate his own schedule and that the request was itself an adjournment, more than a year would remain unaccounted.

Lastly, while I will direct the parties to submit briefing on an appropriate remedy, I reject State Defendants' argument that further discovery is necessary to determine whether delays resulted in substantive harm or a denial of a free appropriate public education in the Consolidated Cases.   First, Judge Hillman provided State Defendants with an opportunity to seek the "discovery necessary to respond to a renewed summary judgment motion."   (Aug. 24, 2023 Op. p. 41.)   If State Defendants believed that such discovery was necessary in order for me to rule on plaintiffs' renewed motion, it is unclear why such discovery was not sought during the time provided.

Second, and more compellingly, decisions within this District persuade me to conclude that State Defendants' violation of the 45-Day and Adjournment Rules in the Consolidated Cases was significant enough to cause substantive harm.   In *S.S. v. Hillsborough Township Board of Education*, the

plaintiffs similarly alleged violation of the 45-Day Rule.    Case No. 20–13077, 2022 WL 807371, at *2 (D.N.J. Mar. 17, 2022).    The Department of Education countered that a violation of the 45-Day Rule was procedural and thus the plaintiffs did not plead a denial of a free appropriate public education.    *Id.* at *5.    The court denied dismissal, holding that the "[p]laintiffs' allegation that it took 505 days to resolve their due process complaint … clearly crosse[d] the line from procedural to substantive."    *Id.* at *6.

Likewise, in *A.C. v. West Windsor—Plainsboro Regional Board of Education*, the Department of Education claimed that the 45-Day Rule was not violated due to various extensions and motions.    Case No. 21–13016, 2022 WL 1468199, at *7 (D.N.J. May 10, 2022).    Even if the 45-Day Rule was violated, the plaintiff did not sufficiently plead substantive harm, according to the Department of Education.    *Id.*    The court denied dismissal, in part, because of the need to consider "evidence of specific adjournment requests made by the parties, if any, and the ALJ's responses to those requests."    *Id.* at *8.    The court was further unpersuaded by the Department of Education's claim that the plaintiff did not sufficiently plead substantive harm.    *Id.* Synthesizing numerous cases, including *C.P.*, the court determined that the plaintiff's claim of a 660-day delay was "sufficient to plead substantive harm based on the passage of time."    *Id.*; *see also id.* at *8 n.4 ("Plaintiff has sufficiently alleged that the nature of the procedural violation, *i.e.*, the substantial delay in resolving her due process petition, was so severe, and so substantial that, if proven, would rise to the level of a substantive violation such that compensatory relief would be appropriate.").

These decisions were rendered in response to motions to dismiss rather than motions for summary judgment, but they nonetheless make clear to me that the delays in the Consolidated Cases were not merely procedural, but crossed the threshold toward substantive, actionable harm to plaintiffs.

Summary judgment as to Counts 5 and 12 of the 21–06283 complaint will therefore be granted in favor of plaintiffs.

I am now left with "broad discretion to fashion remedies." *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 620 (3d Cir. 2015); *see also* 20 U.S.C. §1415(i)(2)(C)(iii) (noting that courts in IDEA civil actions shall base their decisions on the preponderance of the evidence and "grant such relief as the court determines is appropriate"). Plaintiffs and State Defendants have briefed the issue of remedies. (Pls.' Mot. Br.—State Defs. pp.33, 34, State Defs.' Mot. Br. pp.43–47, Pls.' Reply Br.—State Defs. pp.29–32.) However, this briefing was provided without the benefit of the Court's decision granting the parties' motions only in part. Some of the relief sought by plaintiffs, such as reversal of the underlying final decisions, is tied most directly to violations for which I have denied plaintiffs summary judgment. (Pls.' Mot. Br.—State Defs. pp.33, 34, Pls.' Reply Br.—State Defs. p.32.) Plaintiffs also acknowledge that their request for monetary damages against State Defendants presents an issue of first impression. (Pls.' Reply Br.—State Defs. pp.30, 31.) Therefore, State Defendants and plaintiffs will be provided 30 days from the date of this opinion and order to file briefs on the issue of appropriate relief. The briefs shall be no longer than 15 double-spaced pages and limited to the relief appropriate for State Defendants' violation of the 45-Day and Adjournment Rules.

The briefs shall also be limited to the Consolidated Cases. Plaintiffs assert that State Defendants violated the Adjournment Rule in DP 3 by adjourning the hearing date from June 18, 2020 to July 9, 2020 without the request of either party. (Pls.' Mot. Br.—State Defs. p.24, Pls.' Reply Br.—State Defs. pp.22, 23.) The record reflects that plaintiffs objected to the proposed settlement conference of June 18, 2020, DP 3 was reassigned to ALJ Ascione who conducted a prehearing conference on June 16, 2020, and

hearings were held on July 9 and July 10, 2020.   (ECF No. 238–5 pp. 46–58.) A final decision was rendered on July 16, 2020.   (ECF No. 238–9 pp. 97–112.) Accounting for the adjournment made at plaintiffs' request (ECF No. 238–5 pp. 42–45), ALJ Ascione's final decision was rendered less than 45 days after transmittal.   Unlike the adjournments and overall delay in the Consolidated Cases that were so extensive as to cross the threshold into substantive, plaintiffs fail here to support that any potential violation of the Adjournment Rule in DP 3 was anything more than procedural.   I will therefore deny plaintiffs summary judgment as to Count 3 of the 20–09498 complaint and grant summary judgment in favor of State Defendants.

### G.    Motion to Seal

Finally, I reach the Board's renewed motion to seal.   The Board's efforts to seal various educational records is in the midst of its own tortured history. In his August 2023 opinion, Judge Hillman denied the initial motions to seal, concluding that the Board improperly requested prospective sealing, sought to seal documents that were already public or did not clearly implicate the privacy interests cited, and otherwise failed to comply with Local Civil Rule 5.3(c).   (Aug. 24, 2023 Op. pp. 34–41.)   I denied the renewed motion to seal in April of this year, finding that it suffered from many of the same deficiencies as the original motions—namely failure to identify specific documents and requested prospective sealing.   (ECF Nos. 260, 261.)

The Board states here that it sought to determine plaintiffs' position on the second renewed motion and was told that plaintiffs would not consent, object, or join in any renewed motion.   (ECF No. 263–2 (Board Mot. Seal Br.) p. 7.)   Plaintiffs subsequently objected and declined to participate when asked by the Board to collaborate on redactions.   (*Id.*)   Without collaboration, the Board asserts that it is unclear what redactions would be satisfactory under the Family Educational Rights and Privacy Act.   (*Id.* p. 13.)   The Board

further argues that it is overly burdensome to ask it to redact all personal identifiers such as J.A.'s name, address, and phone number, and such a burden does not address additional concerns about potential redactions of substantive information that may be linkable to J.A. (*Id.*) The accompanying declaration of the Board's counsel reiterates its unsuccessful attempts to collaborate with plaintiffs, plaintiffs' position that it is the Board's responsibility to make redactions, and the Board's belief that it is therefore "constrained to renew its motion to seal certain documents." (ECF No. 263–1 pp. 4–6.)

Plaintiffs filed a letter in lieu of a brief opposing the motion. (ECF No. 264.) Plaintiffs contend that the Board's motion is not "on behalf of all parties" as contemplated by Local Civil Rule 5.3(c), the Board may redact personal identifiers as previously ordered by the Court, and it is the Board's burden to complete the redactions. (*Id.* p. 1.) The letter is accompanied by an email exchange between counsel wherein plaintiffs' counsel stated that, because the underlying filings were made by the Board, plaintiffs should not be expected to incur the costs associated with redaction. (*Id.* pp. 3, 4.) Plaintiffs' counsel further expressed reluctance to "join in a motion that would (for a third time) incur the anger of the Court." (*Id.* p. 5.) Plaintiffs' counsel's concerns have proved prescient.

Pursuant to Local Civil Rule 5.3(c), motions to seal must be made via a single, consolidated motion on behalf of all parties and include an index that states with particularity (a) the nature of the materials or proceedings at issue, (b) the private or public interests warranting the relief sought, (c) the clearly defined and serious injury that would result without relief, (d) an explanation as to why less restrictive alternatives are unavailable, (e) any prior orders sealing the same materials, and (f) the identity of any objector. L. Civ. R. 5.3(c)(1), (3). If objections have been lodged, the index must also

provide the materials subject to the objection, the basis for the objection, and why materials or information—if previously sealed—should not remain under seal. L. Civ. R. 5.3(c)(3). There is a presumption in favor of public access to judicial records that may be overcome only upon a showing of "good cause"— that is "a particularized showing that disclosure will cause a 'clearly defined and serious injury.'" *See Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 203–04 (D.N.J. 2021) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

Credit where due, the Board's second renewed motion represents an improvement. Documents are referred to by filing numbers and pin citations in the accompanying index. (ECF No. 263–13.) It further seems as though the Board has redacted J.A.'s name, address, date of birth, and identification and phone numbers from its most recent filings related to the pending motions for summary judgment. However, the Board claims that plaintiffs have not consented to the redactions and additional redactions would be too burdensome. (*Id.* pp.8–10.) For many other documents, the Board represents that redaction would be too burdensome without the collaboration of plaintiffs and would risk revealing J.A.'s identity. (*Id.* pp.1–7.)

The burden of overcoming the presumption of public access falls on the movant. *Medley*, 550 F. Supp. 3d at 203–04. That burden may not be shifted to an opposing litigant. For instance, in *Testa v. Potato*, the *pro se* plaintiff sought a declaratory judgment placing the burden on the defendants to propose and prepare redactions and file a related motion to seal. Case No. 20–05511, 2020 WL 4449003, at *1 (D.N.J. Aug. 3, 2020). The court held that nothing in Local Civil Rule 5.2, which pertains to the filing of sensitive information, placed the burden on the opposing party to perform redactions. *Id.* at *2. This was so even though plaintiff was *pro se* and represented that he was in poor health. *Id.*

The same holds true here. Whether the concerns underlying the Board's motion stem from the time and expense that may be associated with redaction or lack of comfort with the Family Educational Rights and Privacy Act and related regulations, the motion is the Board's. As plaintiffs have declined to join this motion or otherwise participate, it is the Board's responsibility to determine "what redactions would sufficiently protect[] J.A.'s identity if they were filed on the public docket" (Board Mot. Seal Br. p.5) and support those proposed redactions by motion. I will not place that burden in whole or in part on plaintiffs or relieve the Board of its burden due to plaintiffs' decision not to collaborate.

The Board's motion to seal will be denied. The Court will provide 30 days for the Board to renew its motion. The renewed motion shall comply with the Court's previous orders, provide proposed redactions for personal identifiers, and explain with particularity why there are no less-restrictive alternatives for records sought to be sealed in their entirety.

The Court requests that the Board be conscientious of both its own time and the Court's. Continued efforts to circumvent the Court's instructions, repeat unsuccessful arguments, seek to seal records for which redactions may be made, or shift related burdens to plaintiffs will be met with denials of future motions and, if necessary, additional measures.

## IV.  CONCLUSION

For the reasons stated above, plaintiffs' motion for partial summary judgment against to State Defendants (ECF No. 238) and State Defendants' and the Board's cross-motions (ECF Nos. 248, 250, 252) will each be GRANTED IN PART AND DENIED IN PART. Plaintiffs' motion for partial summary judgment as to the Board (ECF No. 239) and the Board's motion to seal (ECF No. 263) will both be DENIED. The Board will be provided 30 days to file a renewed motion to seal. Plaintiffs and State Defendants will be

provided 30 days to brief the issue of remedies.   An accompanying order will follow.


         __/s/ Edward S. Kiel_____
         **EDWARD S. KIEL**
         **UNITED STATES DISTRICT JUDGE**

**Dated:  November 29, 2024**